## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**LEE EVANS,**

                                        **Plaintiff,**                 Civ. No. 14-00120 (KM) (MAH)

**v.**

**CITY OF NEWARK, et al.,**                                **OPINION**

                                        **Defendants.**

---

**MCNULTY, U.S.D.J.:**

    In August 1978, five young Newark men vanished. They were never seen again, and no bodies were found. Over thirty-one years later, in March 2010, Lee Evans was arrested and charged with their murder. In October–November 2011, Evans was tried before a jury and acquitted. Now Evans has brought this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights and seeking money damages from the police officers, the prosecutors, and supervisory personnel. Also named as defendants are the Essex County Prosecutor's Office, the City of Newark, the former Mayor of Newark, and its former Police Director. Evans's complaint alleges that the arrest warrant was procured without probable cause; that evidence was fabricated; that material exculpatory evidence was not presented to the grand jury; and that he was improperly singled out for prosecution for reasons of personal ambition and political calculation.

    Now before the Court are the defendants' motions to dismiss the Amended Complaint. (Dkt. No. 33) (I will refer to it as the "Complaint", and cite is as "AC".) For the reasons set forth below, the motions are granted in part and denied in part. I dismiss certain defective claims—for example, those barred by the statute of limitations or brought against parties that are immune. The remainder of the Complaint will go forward.

In so holding, the Court is not endorsing the theory of the Complaint. The defendants, too, have a story to tell: in their version, they possessed an eyewitness account of a heinous mass murder, which they were then obligated to prosecute, and that it was for a jury to decide whether the charges were established beyond a reasonable doubt. But now is not the time to weigh the defendants' contentions against those of the plaintiff. The only issue before the Court now is whether the Complaint, *if* we assume its allegations are true, states a legal claim. *Whether* the allegations are true can be determined only after the parties exchange discovery and the case is decided, either by summary judgment or trial.

## I.   BACKGROUND

### A.   Allegations of the Complaint

The factual allegations of Evans's Complaint may be summarized briefly as follows.

On August 20, 1978, five teenaged boys[1] went missing in Newark, New Jersey. The case was investigated for thirty years, without success. A break came in 2008, when Evans's cousin Philander Hampton[2] confessed to participating in murdering the boys. While admitting guilt, Hampton portrayed Evans as the more culpable party. According to Hampton, Evans was angry over the theft of some marijuana, which he blamed on the boys. Evans allegedly transported the boys to 256 Camden Street in Newark, confined them to a closet, and set fire to the building. After Hampton made his statement, the police used sonar equipment to search the site for human remains, but found nothing.

On March 22, 2010, Lee Evans was arrested pursuant to a warrant obtained by Newark Police Detective Louis Carrega. Evans was charged with

---

[1]     The Complaint does not name them. I take judicial notice that they are Michael McDowell, Randy Johnson and Alvin Turner, then 16; and Melvin Pittman and Ernest Taylor, then 17.

[2]     This individual is invariably referred to in the Complaint as "the convicted felon." I take judicial notice of his name, which is stated in the defendants' briefs and was well publicized.

five counts of first degree arson and five counts of first degree murder. (AC ¶¶ 17, 21) Evans was detained at the Hudson County Correctional Center for five months, until August 20, 2010, when he was released on bail. (*Id.* ¶ 24)

Within that five month period, Essex County Assistant Prosecutors Peter Guarino and Cheryl Cucinello submitted the case to a grand jury three times, on May 13, June 11, and July 9, 2010. (*Id.* ¶¶ 35–37) After two unsuccessful attempts, the prosecutors obtained an indictment on their third try. Evans alleges that evidence was misrepresented to the grand jurors, and that exculpatory evidence was withheld from them.

At some undisclosed time before trial, Evans alleges, former Mayor Cory Booker and former Newark Police Director Garry McCarthy held press conferences announcing that the thirty-year-old case had been solved. They and County Prosecutor Laurino allegedly "vilified" Evans in the media. (*Id.* ¶¶ 58, 59, 72)

On November 23, 2011, after a jury trial, Evans was acquitted of all charges. (*Id.* ¶ 25)

The Complaint asserts the following causes of action:

First Count – Abuse of Process[3]

Second Count – Intentional Infliction of Emotional Distress/42 U.S.C. § 1983 Emotional Distress

Third Count –Violation of 4th Amendment (Malicious Prosecution Based Upon Prior Criminal Proceedings)[4]

Fourth Count – New Jersey Civil Rights Act N.J.S.A. 10:62 et seq.

Fifth Count – 42 U.S.C. § 1983 Violations: Suppression of Material Exculpatory Evidence in Violation of <u>Brady v. Maryland</u>, Fabrication of

---

[3]     Count 1, which does not specify any source of law, will be treated as a state law tort claim of abuse of process. Counts 4 and 5, though nonspecific, are broad enough to encompass parallel claims of abuse of process under the New Jersey Civil Rights Act ("NJCRA") and 42 U.S.C. § 1983.

[4]     Count 3 asserts a claim of malicious prosecution in relation to "prior criminal proceedings" and the "4th Amendment." In the context of Counts 4 and 5, I interpret the complaint to raise a state law tort claim of malicious prosecution, as well as analogous malicious prosecution claims under the NJCRA and 42 U.S.C. § 1983.

Inculpatory Evidence, Malicious Prosecution, Deliberate Failure to Investigate Exculpatory Evidence and Witness Coercion

Sixth Count – 42 U.S.C. § 1983 Supervisory Liability

Seventh Count – 42 U.S.C. § 1983 *Monell* Claim Unconstitutional Official Policy, Practice and Failure to Supervise and Train

Eighth Count – 42 U.S.C. § 1983 Conspiracy

**B.     Procedural History/Amended Complaint**

On November 21, 2013, Evans filed this civil suit in the Superior Court of New Jersey, Essex County. (Dkt. No. 1) On January 9, 2014, with the consent of all defendants, the action was removed to this federal court. (*Id.*)

While motions to dismiss the original complaint were pending, Evans filed a motion pursuant to Fed. R. Civ. P. 15(a) for leave to amend the complaint. That motion, filed on November 15, 2014, attached a proposed Amended Complaint. (Dkt. No. 33) This Court administratively terminated the original motions to dismiss, directed the defendants to reformulate their arguments in reference to the Amended Complaint, and requested that they state whether they consented to amendment. (Dkt. Nos. 36, 37) Defendants Essex County Prosecutor's Office, Laurino, Dow, Guarino, Cucinello, Carrega, Smith, Recktenwald, Eutsey, Jones, and DeFrancisci (collectively, "ECPO Defendants"), filed an opposition to Evans's motion to amend the complaint. (Dkt. No. 44) Defendants City of Newark, Booker, McCarthy, Hadley, Sheppard, Sabur, Ramos and Henry (collectively, "Newark Defendants") and Defendants New Jersey State Police and Det. Sgt. Tietjen (collectively, "State Police Defendants") moved to dismiss the Amended Complaint, incorporating arguments they had previously asserted against the original complaint. (Dkt. Nos. 45, 46)[5]

---

[5]     A few clarifying points with regard to the named defendants:

(1) The original complaint named an "Officer Joe Hadley" and a "Detective Joseph Hadley" as well as a "Detective Louis Correga" and a "Lieutenant Lou Carrega." The Amended Complaint names "Detective Joseph Hadley" and "Detective Lieutenant Louis Carrega." I presume the Amended Complaint corrects and consolidates divergent references to the same person.

Motions to amend a complaint are "freely" granted, *see* Fed. R. Civ. P. 15(a). I therefore grant the motion and accept the Amended Complaint (Dkt. No. 33-1) for filing. The oppositions to plaintiff's motion employ a motion-to-dismiss standard in arguing that amendment would be futile. They are thus the functional equivalent of motions to dismiss the Amended Complaint, and I will treat them as such. (*See* text orders, Dkt. Nos. 36, 37)

### C.    Legal Standard on Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197 (1975); *Trump Hotels &*

---

(2) The Newark Police Department, Essex County New Jersey, former Essex County Prosecutor Paula Dow, Essex County Sheriff's Office, Sheriff Officers John Doe 1-10, the State of New Jersey, New Jersey State Police, and Judge Peter Vazquez were named as defendants in the original complaint. By stipulation, Judge Vazquez was dismissed with prejudice on April 29, 2014. (Dkt. No. 16) Evans's motion to amend seeks to remove the Newark Police Department, Essex County New Jersey, former Essex County Prosecutor Paula Dow, Essex County Sheriff's Office, Sheriff Officers John Doe 1-10, and the State of New Jersey from the caption. (Dkt. No. 33) Because I grant Evans's motion to amend the complaint, any claims against the Newark Police Department, Essex County New Jersey, former Essex County Prosecutor Paula Dow, Essex County Sheriff's Office, Sheriff Officers John Doe 1-10, and the State of New Jersey are dismissed with prejudice. That leaves the New Jersey State Police, named as a defendant in the original complaint caption, and not named in the Amended Complaint caption, but also not mentioned as a party Evans sought to remove. The Amended Complaint is replete with allegations regarding "Defendant New Jersey State Police," and thus I construe the Amended Complaint to have named the New Jersey State Police.

(3) Detective Christopher Smith is named as a defendant in the Amended Complaint. There are, however, no allegations made with respect to Det. Smith. Accordingly, Det. Smith is dismissed.

*Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Fed. R. Civ. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The United States Court of Appeals for the Third Circuit has explicated the *Twombly/Iqbal* standard on several occasions. *See, e.g., Argueta v. U.S. Immigration & Customs Enforcement,* 643 F.3d 60, 70–73 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129–30 (3d Cir. 2010). In doing so, it has provided a three-step process for analyzing a Rule 12(b)(6) motion:

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. *See* [*Iqbal,* 556 U.S.] at 675; *Argueta*, 643 F.3d at 73. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *Argueta*, 643 F.3d at 73. This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

*Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

## II.   THRESHOLD GROUNDS

Sections II and III of this Opinion focus on Counts 1–5, which assert direct liability. In Section II, I consider certain threshold grounds for dismissal: the statute of limitations, amenability to suit, and immunity. In Section III, I consider dismissal for failure to state a claim. In Section IV, I discuss the theories of vicarious or conspiracy liability asserted in Counts 6–8.

### A. Statute of Limitations

Defendants seek dismissal of various causes of action in the Amended Complaint as untimely. Section 1983 borrows the applicable state's personal injury statute of limitations. *See Vickers v. Childs*, 530 F. App'x 104, 105 (3d Cir. 2013). In New Jersey, the statute of limitations for personal injury claims is two years. N.J. Stat. Ann. § 2A:14-2(a). Evans's claims, whether under 42 U.S.C. § 1983 or New Jersey state law, are therefore subject to a statute of limitations of two years.

The date that a § 1983 claim accrues is determined by federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run, when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). For example, a Fourth Amendment claim will accrue at the time of the allegedly wrongful search or seizure. *See Voneida v. Stoehr*, 512 F. App'x 219, 221 (3d Cir. 2013) (per curiam); *Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (per curiam); *Castro v. Perth Amboy Police Dep't*, 2014 WL 229301, at 3 n.1 (D.N.J. Jan. 21, 2014). A § 1983 false arrest claim likewise accrues at the time of the arrest. *See Torres v. McLaughlin*, 163 F.3d

169, 176 (3d Cir. 1998); *Love v. Shockley*, 2015 WL 71162, at *2 (D.N.J. Jan. 6, 2015).[6]

### 1. Malicious prosecution (Counts 3, 4, 5)

Counts 3 asserts the state-law tort of malicious prosecution. Counts 4 and 5 appear to assert parallel malicious prosecution claims under the NJCRA and § 1983. For such malicious prosecution claims, the limitations period begins to run on the date that proceedings are terminated in the plaintiff's favor. *See, e.g., Desposito*, 2015 WL 2131073 at *12 (collecting cases). Evans was acquitted on November 23, 2011. (AC ¶ 25) He filed this action slightly less than two years later, on November 21, 2013. The malicious prosecution claims, whether state or federal, are therefore timely.

### 2. Abuse of process, IIED (Counts 1, 2, 4, 5)

Count 1 alleges abuse of process. Counts 4 and 5 seemingly allege parallel claims of abuse of process, as well as related theories, under the NJCRA and 42 U.S.C. § 1983. Count 2 alleges intentional infliction of emotional distress ("IIED").

A federal § 1983 abuse of process claim, unlike malicious prosecution, does not depend on acquittal in the criminal case:

> [I]n *Rose v. Bartle* the Third Circuit noted that "a section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose*, 871 F.2d at 350 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). The gravamen of an abuse of process tort "is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends. Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To

---

[6]     Counts 6 and 7 allege that supervisors and the City of Newark are vicariously liable, on various theories, for the acts alleged in the other counts. They therefore would be timely only to the extent the other counts are timely. The Count 8 conspiracy has the substantive claims of Counts 1–5 as its object. *See* Part IV, *infra*. Count 8 is timely only to the extent that the substantive claims are timely. *See Desposito v. New Jersey*, 2015 WL 2131073, at *11 (D.N.J. May 5, 2015).

> establish an abuse of process claim "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) (citations and internal quotation marks omitted).

*Kazar v. City of Camden*, 2016 WL 680432, at *4 (D.N.J. Feb. 19, 2016). The same is true of the common law tort:

> An action for malicious abuse of process "lies for the improper, unwarranted, and perverted use of process after it has been issued ... [i.e.], the employment of a process in a manner not contemplated by law." *Tedards v. Auty*, 232 N.J. Super. 541, 549, 557 A.2d 1030 (App. Div. 1989) (citing *Ash v. Cohn*, 119 N.J.L. 54, 57, 194 A. 174 (E.& A. 1937)). "Bad motives or malicious intent leading to the institution of a civil action are insufficient to support a cause of action for malicious abuse of process." *Fielder Agency v. Eldan Const. Corp.*, 152 N.J. Super. 344, 348, 377 A.2d 1220 (Law Div. 1977). To succeed on a claim for malicious abuse of process, a plaintiff must demonstrate "some coercive or illegitimate use of the judicial process." *Id.*

*Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 897–98 (D.N.J. 1997).[7]

IIED, like abuse of process (and unlike malicious prosecution), does not depend on the outcome of criminal proceedings. To establish IIED under New Jersey law, a plaintiff must allege "[1] intentional and outrageous conduct by the defendant, [2] proximate cause, and [3] distress that is severe." *Dello Russo v. Nagel*, 817 A.2d 426, 435 (N.J. Super. Ct. App. Div. 2003) ([bracketed] numbers added).

Evans's non-malicious-prosecution claims, such as abuse of process or IIED, are therefore subject to the usual rule that a claim accrues when the plaintiff is or should be aware of facts sufficient to establish the injury on which the action is based. *See Montgomery v. DeSimone*, 159 F.3d 120, 126 (3d Cir. 1998); *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 193 (3d Cir.

---

[7]    Evans of course does not concede that the prosecution was initiated legitimately; he alleges that probable cause was lacking. He is permitted, however, to plead theories in the alternative. *See* Fed. R. Civ. P. 8(d). In support of the abuse of process theory, the complaint alleges that the prosecution was pursued for reasons of politics or personal ambition, irrespective of the merits.

1984). As to abuse of process or IIED, accrual does not require that criminal proceedings be completed:

> Only plaintiff's malicious prosecution claim includes the element of a termination in favor of the accused. Her other claims, therefore, accrued at the very latest, when plaintiff had reason to know that the elements of the claims existed. This occurred at or about the time of plaintiff's arrest on July 12, 1985. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 350–51 (3d Cir. 1989) (discussing the distinction between malicious prosecution and abuse of process, and holding that an abuse of process claim accrues on the date of arrest); *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 193–94 (3d Cir. 1984) (holding that only malicious prosecution requires a favorable termination of the criminal proceedings, and that claims for intentional infliction of emotional distress and abuse of process accrue on the date of arrest); *Earl v. Winne*, 14 N.J. 119, 128–29, 101 A.2d 535 (1953) (quoting *Ash v. Cohn*, 119 N.J.L. 54, 58, 194 A. 174 (E. & A. 1937)) (discussing the distinction between a malicious prosecution claim, which requires a favorable termination of the criminal proceedings, and abuse of process, which does not); *Pisano v. City of Union City*, 198 N.J. Super. 588, 593, 487 A.2d 1296 (Law Div. 1984) (holding that, unlike malicious prosecution claim, false arrest claim accrues on the date of the arrest).

*Michaels v. New Jersey*, 955 F. Supp. 315, 326–27 (D.N.J. 1996). *See also Desposito,* 2015 WL 2131073 at *10–*13.

From the face of the complaint, it is apparent that any abuse of process and related claims accrued before November 21, 2011 (*i.e.,* more than two years before the original complaint was filed on November 21, 2013). At the time of the 2010 arrest, plaintiff possessed the essential facts giving rise to such claims: Count 1 (abuse of process); Count 4 (state NJCRA claim, apart from malicious prosecution); and Count 5 (§ 1983 claim, apart from malicious prosecution). Certainly the injury was apparent by the time grand jury proceedings were completed on July 9, 2010. Evans was on notice of any abuse of process or related claim by then.

The IIED claim, whether viewed as state or federal, to some extent alleges facts surrounding the arrest and the grand jury proceedings, although its focus seems to be the pretrial media statements. Dates are lacking. From the context,

however, the events must have occurred at the latest before trial began in October 2011.

Evans as much as concedes that these claims do not fall within the two-year limitations period. In his briefing, he invokes the equitable tolling doctrine. "'State law, unless inconsistent with federal law, … governs the concomitant issue of whether a limitations period should be tolled.'" *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (quoting *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). Equitable tolling may apply "where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie Street Police Dep't,* 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (citing *Freeman v. State,* 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002)).

I pause to consider whether a facially time-barred complaint may be dismissed on a 12(b)(6) motion for failure to allege facts that would toll the limitations period. The statute of limitations is of course an affirmative defense, to be asserted in a defendant's answer. *See* Fed. R. Civ. P. 8(c). It may, however, be invoked on a Rule 12(b)(6) motion, if "the time alleged in the statement of a claim shows that the cause of action had not been brought within the statute of limitations." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. United States Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)); *see also Niblack v. City of Asbury Park*, 2005 WL 1116056, at *3 (D.N.J. May 11, 2005). In virtually any case it is possible to hypothesize that equitable tolling *might* apply. If that were enough, the statute of limitations could never be raised on a motion to dismiss—but that is not the law. *See Bethel, supra.* I synthesize these competing considerations as follows: Where the events alleged in the complaint plainly lie outside the limitations period, and nothing in the complaint suggests a

possible basis for equitable tolling, dismissal is appropriate. That dismissal should ordinarily be without prejudice to the filing of an amended complaint that sets forth any basis on which the statute could be tolled or the claim could otherwise considered timely.

This Complaint does not refer to equitable tolling. Of course, a complaint need not necessarily anticipate and rebut an as-yet-unpleaded affirmative defense. Nevertheless, a plaintiff cannot with impunity plead himself out of court in the hope that the defendant will waive a facially applicable defense. I consider also that the plaintiff had fair warning: this is an Amended Complaint, brought in response to an initial motion to dismiss on, *inter alia,* statute of limitations grounds.[8] In his briefing, unconfined by the allegations of the complaint, Evans proffers his basis for equitable tolling. First, he cites his five month post-arrest detention in 2010. That detention ended, however, on August 20, 2010. (AC ¶ 24) Even assuming that the limitations period *began* to run on that date, his time to file would have expired two years later, on August 20, 2012—but he did not in fact file his original complaint until November 21, 2013. Second, Evans refers to unspecified "ineffective assistance of counsel" by an unnamed attorney. Even on the shaky assumption that attorney neglect tolls the statute,[9] that allegation is far too vague.

The motion to dismiss on statute of limitations grounds is denied as to the state and federal claims of malicious prosecution in Counts 3, 4, and 5. The motion is granted, however, as to the claims alleged in Counts 1 and 2, as

---

[8]    Certain of the amended allegations in the Amended Complaint seem to be responses to the limitations arguments raised against the original complaint. For the original complaint's claim of defamation (which has a one-year statute of limitations), the Amended Complaint substitutes intentional infliction of emotional distress (which has a two-year statute). Some dates given in the original complaint are simply omitted in the amended version.

[9]    Here, the issue involves a civil statute of limitations, where the criminal-law concept of ineffective assistance does not apply. Even in the context of criminal post-conviction relief, however, an attorney's negligent, erroneous advice about the limitations period will not give rise to equitable tolling. Some extraordinary misconduct is required. *Abbott v. New Jersey*, 2012 WL 3020030, at *5–6 (D.N.J. July 24, 2012) (citing *Holland v. Florida*, 560 U.S. 631 (2010)).

well as Counts 4 and 5, to the extent they are not based on malicious prosecution.[10] These dismissals are without prejudice to the filing, within 30 days, of a Second Amended Complaint containing facts from which these claims could be found timely. The facts (if not all the proofs) relevant to tolling should be known and available to the plaintiff.

## B.   Eleventh Amendment and Amenability to Suit as "Persons" Under § 1983 and NJCRA

The NJSP, the ECPO, and certain individual defendants assert that jurisdiction is lacking under the Eleventh Amendment, or that they are not "persons" who are amenable to suit in their official capacities under 42 U.S.C. § 1983 or the NJCRA.[11]

The Eleventh Amendment incorporates a general principle of sovereign immunity that bars citizens from bringing suits for damages against any State in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S. Ct. 900, 908 (1984); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 1122 (1996); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355 (1974); *Hans v. Louisiana*, 134 U.S. 1, 10,

---

[10]    In addition to malicious prosecution, Count 5 asserts § 1983 claims for failure to produce exculpatory evidence in violation of *Brady*, fabrication of inculpatory evidence, failure to investigate exculpatory evidence, and witness coercion. The factual allegations of Count 5 center around the witness statements. (AC ¶¶ 95–108) Although the connection is not made explicit, these claims appear to relate to the testimony given by Det. Sabur and Lt. Carrega at the grand jury proceedings, and the alleged failure of Assistant Prosecutors Guarino and Cucinello to fairly present witness statements which conflicted with the accounts presented by Sabur and Carrega. Accordingly, such theories are barred by the same two-year statute of limitations applicable to the abuse of process claim.

[11]    Those Eleventh Amendment and § 1983 "person" grounds are closely parallel. *See, e.g., Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67, 109 S. Ct. 2304, 2310 (1989) ("This does not mean, as petitioner suggests, that we think that the scope of the Eleventh Amendment and the scope of § 1983 are not separate issues. Certainly they are. But in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it."). Cases, including mine, have for brevity run the two issues together. *See, e.g., Endl v. New Jersey*, 5 F. Supp. 3d 689, 696 (D.N.J. 2014) (McNulty, J.). Either way, the disqualifying factor is that the defendant is, or acts on behalf of, the State.

10 S. Ct. 504, 505 (1890). A principle of jurisdictional stature, Eleventh Amendment immunity may be asserted under Fed. R. Civ. P. 12(b)(1).

Section 1983 imposes liability on "[e]very *person*, who, acting under color of any statute, ordinance, regulation, custom, or usage, of any State" subjects a person to a deprivation of certain rights. 42 U.S.C. § 1983 (emphasis added). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Hafer v. Melo,* 502 U.S. 21, 26, 112 S. Ct. 358, 362 (1991) (quoting *Will,* 491 U.S. at 71, 109 S. Ct. at 2312). An action against a State agent in that agent's official capacity[12] is considered an action against the State itself, not one against a "person." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S. Ct. 3099, 3104 (1985).

The New Jersey Civil Rights Act ("NJCRA"), like § 1983, grants a cause of action against "a *person* acting under color of law." N.J. Stat. Ann. § 10:6-2 (emphasis added). A "person" does not include the State of New Jersey. *Didiano v. Balicki,* 488 F. App'x 634, 638 (3d Cir. 2012) (citing definition of "person" in N.J. Stat. Ann. § 1:1-2, which excludes the State except in certain property disputes not relevant here). On these grounds, then, Count 4 would be dismissed to the same extent as the Count 5 § 1983 claims.[13] *See B.D. v. Bd. of Educ. of the Greater Egg Harbor Reg'l High Sch. Dist.,* 2015 WL 4508303, at *4 n.6 (D.N.J. July 24, 2015).

---

[12]     That distinction between official-capacity and personal-capacity claims, which is observed imperfectly in some of the briefing, is fundamental. This subsection deals only with official-capacity claims. Defendants named in their individual capacities remain amenable to suit under § 1983 as "persons," and may assert personal defenses to liability. *Hafer,* 502 U.S. at 25, 112 S. Ct. at 362; *Estate of Lagano v. Bergen Cnty. Prosecutor's Office,* 769 F.3d 850, 856 (3d Cir. 2014). Those personal-capacity issues are discussed separately in the following subsections.

[13]     In general, the NJCRA has been interpreted in parallel with § 1983. *Ingram v. Twp. of Deptford,* 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury,* 799 F. Supp. 2d 417, 443 (D.N.J. 2011). *See also Gonzalez v. Auto Mall 46, Inc.,* 2012 WL 2505733, at *4 (N.J. Super. Ct. App. Div. July 2, 2012) (citing *Rezem Family Assocs., LP v. Borough of Millstone,* 30 A.3d 1061, 1067 (N.J. Super. Ct. App. Div. 2011), *certif. denied,* 208 N.J. 366, 29 A.3d 739 (2011)).

### 1.   The New Jersey State Police and Det. Sgt. Tietjen

The Complaint asserts claims against the New Jersey State Police ("NJSP") and Det. Sgt. Tietjen of the NJSP in his official capacity. Counts 3, 4, and 5 assert malicious prosecution claims under state tort law, the NJCRA, and 42 U.S.C. § 1983. Counts 1, 2, 4, and 5 also assert other theories that are, or may be considered, claims under § 1983 or the NJCRA.[14]

The New Jersey State Police is indisputably an agency, and Det. Sgt. Tietjen an employee, of the State of New Jersey. Their status involves no controversial factual issues. As to them, the Eleventh Amendment would furnish grounds for a facial jurisdictional dismissal under Rule 12(b)(1). *See* pp. 12–13 & n.11, *supra*. In the alternative, the claims would be dismissed because the State and employees sued in their official capacities are not "persons" amenable to suit under § 1983 or the NJCRA. *See Graham, supra; Hafer, supra; Will, supra.*

The motion to dismiss the § 1983 and NJCRA claims against the NJSP and Det. Sgt. Tietjen in his official capacity is therefore granted.

### 2.   The ECPO defendants as an "arm of the State"

The ECPO defendants (the ECPO itself, Essex County Prosecutor Robert D. Laurino, Assistant Prosecutors Peter Guarino and Cheryl Cucinello, and the investigators employed by the ECPO) maintain that they, too, are not "persons" amenable to suit in their official capacities.[15] Their motion to dismiss the § 1983 and NJCRA claims on that basis is granted.

---

[14]    Counts 1, 2, and parts of Counts 4 and 5 were dismissed as untimely in the preceding section. To them, the immunity and amenability-to-suit doctrines discussed in this section would apply as well, and would furnish alternative grounds for dismissal.

[15]    The ECPO is not a State agency as such, and its employees are not strictly State employees. Application of the Eleventh Amendment to the ECPO defendants involves factual issues that cannot be resolved from the face of the Complaint. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Such issues would include (1) whether payment of any judgment against ECPO would come from the state treasury, (2) the status of the ECPO under state law, and (3) the ECPO's degree of autonomy. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989) (en banc). *See also Chisolm v. McManimon*, 275 F.3d 315, 323

As stated above, the State and its employees are not "persons" under § 1983 or the NJCRA. It follows that, if ECPO and its employees (sued in their official capacities) were acting as an arm of the State when performing the acts of which Evans complains, then they are not "persons" amenable to suit. If acting as local, county officials, however, they may be amenable to suit as "persons." *See Lagano*, 769 F.3d at 855.

As the preceding paragraph implies, New Jersey county prosecutors' offices sit uneasily astride the division between State and local entities. Sometimes they act in one capacity, and sometimes in the other:

> [W]hen [New Jersey] country prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye,* 87 F.3d 1491, 1505 (3d Cir. 1996). When county prosecutors perform administrative functions "unrelated to the duties involved in criminal prosecution," however, they act as county officials. *Id.* at 1505–06.

*Lagano*, 769 F.3d at 855; s*ee also Coley v. Cnty. of Essex,* 462 F. App'x 157, 161 (3d Cir. 2011).

To simplify a bit, the prosecutor's staffing and administrative functions flow from the County. Thus, *Coleman* held that, when dealing with personnel matters, a county prosecutor's office acted in its administrative capacity as part of county government. It therefore was a "person" which could be sued under § 1983 for employment-related discrimination. 87 F.3d at 1500–01.

As to enforcement of the criminal law, however, the county prosecutor acts as a State official. The prosecutor is a gubernatorially-appointed official of the State of New Jersey, pursuant to the State Constitution, who acts under the oversight of the State Attorney General. *Id.* Thus, where a county prosecutor and his detectives conducted an allegedly illegal search, they acted as part of the State government, because their conduct arose from their "investigation of criminal activity." *See Wright v. State,* 778 A.2d 443, 453 (N.J. 2001) (citing *Cashen v. Spann,* 311 A.2d 192 (N.J. Super. Ct. App. Div. 1973),

---

(3d Cir. 2001) (citing *Christy v. Pa. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

*aff'd*, 334 A.2d 8 (N.J. 1975)). When performing such law enforcement functions, prosecutors act as State officials, and therefore are not "persons" amenable to suit under § 1983. *See Michaels v. State of N.J.*, 968 F. Supp. 230, 236 (D.N.J. 1997), *aff'd*, 150 F.3d 257 (3d Cir. 1998) (malicious prosecution action against County prosecutor and assistant prosecutors).

Here, the misconduct alleged against the ECPO defendants in their official capacities arises from their law enforcement and prosecutorial functions. For example, the investigators are alleged to have introduced "fabricated" evidence for the purpose of obtaining an arrest warrant or indictment. (AC ¶¶ 28–34) The prosecutors are alleged to have presented to the grand jury evidence that was false and incomplete, in that it omitted exculpatory facts and credulously relied on the testimony of a "convicted felon." (AC ¶¶ 35–47) In performing those acts, the ECPO defendants were discharging essential prosecutorial functions; it follows that they were then acting as an arm of the State.

ECPO, as well as the individual ECPO defendants insofar as they are sued in their official capacities, are not "persons" under § 1983 or the NJCRA. The motion to dismiss all § 1983 and NJCRA claims asserted in Counts 1–5 against the ECPO, and against the ECPO defendants in their official capacities, is therefore granted.

## C.   Immunity

Dismissal of official-capacity claims, however, is not the end of the story. This Complaint is directed against defendants, not only in their official capacities, but also in their "individual ... capacities." (*E.g.*, AC ¶ 10) Individuals named as defendants in their personal capacities are amenable to suit as "persons." *Lagano*, 769 F.3d at 856. It does not matter that they happen to be government officials, or that the acts for which they are sued happen to be official acts. *Hafer*, 502 U.S. at 27, 112 S. Ct. at 362–63. Their amenability to suit flows solely from the personal capacity in which they are sued.

Defendants sued in their personal capacities may assert individual defenses, such as immunity:

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." [quoting *Kentucky v. Graham,* 473 U.S. at 166, 105 S. Ct. at 3105]. While the plaintiff in a personal-capacity suit need not establish a connection to governmental "policy or custom," officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Id.,* at 166–167, 105 S. Ct., at 3105–3106.

*Hafer,* 502 U.S. at 25, 112 S. Ct. at 362. And they assert such defenses here.

### 1.   Absolute immunity of ECPO prosecutors

The ECPO defendants, sued in their personal capacities, assert the defense of absolute prosecutorial immunity. Prosecutorial immunity erects a liability shield, not unlimited in breadth, but virtually impenetrable.

In *Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984 (1976), the Court applied established common law principles of immunity to a Section 1983 action against a prosecutor named Pachtman. Imbler, convicted of murder, was freed on habeas corpus based on findings that the State prosecutor had engaged in six culpable uses of misleading or false testimony, and had suppressed favorable fingerprint evidence. *Id.* at 414–15, 96 S. Ct. at 987–88. Imbler sued the prosecutor and the police for damages under 42 U.S.C. § 1983, adding allegations that the prosecutor knew a polygraph test had cleared him, and had introduced at trial a police sketch that had been altered to more closely resemble Imbler. Pachtman moved to dismiss the case under Rule 12(b)(6), claiming prosecutorial immunity.

The Court reasoned that absolute immunity must apply. Damages actions against prosecutors, it held, should not "survive[] the pleadings," because a prosecutor must be unfettered in his or her duty to enforce the criminal law. *Id.* at 424–26, 96 S. Ct. at 992–93. "To be sure, this immunity

does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* at 427, 96 S. Ct. at 993.

*Imbler* limited the scope of absolute immunity, however, to activities "intimately associated with the judicial phase of the criminal process ... to which the reasons for absolute immunity apply with full force." *Id.* at 430, 96 S. Ct. at 995. The effect of that limitation was to "leave standing those cases ... which hold that a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's." *Id.*[16]

Absolute immunity, then, is confined to activities closely associated with the judicial system itself. It therefore requires a "functional analysis" of the particular task that the prosecutor is performing:

> Absolute immunity attaches to ... activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior "intimately associated with the judicial phases" of litigation. ... By contrast, a prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. *Imbler,* 424 U.S. at 430–31, 96 S. Ct. at 994–96; *Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934, 1938 n.2, 114 L.Ed.2d 547 (1991). In addition, there may be instances where a prosecutor's behavior falls completely outside the prosecutorial role. *See Rose v. Bartle,* 871 F.2d 331, 346 (3d Cir. 1989). In that case, no absolute immunity is available.

*Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir. 1992).

Of course, malfeasance is no proper part of a prosecutor's role, but the analysis under *Imbler* is different. Immunity depends on the nature of the function, not the rightful or wrongful manner in which it is performed:

> To give examples of prosecutorial activities protected by absolute, as opposed to qualified, immunity, soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings is absolutely protected. [citing *Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934, 1939, 1941 (1991)]. Use of the false testimony in

---

[16]    That "good-faith defense," in context, refers to qualified immunity. *See infra.*

connection with the prosecution is absolutely protected. *See id.* at 1939 (eliciting false or defamatory statements from witnesses in a judicial proceeding was immunized at common law). Even interviews generating evidence to be presented to a grand jury are absolutely protected. [citing *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989] (prosecutor's solicitation of testimony for use in grand jury proceedings is "encompassed within 'the preparation necessary to present a case' and therefore [is] immunized as involving the prosecutors' advocacy functions.") (citation omitted).

*Kulwicki,* 969 F.2d at 1465. Also shielded by absolute immunity are claims based on failure to turn over exculpatory evidence. *Yarris v. Cnty. of Delaware,* 465 F.3d 129, 137 (3d Cir. 2006). What those immunity-protected functions have in common is that they involve the presentation of evidence to a court or grand jury, or closely-associated activities preparatory to doing so.[17]

As against Assistant Prosecutors Guarino and Cucinello, the Complaint alleges misconduct in connection with preparing the case for presentation, actually presenting it to the grand jury, and introducing evidence at trial.

---

[17]    District Judge Arleo has usefully summarized the scope of activities protected by absolute prosecutorial immunity thus:

> Prosecutors also are absolutely immune from a civil suit for damages under § 1983 for: (1) instituting grand jury proceedings without proper investigation and without a good faith belief that any wrongdoing occurred, *Schrob,* 948 F.2d at 1411; *Rose v. Bartle, supra*; (2) initiating a prosecution without a good faith belief that any wrongdoing has occurred, *Kulwicki,* 969 F.2d at 1463–64; (3) soliciting false testimony from witnesses in grand jury proceedings, probable cause hearings, and trials, *Burns,* 500 U.S. at 490; *Kulwicki,* 969 F.2d at 1467; and (4) the knowing use of perjured testimony in a judicial proceeding, *Imbler*, 424 U.S. at 424–27; *Schrob,* 948 F.2d at 1417; *Brawer v. Horowitz*, 535 F.2d 830 (3d Cir.1976). "[A]bsolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009) (citations omitted) (further holding that a supervisory prosecutor is absolutely immune for failing to adequately train and supervise district attorneys on the duty not to withhold impeachment evidence and the failure to create any system for accessing information pertaining to the benefits provided to jailhouse informants). A falsely-charged defendant may be "remedied by safeguards built into the judicial system," such as dismissal of the charges. *Kulwicki,* 969 F.2d at 1464.

*Desposito,* 2015 WL 2131073 at *6.

Guarino is alleged to have made the first presentation to the grand jury, on
May 13, 2010. (AC ¶ 35) During the second presentation, on June 11, 2010,
Guarino and Cucinello allegedly had an investigator read in prior testimony.
(*Id.* ¶ 36) During the third presentation, on July 9, 2010, Guarino and
Cucinello had Newark Police Det. Sabur read in police reports stating that
Evans and another witness had given a statement saying Evans had dropped
off the missing youths at 11 p.m. at the corner of Clinton and Fabyan. (*Id.* ¶¶
39, 40) Cucinello then had Lt. Carrega read in a "contradicting" statement by
Hampton, the "convicted felon" witness. Hampton's statement related that at
about 8:30 p.m. he and Evans took the five youths to 256 Camden Street, put
them in a closet, and set the house on fire. (*Id.* ¶¶ 42–44) Plaintiff concedes
that presentation of the exculpatory Sabur statement favored him. He alleges
"manipulation," however, in that the grand jury heard the Carrega statement
"last." (*Id.* ¶ 44) Evans also faults Guarino and Cucinello for failing to introduce
other exculpatory evidence: for example, a Fire Department report indicating
that 256 Camden was not vacant; statements of three individuals who rescued
other persons from a fire there at midnight (not 8:30 pm); statements taken
from persons who said they had seen the victims, with or without Evans, as
late as midnight or 12:30 a.m.; and the general lack of physical evidence
confirming that the boys were murdered or that Evans was involved. (AC ¶¶
45–47) Whether performed properly or not, these are core prosecutorial
functions that are shielded by absolute immunity. As to Assistant Prosecutors
Guarino and Cucinello, then, the motion to dismiss based on absolute
immunity is granted.

As to former County Prosecutor Laurino, the picture is somewhat
different, although the result is similar. Laurino, says Evans, participated in a
March 22, 2010, meeting with Det. Sgt. Tietjen, Lt. Carrega, Detectives Henry
and Hadley, and others, at which they "discussed" the arrest of Evans. I will
assume *arguendo* what Evans implies: that Laurino gave Carrega the go-ahead
to obtain an arrest warrant for Evans that same day. (AC ¶¶ 33, 67) The

meeting, and the arrest, allegedly occurred some three weeks before a local election and were allegedly motivated by Laurino's desire to aid Mayor Booker's campaign and obtain career advancement. (AC ¶ 30) The decision to initiate a prosecution, however, is protected by absolute immunity, irrespective of personal motives or the lack of evidentiary support for the charges. Thus, the Third Circuit has held that a County District Attorney was immune from suit where the D.A. had allegedly directed a police officer to file baseless charges against the D.A.'s political rival. *Kulwicki,* 969 F.2d at 1463–64. The same result must obtain here.

The malicious prosecution claims in Counts 3, 4, and 5 are dismissed as against Prosecutor Laurino and Assistant Prosecutors Guarino and Cucinello on grounds of absolute prosecutorial immunity. With irrelevant exceptions,[18] as to those three defendants absolute immunity would also furnish alternative grounds for dismissal of the other claims in the Complaint, dismissed above.

---

[18]    Evans alleges that Laurino vilified him in statements to *The Star-Ledger* and intentionally inflicted emotional distress upon him. (*Id.* ¶ 72) And based on the allegation that the participants in the March 22, 2010 meeting "discussed" the "investigation," counsel argues that Laurino was then acting as an investigator, not as a prosecutorial advocate.

Public statements and investigative acts would fall outside of a prosecutor's core function as an advocate in the judicial process. Thus they would be subject only to qualified, not absolute, immunity. *See generally Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S. Ct. 2606 (1993) (allegedly obtaining false expert analysis of boot print and making allegedly false statements to the press about the case are not protected by absolute immunity); *see also Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934 (1991) (participation in probable cause hearing is covered by absolute immunity, but giving legal advice to investigating officers is not).

The IIED claim based on media statements, which would fall outside of the absolute immunity shield, has already been dismissed on statute of limitations grounds. *See* Section II.A.2, *supra.* And although investigatory actions may not enjoy absolute immunity, the complaint does not in fact allege that Laurino committed any misconduct in connection with investigative acts. The allegation that the meeting participants "discussed" the investigation in the course of deciding to bring charges (which is to be expected) does not rob Laurino's decision of its essential prosecutorial character.

### 2.   Qualified immunity of ECPO defendants

Certain personal-capacity § 1983 and NJCRA claims against some of the ECPO defendants may pass the bar of absolute immunity. (For practical purposes, I refer to the defendant investigators employed by ECPO, but the same reasoning applies to any claim against a prosecutor not arising from his or her core role as advocate.) As to them, qualified immunity may apply.

"[Q]ualified immunity shields government officials from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). In analyzing whether qualified immunity attaches to the acts of a particular official, a court must "first determine whether the facts, and inferences drawn therefrom, taken in the light most favorable to the plaintiff, establish that the official's conduct violated a constitutional right." *McGreevy*, 413 F.3d at 364 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001)). If that first step is satisfied, the court must then "determine whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." *Id.* (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). That second step requires "that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent." *McGreevy*, 413 F.3d at 366 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). *See also Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002).

Qualified immunity issues (such as whether a violation was "objectively apparent" under the circumstances at the time) may require the kind of factual context that is available only on summary judgment or at trial. Nevertheless, when a qualified immunity issue is raised on a motion to dismiss, the Court is obliged to address it. "'[U]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is

entitled to dismissal before the commencement of discovery.'" *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985)). As *Thomas* implies, at the pleading stage such a clear violation need only be alleged, not proven. "The focus of the qualified immunity inquiry is on the allegations ...." *Lagano*, 769 F.3d at 859.

This Complaint alleges that various defendants introduced fabricated evidence, engineered a false arrest, and brought unfounded charges.[19] If that were true, it would constitute a violation of clearly established law that would have been apparent to a reasonable officer. *See, e.g., Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir. 1995) (as of 1989, "the right to be free from arrest except on probable cause was clearly established"). The motion to dismiss on grounds of qualified immunity must therefore be denied at this, the pleading stage. This denial is without prejudice to reconsideration after appropriate discovery has been conducted.

### III.   Failure to State a Claim: Malicious Prosecution (Counts 3, 4, 5)

I next consider motions to dismiss for failure to state a claim. As to the direct-liability claims (Counts 1 through 5), only the malicious prosecution claims alleged in Counts 3, 4, and 5 remain. At any rate, malicious prosecution is the theory that seems to best fit the allegations.

Malicious prosecution under 42 U.S.C. § 1983 requires that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal

---

[19]   A witness's trial testimony—even knowingly false testimony—is shielded by absolute immunity. *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) (citing *Briscoe v. LaHue*, 460 U.S. 325, 341, 345–46, 103 S. Ct. 1108 (1983)). That *Briscoe* immunity applies to pre-trial phases of litigation, such as grand jury testimony. *Rehberg v. Paulk*, — U.S. —, 132 S. Ct. 1497, 1505 (2012). I do not understand the Complaint to be asserting a claim based on the officers' trial or grand jury testimony as such.

proceeding." *Halsey v. Pfeiffer,* 750 F.3d 273, 296–97 (3d Cir. 2014) (citing *Johnson v. Knorr,* 477 F.3d 75, 82 (3d Cir. 2007)). Similarly, the common law tort of malicious prosecution requires the plaintiff to show that the defendant "(1) instituted proceedings (2) without probable cause and (3) with legal malice; and (4) the proceedings terminated in [plaintiff's] favor." *Wiltz v. Middlesex Cnty. Office of Prosecutor,* 249 F. App'x 944, 950 (3d Cir. 2007) (citing *Trabal v. Wells Fargo Armored Serv. Corp.,* 269 F.3d 243, 248 (3d Cir. 2001)).

Although prosecutors are the ones who typically initiate criminal proceedings, a law enforcement officer may be liable for malicious prosecution where the officer "influenced or participated in the decision to institute criminal proceedings." *Halsey,* 750 F.3d at 297. Setting aside defendants already found immune or not amenable to suit,[20] I here concentrate on the liability of the individual police and investigators named in Count 3: Det. Sgt. Henry, Detectives Hadley, Sabur and Sheppard, all of the Newark Police Department; Lt. Carrega, employed by ECPO; and Det. Sgt. Tietjen of the NJSP.[21]

### A.   Probable cause

Whether under Section 1983 or state law, the *sine qua non* of malicious prosecution is that the defendants have instituted a criminal proceeding without probable cause. *See Wiltz,* 249 F. App'x at 949 (citing *Johnson,* 477 F.3d at 82); *Trabal,* 269 F.3d at 248. "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers,* 308 F.3d 251, 255 (3d Cir. 2002) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964)).

---

[20]   The prosecutors have been found absolutely immune from suit. Count 3 also appears to be directed to Defendants Booker and McCarthy. Because there is no specific allegation that they directed the filing of charges, I consider the claims against them in connection with supervisory liability. *See* Section IV.B, infra.

[21]   I have already held that Tietjen, in his official capacity, is not amenable to suit as a "person" and that he is shielded by the Eleventh Amendment.

"A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)). The fact that a criminal defendant was ultimately acquitted does not imply that there was no probable cause to charge him; in fact the disposition of the charges "is irrelevant to the probable cause analysis." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627 (1979)); *see also Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003) (probable cause for arrest may have existed even if suspect did not actually commit crime).

Probable cause may be subverted where an officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood" and "[s]uch statements or omissions are material, or necessary, to the finding of probable cause." *Wilson*, 212 F.3d at 786–87. In seeking a charge or arrest warrant, officers may not rely on facts of which they had a "high degree of awareness of [their] probable falsity"— meaning that, "when viewing all the evidence, [they] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information … reported." *Id*. Further, they are obligated to disclose known facts that "[a]ny reasonable person would have known … was the kind of thing the judge would wish to know" in making a probable cause determination. *Id*.

There is no blanket rule that all information, or even all potentially exculpatory information, must be presented to a judge who issues an arrest warrant or an indicting grand jury. It is a question of context.

Of course, there are easy cases. Where a civil complaint establishes that the officers possessed a set of facts, and that set of facts establishes probable cause as a matter of law, a motion to dismiss might be granted. *See, e.g., Baker v. Wittevrongel*, 363 F. App'x 146, 150 (3d Cir. 2010) (finding amendment of complaint futile where arrest was based on facts sufficient to establish

probable cause). In general, however, probable cause is "a sufficiently fact-laden issue as to typically be a question for the jury." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 638 (D.N.J. 2011).

This Complaint alleges that the defendants presented a slanted case, failed to account for the inherent unreliability of the "convicted felon" witness, and omitted exculpatory facts. It alleges that this was done with wrongful intent, for the purpose of obtaining a conviction at all costs, or for political gain. Such evidence may undermine probable cause, even probable cause found by a grand jury. *See Moore v. Hartman,* 571 F.3d 62, 67 (D.C. Cir. 2009) (collecting cases); *Rose*, 871 F.2d at 353 (grand jury indictment "constitutes prima facie evidence of probable cause to prosecute, but ... may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means"). *But see Stolinski*, 772 F. Supp. 2d at 643–44 (probable cause is nevertheless assessed objectively, and bad motive alone will not negate it).

In short, the Complaint alleges that certain officers participated in arresting and charging Evans with the knowledge that they did not possess probable cause.

### B.    Other elements of malicious prosecution

The remaining elements of malicious prosecution are sufficiently alleged. A criminal proceeding was initiated against Evans via an arrest warrant, followed by an indictment. There can be no doubt that Evans's acquittal after a jury trial constituted a resolution of the charges in his favor. Evans suffered a deprivation of liberty in the nature of a Fourth Amendment seizure: he was arrested and detained for some five months.

Finally, the element of malice is alleged. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Robinson v. Jordan,* 804 F. Supp. 2d 203, 210 n.8 (D.N.J. 2011) (quoting *Morales v. Busbee,* 972 F. Supp. 254, 261 (D.N.J. 1997) (citations omitted)). This Complaint alleges that the defendants knew or

should have known that the evidence was unreliable or inadequate. With less factual support, it also alleges that they brought the prosecution in the hope of advancing their careers or aiding the Mayor's 2010 political campaign.

I find that the essential elements of a malicious prosecution claim have been sufficiently alleged against Defendants Henry, Hadley, Carrega, and Tietjen. As to Defendants Sabur and Sheppard, however, I find the allegations insufficient. Dets. Sabur and Sheppard are merely alleged to have taken statements from witnesses, and Sabur's grand jury testimony (relating at least one such statement) is actually alleged to have been exculpatory. The Complaint contains no specific factual allegations regarding any culpable participation by Det. Sheppard in the decision to bring the prosecution. (*See* Compl. ¶ 106) Nor do any allegations support an inference that Det. Sabur participated in or influenced the decision to prosecute Evans. Nor is any ulterior motive or malice ascribed to Sabur or Sheppard. The malicious prosecutions claims will be dismissed as against Dets. Sabur and Sheppard.[22]

The allegations, if assumed true, make out a claim of malicious prosecution as to defendants Henry, Hadley, Carrega, and Tietjen. As to them, the motion to dismiss the malicious prosecution claims in Counts 3, 4, and 5 for failure to state a claim is denied.

## IV.   Vicarious and Conspiracy Liability (Counts 6, 7, 8)

What remains of Counts 1–5, then, is a constitutional and tort claim of malicious prosecution, asserted against four individuals. Counts 6, 7, and 8 allege that the entities which employed those individuals, and the persons who directly or indirectly supervised them, are liable as well. Those entities and

---

[22]   Count 5 is also brought against Defendants Recktenwald, Investigator Jones, DeFrancisci and Eutsey. The only specific factual allegations against these defendants are that they took witness statements. (*See* Compl. ¶¶ 103–104 (regarding Defendants Jones and DeFrancisci), ¶ 105 (regarding Detective Eutsey), and ¶¶ 98, 132 (regarding Defendant Recktenwald).) Evans cites these witness statements as exculpatory and helpful to his case. Accordingly, the malicious prosecution claims against Defendants Recktenwald, Investigator Jones, DeFrancisci and Eutsey are dismissed.

supervisors have moved to dismiss the Complaint, contending that they cannot be held vicariously liable.

### A.   *Monell* Liability (Count 7)

Count 7 alleges that the City of Newark is liable under § 1983 for actions taken pursuant to official policy. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). It alleges that high-level officials, in their official capacities (Mayor Booker, Police Director McCarthy, County Prosecutor Laurino, Newark Police Deputy Chief Schneider, and New Jersey State Trooper Jones) [23] were responsible for promulgating and implementing those policies. Because the ECPO and the NJSP have already been dismissed, I set aside the allegations against them, as well as Laurino and Jones.[24]

A municipality is not vicariously liable via *respondeat superior* for the constitutional torts of its officials. Rather, a plaintiff must show that any violation of his constitutional rights "implement[ed] or execute[d] a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, supra). "In other words, the [City] may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in respondeat superior but 'it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.'" *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) and quoting *Beck*, 89 F.3d at 971). To municipal liability under § 1983, then, there are two routes: policy and custom. *Beck*, 89 F.3d at 971.

---

[23]   Schneider and Jones are not named in the caption. The caption does, however, name Newark Police Officer John Doe (1–10) and New Jersey State Trooper John Doe (1–10). In the body of the Amended Complaint, Evans states that Newark Police Officer John Doe 1 is Deputy Chief Kevin Schneider and that New Jersey State Trooper John Doe 1 is "DSFC Jones" (as distinct from defendant Investigator Edward Jones, an ECPO employee). (AC ¶ 114)

[24]   The claims against policymaking officials such as the Mayor, in their official capacities, are in substance claims against the City itself. For organizational reasons, I discuss the claims against those individuals under Count 6. *See* Section IV.B, *infra*.

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (internal citations omitted). "An official has policymaking authority for *Monell* purposes when the official is responsible as a matter of state law for making policy in the particular area of county business in question, and the official's authority to make policy in that area is final and unreviewable." *Mulholland*, 706 F.3d at 237 (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 245–46 (3d Cir. 2006)).

"Custom" is a course of conduct which, although not authorized by law, is "so permanent and well-settled" as to virtually constitute law. *Andrews*, 895 F.2d at 1480 (internal citations omitted). "Custom . . . may also be established by evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971.

An actionable municipal policy or custom may consist of poor training or failure to train employees. But "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989) (internal quotations omitted). A municipality may be considered deliberately indifferent where policymakers do nothing despite "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1360 (2011). To demonstrate such notice, a plaintiff must allege "a pattern of similar constitutional violations by untrained employees." *Id.* at 62, 131 S. Ct. at 1360.

Evans alleges that the City of Newark, through its Police Department, has maintained a custom, amounting to a *de facto* policy, "to not require its officers, prosecutors and investigators to establish probable cause prior to arresting and prosecuting an individual." (*Id.* ¶ 141) The necessary pattern, as well as the City's knowledge and acquiescence, are allegedly demonstrated by

"a plethora of civil rights violations against the residents of Essex County," established by a Department of Justice investigation of the Newark Police Department. (*Id.*) I take judicial notice that the investigation to which the complaint refers culminated in a March 30, 2016 consent decree with the Department of Justice that would place the Newark Police Department under the supervision of a monitor. The consent decree is based on a pattern of unconstitutional policing in Newark. In it, the City agrees that the Police Department "will revise search and seizure policies, training and supervision to ensure that all stops, searches and arrests are conducted in accordance with the Constitution and in a manner that takes into account community priorities."[25]

This Complaint may or may not turn out to bear any relation to a history of unconstitutional policing. Many circumstances suggest that it would not; this was, after all, a long-term investigation of an apparent multiple murder, not an illegal stop-and-frisk. But the Complaint adequately alleges such a pattern, and that is enough to go forward.[26]

Accordingly, I find that Evans has stated a claim for *Monell* liability against the City of Newark. The motion to dismiss Count 7 is denied.

## B.   Supervisory Liability (Count 6)

Count 6 alleges that certain higher-ups—Mayor Booker, Police Chief McCarthy, and County Prosecutor Laurino, Newark Police Deputy Chief

---

[25]     *See* https://www.justice.gov/opa/pr/justice-department-reaches-agreement-city-newark-new-jersey-reform-police-department-s.

[26]     Other policy and custom allegations are less persuasive. For example, the Complaint alleges that an unconstitutional "policy" is demonstrated because Det. Ramos kept a copy of the fire report at his home (*id.* ¶ 133) or because Lt. Carrega improperly "chauffeured a convicted felon, unaccompanied" to 256 Camden. Neither the existence of any policy nor the involvement of higher-ups is alleged. Elsewhere, plaintiff simply summarizes the facts of his case and alleges that the City had a "policy" of permitting such things to occur. (*Id.* ¶¶ 139–40) This, too, is conclusory, and it falls far short of factually alleging the existence of a policy or custom that goes beyond this case.

Schneider, and New Jersey State Trooper Jones—are liable for the misconduct of their subordinates that has given rise to a claim of malicious prosecution.[27]

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). Thus a plaintiff must allege that each defendant supervisor directed the allegedly unconstitutional conduct, or at least that he actually knew of and acquiesced in it. *Id.*

As for the Newark Defendants, Evans alleges that Mayor Booker, Director McCarthy, and Deputy Chief Schneider knew that the investigating officers possessed exculpatory evidence that subverted probable cause, but failed to take any steps to investigate or address that misconduct. (AC ¶¶ 117, 123–24) The Complaint alleges that the Mayor and Police Director sought political or career advantage shortly in advance of an election, and made statements in the media that celebrated the cracking of the case and vilified Evans. (*Id.* ¶¶ 30, 32, 58, 59)

In short, these paragraphs of the complaint allege that Mayor Booker and Director McCarthy were aware of, and endorsed, the alleged misconduct of their subordinates. These allegations are far from convincing at this point. This case, however, was notorious, and the press statements corroborate that it received high-level attention. Those circumstances raise above the purely speculative the allegations that these defendants were aware of the details.

As to Schneider, however, there are no such corroborating allegations. Nor does the Complaint allege that Schneider had a personal motive for seeing the prosecution brought. Absent such allegations (aside from the general and conclusory ones impugning the motives of defendants as a group), the complaint fails to state a claim for supervisory liability against Schneider.

---

[27]   This Count is also addressed to ECPO and the City of Newark. Section 1983 claims against ECPO have already been dismissed. The City's liability was discussed in the preceding section.

In a similar vein, the Complaint alleges that State Trooper Jones was aware of the lack of probable cause to arrest Evans, but "turn[ed] a blind eye" and allowed NJSP Det. Sgt. Tietjen to participate. (AC ¶¶ 125–27) These allegations against Jones lack supporting facts.[28] No direct involvement in any unconstitutional conduct is alleged. The allegations of Jones's knowledge and acquiescence are entirely conclusory. Indeed, the Complaint does not describe any interaction, supervisory or otherwise, between Jones and Det. Sgt. Tietjen. Accordingly, I will dismiss Count 6 as against State Trooper Jones.

With respect to County Prosecutor Laurino, the Count 6 allegations of direct involvement are similar to those discussed above. *See* Sections II.B & C, *supra*. I have already found, however, that Laurino is absolutely immune, except as to the IIED claim, which is time-barred.

In sum, Count 6 (supervisory liability) is dismissed as against Deputy Chief Schneider, State Trooper Jones, and County Prosecutor Laurino. The count survives as against Mayor Booker and Police Director McCarthy.

### C.    Conspiracy (Count 8)

Count 8 alleges that the individual defendants civilly conspired to deprive Evans of his constitutional rights under 42 U.S.C. § 1983. I focus on malicious prosecution, the substantive violation found viable above.

To set forth a claim for conspiracy to violate Section 1983, a plaintiff must allege facts that "support the existence of the elements of conspiracy, namely agreement and concerted action." *Desposito*, 2015 WL 2131073 at *14. A bare allegation of an agreement is not sufficient to state a claim for conspiracy. *See Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012) (per curiam).

The complaint alleges that a meeting of minds occurred at some unspecified time between May 2008 and November 23, 2011, wherein the individual defendants agreed to target Evans for the disappearance and murder

---

[28]    Evans does include NJSP Det. Sgt. Tietjen in his list of those who desired to obtain "career advancement in the Booker administration." (*Id.* ¶ 32) The plausibility of this allegation is undermined by the fact that Tietjen is a State, not a City employee.

of the five boys. (AC ¶¶ 145–46) That allegation is too vague to pass the *Twombly/Iqbal* test.

The Complaint also alleges, however, that on March 22, 2010, the day the arrest warrant was issued, County Prosecutor Laurino, Tietjen, Henry, Hadley, and Carrega (as well as other individuals not named as defendants), met and "agreed to initiate process against the plaintiff" in violation of his constitutional rights. (*Id.* ¶ 147) These allegations are not very detailed, and they do not appear to add much, if anything, to the allegations of malicious prosecution. Although these Count 8 allegations may therefore be superfluous, I will permit them to go forward to the same extent as Count 3. To that extent, then, the motion to dismiss Count 8 is denied as to Tietjen, Henry, Hadley, and Carrega, and granted as to the other defendants.

## CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss the Amended Complaint are granted in part and denied in part. Count 1 (abuse of process) and Count 2 (IIED) are dismissed without prejudice on statute of limitations grounds. Counts 3, 4, 5, and 8 are dismissed, except to the extent they allege malicious prosecution. Counts 6 and 7, alleging municipal and supervisory liability, are dismissed except as to the City of Newark, Booker, and McCarthy.

Still remaining are the following defendants and counts, to the extent they assert theories of malicious prosecution:

Counts 3, 4, and 5 (common law, NJCRA, and § 1983 malicious prosecution), and Count 8 (§ 1983 conspiracy) against Defendants Henry, Hadley, Carrega, and Tietjen;

Count 6 (supervisory liability under § 1983), against Defendants Booker and McCarthy;

Count 7 (*Monell* liability under § 1983), against the City of Newark.

An appropriate order follows.

KEVIN MCNULTY, U.S.D.J.

Date:  May 10, 2016