**KENYATTA STEWART, ACTING CORPORATION COUNSEL**
**CITY OF NEWARK – DEPARTMENT OF LAW**
**920 Broad Street, Room 316**
**Newark, New Jersey 07102**
**Attorney for Defendants City of Newark (improperly pled as "Newark City" and "Newark Police Department"), Cory A. Booker, Garry McCarthy, Darnell Henry and Joe Hadley**

**By: Gary S. Lipshutz, Esq.**
**Assistant Corporation Counsel**
**Telephone (973) 733-5945**
**Facsimile (973) 733-5394**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LEE EVANS,**<br><br>**Plaintiff,**<br>**v.**<br><br>**CITY OF NEWARK et al.,**<br><br>**Defendants.** | **Civil Action No. 2:14-cv-120(KM-MAH)**<br><br>**Hon. Kevin McNulty, U.S.D.J.**<br><br>**Hon. Michael A. Hammer, U.S.M.J.** |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO PERMIT PLAINTIFF TO SERVE LIMITED WRITTEN DISCOVERY REQUESTS ON THE CITY OF NEWARK**

## Table of Contents

**Table of Authorities** ........ 3
**Preliminary Statement** ........ 4
**Procedural History and Relevant Facts** ........ 7
**Argument** ........ 12
**Point I** ........ 12
Plaintiff never appealed Judge Hammer's March 20, 2018 Order to the District Court; this present "appeal" essentially seeking relief from that Order, filed almost two years after that Order was entered, is untimely pursuant to Fed. R. Civ. P. 72(a) ........ 12
**Point II** ........ 14
Plaintiff affirmatively waived his right to serve written discovery upon the City ........ 14
**Point III** ........ 18
Plaintiff's express waiver is a valid "stipulation" to "limit" discovery and such stipulations should be enforced in the absence of manifest injustice ........ 18
A. The effect of the Stipulation on the party seeking to undo the stipulation ........ 20
B. The effect on the other parties to the litigation ........ 21
C. Effect on the judicial system ........ 21
D. The occurrence of intervening events since the parties agreed to the Stipulation ........ 22
E. Whether evidence contrary to the Stipulation is substantial ........ 22
**Conclusion** ........ 22

# Table of Authorities

Page(s)

Cases

Bellesfield v. RCA Communications, Inc.,
675 F. Supp. 952 (D.N.J. 1987) .......... 13
Boylan v. Jackson Nat'l Life Ins. Co., Inc.,
353 Fed. Appx. 708 (3d Cir. 2009) .......... 15
Cannon v. Cherry Hill Toyota,
184 F.R.D. 540 (D.N.J. 1999) .......... 12
Cont'l Cas. Co. v. Dominick D'Andrea, Inc.,
150 F.3d 245 (3d Cir. 1998) .......... 13, 14, 16
E.E. Cruz & Co. v. Hartford Fire Ins. Co.,
2006 WL 3327909 (D.N.J. Nov. 15, 2006) .......... 18, 22
Elizabethtown Water Co. v. Hartford Cas. Ins. Co.,
15 F. Supp. 2d 561 (D.N.J.1998) .......... 15
Fenix v. Finch,
436 F.2d 831 (8th Cir. 1971) .......... 18
Gunter v. Twp. of Lumberton,
2012 WL 2522883 (D.N.J. June 29, 2012) .......... 17
Lebovitz v. Hartford Ins. Co. of the Midwest,
918 F. Supp. 2d 422 (W.D. Pa. 2013) .......... 12
Newsome v. Lawson,
286 F. Supp. 3d 657 (D. Del. 2017) .......... 12
Ruggerio v. City of Camden,
2013 WL 5962997 (D.N.J. Nov. 6, 2013) .......... 17
Shulton, Inc. v. Optel Corp.,
1987 WL 19491 (D.N.J. Nov. 4, 1987) .......... 12
Waldorf v. Shuta,
142 F.3d 601 (3rd Cir. 1998) .......... 18, 19, 20, 21

Rules

Fed. R. Civ. P. 29 .......... 7, 18
Fed. R. Civ. P. 72 .......... 6, 12

**Preliminary Statement**

Six years after Plaintiff filed this case, and two years after Plaintiff specifically and affirmatively waived the right to seek written discovery from the City of Newark ("City" or collectively, "City Defendants"), Plaintiff has now moved for a "redo." Plaintiff now wants to serve broad Monell discovery on the City. Plaintiff's request is out of time and unfair to the City given the posture of this case. This Court should not permit Plaintiff to walk back from his express waiver.

From the record of documents available to this Court, shortly after the defendants removed the case to federal court in January 2014, the parties completed and filed a joint discovery plan, in March 2014. In that plan, the Plaintiff expressed the need to obtain written discovery from the City on the following types of documents:

> **All documents in the possession and control of the Newark Police Department**, including but not limited to all Sheriff's reports, Sheriff's notes, CAD sheets, transportation logs, dispatch tapes, registration of confidential informants, **personnel files, internal affairs complaints, etc**. (emphasis added)

See, D.E. 6-1 at ¶6(a)4.

At that time, Tisha Adams, Esq. represented the Plaintiff. It is immediately apparent from reading this "filed" discovery plan that Ms. Adams knew Plaintiff needed to conduct written discovery on the City. However, Ms. Adams did not serve any discovery demands on the City.

Ms. Adams moved to be relieved as Plaintiff's counsel, which the Court granted in July 2015. Consequently, Plaintiff was not represented for a time. On June 7, 2017, Mr. Evans, then *pro se*, wrote to the Court stating that he was planning to meet with a new attorney on June 12, 2017 (Craig O'Connor, Esq.). Mr. Evans requested an

extension *of the deadline to serve written discovery demands* from July 9, 2017 to August 9, 2017. See, D.E. 82.

Again, it is immediately apparent that Mr. Evans also recognized that he too had an obligation to conduct written discovery on the City, whether *pro se* or represented, because he acknowledged that explicit deadline in his letter and requested an extension. However, Mr. Evans, like Ms. Adams, did not serve any discovery demands on the City.

Mr. Evans then retained Craig O'Connor, Esq. in July 2017. Mr. O'Connor filed a Substitution of Attorney. After Mr. O'Connor joined the case, the parties met, conferred, and agreed to a discovery plan where all written discovery demands would be served by September 1, 2017. The Court memorialized that plan in an executed Consent Order dated July 17, 2017. D.E. 89.

Again, it is immediately apparent that Mr. O'Connor similarly recognized that he needed to conduct written discovery on the City because he signed the Consent Order on behalf of the Plaintiff. However, Mr. O'Connor, like Ms. Adams and Mr. Evans before him, did not serve any discovery demands on the City.

Two attorneys, Ms. Adams and Mr. O'Connor, and Mr. Evans himself *pro se*, all knew that there was an obligation to serve discovery demands on the City. Yet, none of them ever did.

For its part, the City did not remain quiet. There was no attempt to lull the Plaintiff into inaction. The City was concerned about the possibility of extensive discovery delays attendant to Monell-type discovery, especially on a case concerning events dating back to 1978. The City reached out to Mr. O'Connor several times in

2017 to remind Mr. O'Connor of the deadlines to serve discovery demands on the City. However, Mr. O'Connor did not respond.

The City then wrote to the Court on January 18, 2018:

> [W]e now take the position that Plaintiff's failure to serve any such discovery demands on the City Defendants, in contravention of the Court's Orders, is a waiver of such right to obtain such discovery from the City defendants outright.
>
> [T]he City Defendants have made repeated efforts to ensure that we would not be the cause of further delays in this matter, **despite the fact that we have no such obligation to actually point out the Plaintiff's failure to serve discovery.** (Emphasis added).

Ultimately, On March 19, 2018, the parties participated in a scheduling conference with Magistrate Judge Hammer. During the hearing, the City again raised its Monell-discovery concerns as previously detailed in its January letter. During the conference, Mr. O'Connor specifically elected to waive written discovery and requests for admissions on the City. Judge Hammer then memorialized this waiver in the Court's Order: "Plaintiff has elected not to seek any written discovery from the Defendant City of Newark or any requests for admissions." D.E. 101.

Plaintiff's new counsel, who came into this case in late 2019, now seeks to undo *six years* of inaction and an explicit waiver. While perhaps understandable because Plaintiff has new counsel, who might have different tactics and litigation strategy than both of Plaintiff's prior counsel, Plaintiff is now bound by his choice of prior counsel and their strategic decisions, and further by his own decision not to serve discovery demands when there was no impediment to him doing so.

We respectfully oppose this motion for three reasons:

First, Fed. R. Civ. P. 72(a) absolutely bars Plaintiff's present request to essentially undo Judge Hammer's March 20, 2018 Order. Plaintiff failed to appeal that

Order to the District Court within the time permitted. Consequently, that Order is effectively not reviewable, either by the District Court or by the Third Circuit on appeal.

Second, Mr. O'Connor unequivocally waived Plaintiff's right to serve written discovery or requests for admissions on the City, and that waiver binds Plaintiff.

Third, pursuant to Fed. R. Civ. P. 29(b), Mr. O'Connor's "election" is effectively a valid stipulation between the parties to "limit" the scope of discovery, which agree-upon limitations the Court's encourage, and such a stipulation should be enforced because there is no manifest injustice, especially where Plaintiff himself could have served discovery demands but chose not to.

Respectfully, Plaintiff's motion should be denied in all respects.

**Procedural History and Relevant Facts**

On March 22, 2010, Plaintiff Evans was arrested and charged with five counts of first-degree murder and arson in relation to the disappearance of five boys in 1978. Among other evidence, the testimony of Plaintiff's cousin implicated Plaintiff in the crimes. After a criminal trial, Evans was acquitted in November 2011.

On November 21, 2013, Evans brought suit in the Superior Court of New Jersey, Essex County, against a number of defendants he alleges had a role in his unlawful arrest, detention, and prosecution. On January 9, 2014, the matter was removed to the United States District Court with the consent of all Defendants.

On March 11, 2014, the parties filed a joint discovery plan. D.E. 6. The plan, signed by plaintiff's then-counsel Ms. Evans, identified the need for discovery from the City relative to Monell-type claims.

The defendants all filed motions to dismiss. While the motions were pending, Evans sought to file an Amended Complaint. The defendants filed renewed motions to dismiss the Amended Complaint. The District Court granted those renewed motions-in-part and denied those motions-in-part in an Order with accompanying Opinion dated May 10, 2016. D.E. 71, 72.

On July 6, 2015, this Court granted Ms. Adams leave to withdraw. Evans was *pro se* for two years thereafter.

On June 7, 2017, Mr. Evans, then *pro se*, wrote to the Court stating that he was planning to meet with Craig O'Connor, Esq. and Mr. Evans requested an extension of the deadline to serve written discovery demands from July 9, 2017 to August 9, 2017. D.E. 82.

On July 7, 2017, Plaintiff's second counsel, Mr. O'Connor, filed an entry of appearance. D.E. 84. After Mr. O'Connor joined the case, the parties met and conferred, and agreed to a plan where all written discovery demands would be served on September 1, 2017. The Court memorialized that plan in a Consent Order dated July 17, 2017. D.E. 89.

The City served discovery demands on September 1, 2017, in accordance with the Consent Order. Plaintiff did not serve any discovery demands on the City.

The City raised the Plaintiff's failure to serve discovery demands in a telephone conference with the Judge Hammer on September 22, 2017. Mr. O'Connor indicated that discovery demands as to the City would be forthcoming.

The City then sent numerous letters to Mr. O'Connor "remind[ing Mr. O'Connor] that the City of Newark defendants still have not received any discovery demands from

the Plaintiff." See, letter dated September 27, 2017, attached to Lipshutz Cert. as Exhibit A; letter dated October 17, 2017, attached to Lipshutz Cert. as Exhibit B;

On January 1, 2018, more than four months after the September 1, 2017 deadline to serve discovery on the City, the City again wrote to Mr. O'Connor:

> Finally, despite my letters to you of September 27, 2017 and October 17, 2017, Plaintiff served no discovery demands upon the City Defendants. It is the City Defendants' position that Plaintiff's failure to serve such demands, in contravention of the Court's Orders, is a waiver of such right to obtain such discovery. Please be guided accordingly.

See, letter dated January 10, 2018, attached to Lipshutz Cert. as Exhibit C.

The City next wrote to Judge Hammer on January 19, 2018 to relate its concerns over Plaintiff's failure to respond to the City's discovery demands, and pertinent here, the City concerns over Monell-type discovery delays:

> At the last telephone conference, which occurred on September 22, 2017, I advised the Court and the Plaintiff's counsel that the City Defendants had not yet received any discovery demands, **and I was concerned that such discovery demands, were they to be served, would seek significant Monell materials from the City, and that there would be attendant delay as a result.**
>
> I therefore wrote to Mr. O'Connor on September 27, 2017 and again on October 17, 2017 (via email and facsimile), to remind him that I had still not received any discovery demands from the Plaintiff. I received no response to these letters.
>
> I wrote to Mr. O'Connor again on January 10, 2018, and have not received any response. Because of the passage of time, we now take the position that Plaintiff's failure to serve any such discovery demands on the City Defendants, in contravention of the Court's Orders, is a waiver of such right to obtain such discovery from the City defendants outright.
>
> These letters are attached. As the Court can clearly see, **the City Defendants have made repeated efforts to ensure that we would not be the cause of further delays in this matter, despite the fact that we have no such obligation to actually point out the Plaintiff's failure to serve discovery.** D.E. 94 (emphasis added).

On January 30, 2018, Judge Hammer entered the following text Order in response:

> The Court has reviewed Defendant City of Newark's January 19, 2018 letter [D.E. 94], to which Plaintiff has not responded. On or before February 12, 2018, Plaintiff must produce all outstanding discovery responses to Defendant. The February 13, 2018 conference shall proceed as scheduled. So Ordered by Magistrate Judge Michael A. Hammer on 1/30/2018.

On February 13, 2018, the parties participated in a telephone status conference before Judge Hammer. Mr. O'Connor explained that he did not intend to serve written interrogatories or any notice to produce on the City Defendants, but that he was still considering serving Requests for Admissions upon the City Defendants. The Court then entered an Order on February 13, 2018 that required, among other things, that "Plaintiff shall serve any requests to admit by February 19, 2018." D.E. 97.

That deadline passed without any action by the Plaintiff. Accordingly, on March 15, 2018, the City wrote to Judge Hammer to relate that:

> Notwithstanding Your Honor's February 13, 2018 Order [D.E. 97], as of today … Plaintiff [has not] served any Requests for Admission on the City defendants. D.E. 100.

On March 19, 2018, the parties participated in a telephone status conference before Judge Hammer. During the hearing, the City again raised its concerns over Plaintiff's failure to serve *any* discovery demands in violation of numerous Court Orders. During the conference, Mr. O'Connor then affirmatively elected to waive the right to serve both written discovery demands *and* requests for admissions on the City. Judge Hammer memorialized Mr. O'Connor's affirmative waiver in an Order: "Plaintiff has elected not to seek any written discovery from the Defendant City of Newark or any requests for admissions." D.E. 101.

Plaintiff has not presented the transcript of that conference for the Court's review.

Mr. O'Connor did not explain the reason behind his decision to waive discovery from the City Defendants. However, by that point in time, the defendants had already served substantial documents on either Plaintiff *pro se* or Mr. O'Connor. Specifically, on November 17, 2016, Mr. Bowens served some 4,029 pages of documents from the Essex County Prosecutor's Office – essentially the entire contents of the Prosecutor's file - upon Mr. Evans, *pro se*. In addition, on March 16, 2018, the State Police served 542 pages of State Police records on Mr. O'Connor.

In the year following Plaintiff's waiver, the focus of this case shifted to obtaining discovery responses from Plaintiff. Judge Hammer was involved in numerous telephone conferences and entered numerous Orders compelling responses from Plaintiff. The City ultimately filed two motions to dismiss. There was no mention about the need to conduct discovery on the City.

By May 30, 2019, Mr. O'Connor sought to withdraw from the case. D.E. 127.

On August 16, 2019, Plaintiff's third counsel (Ms. Bonjean) substituted into this matter. D.E. 130.

## Argument

## Point I

**Plaintiff never appealed Judge Hammer's March 20, 2018 Order to the District Court; this present "appeal" essentially seeking relief from that Order, filed almost two years after that Order was entered, is untimely pursuant to Fed. R. Civ. P. 72(a)**

Fed. R. Civ. P. 72(a) provides:

> Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

"Matters involving discovery orders are non-dispositive pretrial matters…" Newsome v. Lawson, 286 F. Supp. 3d 657, 660 (D. Del. 2017)(citing Lebovitz v. Hartford Ins. Co. of the Midwest, 918 F. Supp. 2d 422, 424 (W.D. Pa. 2013)); Shulton, Inc. v. Optel Corp., 1987 WL 19491, at *6 (D.N.J. Nov. 4, 1987). Here, Plaintiff's motion falls squarely within the constraints of Fed. R. Civ. P. 72(a) because Plaintiff is now essentially seeking relief from Judge Hammer's March 20, 2018 Order which concerned a matter of discovery, but now almost two years have passed.

Upon the entry of a non-dispositive order by a Magistrate Judge, a challenging party must make a timely objection. The consequence for failing to timely appeal a Magistrate Judge's non-dispositive discovery order is the preclusion of that issue being raised later in litigation. That preclusion specifically applies to claims of waiver of the like being asserted here. Cannon v. Cherry Hill Toyota, 184 F.R.D. 540, 545 n.1 (D.N.J.

1999)(defendant failed to appeal Magistrate Judge's determination on issue of waiver of attorney-client privilege resulting in that determination being final and beyond reconsideration).

Thus, in Bellesfield v. RCA Communications, Inc., 675 F. Supp. 952 (D.N.J. 1987), the defendant employer and union jointly moved for summary judgment on plaintiff employee's claim of wrongfully termination and inadequate union representation. In response, the Plaintiff sought additional discovery. The District Court rejected this plea, finding that discovery was closed as per the order of the Magistrate Judge, the Magistrate Judge previously denied Plaintiff's request to re-open discovery, and Plaintiff did not appeal that ruling. Id. at 959.

In Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998), the Third Circuit explained the rationale behind this procedure:

> The time and resources of the district judges are conserved because, once the matter is assigned to a magistrate judge and he or she makes his or her decision or recommendation, the district judge need take no time reviewing the matter unless a party objects to the order. Hence, unobjected to orders and recommendations or parts thereof do not take up the district judge's time. If the district courts were required to review all of the magistrate judge's decisions and recommendations, even those to which there was no objection, the policy of the [Federal Magistrates Act] would be severely undermined

Moreover, the Third Circuit will not even review such un-appealed magistrate rulings: "This Court has specifically held that a party failing to appeal to the district court a magistrate judge's order in a nondispositive matter may not raise an objection to it on appeal to a circuit court." Id. at 252.

Here, Judge Hammer's March 20, 2018 Order is final and beyond reconsideration. When Judge Hammer addressed the outstanding discovery during the conference on March 19, 2018, Judge Hammer's resultant Order was the product of a

six-month long process (September 2017 through March 2018) wherein the Court afforded every opportunity to the Plaintiff to serve discovery demands. Ultimately, Mr. O'Conner elected to waive Plaintiff's right to do so, and while Plaintiff's current counsel may not be happy with that outcome, Plaintiff has no recourse to revisit that ruling. The Third Circuit has spoken that a party's "evident unhappiness" is not probative:

> Allowing a party's evident "unhappiness" about an order to constitute an objection is antithetical to orderly litigation. Parties are often unhappy with orders but elect not to object to them for tactical or other reasons. Permitting a state of mind to substitute for an objection on the record would allow a party to sandbag the district court and the other parties by allowing or inviting the court to make an error and then springing the issue on the other party on appeal.

Cont'l Cas. Co., 150 F.3d at 251–52.

For these reasons, there is no procedural basis to revisit Judge Hammer's March 20, 2018 Order. This motion is simply too late.

**Point II**

**Plaintiff affirmatively waived his right to serve written discovery upon the City**

Assuming, arguendo, that this Court would be inclined to consider the substantive merits of Plaintiff's motion, it is clear that there is no legitimate basis to allow discovery demands of the City at this time.

At the outset, it is important to note that Plaintiff's present counsel has conceded that Mr. O'Connor affirmatively waived Plaintiff's right to seek discovery from the City. Moving Letter Brief at p. 6. Nor has Plaintiff offered any meaningful argument that such waiver was not valid. Therefore, the question before this Court is whether Plaintiff has presented any basis to undo that valid waiver.

Plaintiff is correct not to challenge the validity of Mr. O'Connor's express waiver. The Third Circuit defines waiver as the intentional and voluntary relinquishment of a known right. Boylan v. Jackson Nat'l Life Ins. Co., Inc*.,* 353 Fed. Appx. 708, 711 (3d Cir. 2009); see also, Elizabethtown Water Co. v. Hartford Cas. Ins. Co*.,* 15 F. Supp. 2d 561, 565 (D.N.J.1998). There can be no dispute that Mr. O'Connor intentionally and voluntarily relinquished the right to serve discovery on the City; after all, that waiver was memorialized in Judge Hammer's Order after an extensive period where the Plaintiff's failure to serve discovery demands on the City were at the forefront of the discussions between the parties and the Court.

Plaintiff, who is now on his third attorney, now seeks to undo his second attorney's explicit-and-memorialized-by-Court-Order waiver of written discovery. Plaintiff blames Mr. O'Connor, who Plaintiff says was grossly incompetent or negligent in handling *not only* of the subject discovery demands to the City, but also Plaintiff's failure *to respond to discovery* requests from the defendants. This argument misses the mark for two reasons, and this Court should ignore Plaintiff's strawman argument.

First, this six-year old case has certainly been plagued with discovery delays on the Plaintiff's part. However, not all of the discovery delays fall entirely upon Mr. O'Connor's shoulders. Plaintiff's first attorney, Ms. Adams, also failed to make any discovery demands of the City whatsoever, and she withdrew having served no demands on the City. Plaintiff himself, during the period when he was acting *pro se*, similarly failed to serve any discovery demands.

Moreover, Plaintiff's obligation to serve discovery demands of the City was no secret and the City did not stand in Plaintiff's way. To the contrary, the City went out of

its way to remind Mr. O'Connor that no discovery demands had been served. Moreover, the Monell issues were at play from the outset of the case, identified in the initial discovery plan prepared by Ms. Adams nearly six years ago, on March 11, 2014.

The fault here lies not only with Mr. O'Connor, but also with Ms. Adams and Plaintiff himself.

Second, Mr. O'Connor's difficulty in *responding to defendants' discovery demands* is irrelevant. Plaintiff's case has never been in real jeopardy solely because Mr. O'Connor failed to timely comply with discovery demands. True, the Court compelled Plaintiff to provide responses on several occasions, but the Amended Complaint was never stricken, and no sanctions were ever issued.

Finally, ultimately irrelevant is whether Mr. O'Connor's election to waive discovery as to the City was strategic, or - as the Plaintiff would characterize it - inept. As the Third Circuit stated:

> Counsel strategically made a calculated exercise of judgment that may have been ill-considered. When a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake.

Cont'l Cas. Co., 150 F.3d at 253 (citations and internal quotations omitted).

While Mr. O'Connor may be as incompetent as Plaintiff so alleges, it is just as reasonable to conclude that Mr. O'Connor made a strategic choice not to seek additional discovery from the City. After all, Plaintiff already had the entire ECPO prosecution file (more than 4,000 pages of documents) as well as the State Police records (five hundred pages of documents). Mr. O'Connor may have determined that he had sufficient paper discovery such that the strength of Plaintiff's case was not the Monell claims against the City, but rather directed at the other defendants. This matter,

the Court should recall, concerns a homicide prosecution *by the ECPO*, not the City of Newark, with an investigation *by officers in the ECPO Homicide Task Force*, and not directly by the City of Newark Police Department (although City NPD officers were assigned to the ECPO Homicide Task Force).

Perhaps Mr. O'Connor did not want to incur the additional time and expense to litigate claims he felt may not have merit. Often litigants in civil rights cases entirely ignore Monell claims and focus only upon the underlying alleged constitutional violation. See, e.g., Gunter v. Twp. of Lumberton, No. CIV. 07-4839 NLH/KMW, 2012 WL 2522883, at *11 (D.N.J. June 29, 2012) (Plaintiff did not oppose summary judgment as to this claim and the Court granted summary judgment on the Monell Claim."), aff'd, 535 F. App'x 144 (3d Cir. 2013); Ruggerio v. City of Camden, No. CIV. 12-3343 JBS/AMD, 2013 WL 5962997, at *6 (D.N.J. Nov. 6, 2013)("Summary judgment is granted on all other claims … [including] a Monell violation …. Plaintiff expressly opted not to oppose the entry of summary judgment on these counts.")

Of course, this is somewhat of speculation on our part, but Plaintiff counters with nothing but his own speculation as to the reasoning behind Mr. O'Connor's waiver. At bottom, just because Plaintiff's current counsel *disagrees* with Mr. O'Connor's litigation tactic does not justify undoing the waiver.

Additionally, undoing Mr. O'Connor's waiver would unduly prejudice the City and will result in significant additional delays in this six-year old case. This was the City's stated concern two years ago. Two more years have now passed – even more significant when this Court considers that this case pertains a missing person's case from 1978 and a homicide trial that took place nine years ago.

Finally, Plaintiff is not entirely without a remedy. The City turned over its missing persons' file that includes documents dating back to the initial investigation in 1978. Plaintiff may still depose the individual defendants and may yet develop sufficient proofs of the underlying constitutional claims.

On this record, there is simply no basis to undo Mr. O'Connor's valid waiver.

**Point III**

**Plaintiff's express waiver is a valid "stipulation" to "limit" discovery and such stipulations should be enforced in the absence of manifest injustice**

Even further assuming, arguendo, that this Court is inclined to review the waiver substantively, the Court should also uphold Mr. O'Connor's choice not to conduct discovery on the City as a valid "stipulation" to limit discovery.

Fed. R. Civ. P. 29 provides, in pertinent part, that:

> Unless the court orders otherwise, the parties may stipulate that. . .
>
> (b) other procedures governing **or limiting** discovery be modified … (emphasis added).

"Stipulations "promote judicial economy" and "narrow the issues in dispute during litigation" and allowing parties to set aside or modify stipulations would defeat their purpose." See, E.E. Cruz & Co. v. Hartford Fire Ins. Co., No. CIV.A. 05-1523 (MLC), 2006 WL 3327909, at *2 (D.N.J. Nov. 15, 2006) citing Waldorf v. Shuta, 142 F.3d 601, 616 (3rd Cir. 1998).

When parties freely enter into stipulations and the stipulations are approved by the court, such stipulations are not lightly set aside. See, Fenix v. Finch, 436 F.2d 831 (8th Cir. 1971). A party may successfully withdraw from a stipulation only if the court

finds the moving party has demonstrated "exceptional circumstances" and that without relief from the stipulation the moving party would suffer "manifest injustice." Waldorf, 142 F.3d at 614.

Manifest injustice is measured by: (1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation and on the court; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether evidence contrary to the stipulation is substantial. Id. at 617-618.

In Waldorf, plaintiff sued to recover for catastrophic injuries sustained in an automobile accident. A significant verdict in Plaintiff's favor was reversed on appeal and the matter was remanded for a new trial. On remand, the defendant stipulated to a procedure where there would initially be a trial on damages only, and after that, a trial on liability before a different jury. After a second significant damage award, and before the "second" liability trial, defendant appealed. On appeal, the verdict was again reversed and a new trial, only as to damages, was ordered. On remand, defendant retained new counsel who sought to be relieved from its stipulation of liability. The district court denied the motion and held that the stipulation bound the defendant. A third damages-only trial was held, and the parties appealed that verdict, with the defendant seeking relief from the stipulation.

The Third Circuit held that defendant was bound: "The plain language of the stipulation clearly does not reserve to the [defendant] any right to contest liability …" Id. at 612. The Third Circuit noted that the stipulation was a "tactical decision," and found no manifest injustice: "When the [defendant] made the stipulation prior to the second

trial, it had a full understanding of the legal rights it was relinquishing, and had clear knowledge of the consequences of its stipulation. In light of these circumstances, we cannot say that the district court abused its discretion in determining that the [there was no] finding of manifest injustice." Id. at 618.

In this matter, Plaintiff has the obligation to demonstrate manifest injustice, which it has not done.

**A. The effect of the Stipulation on the party seeking to undo the stipulation**

It is true that the Stipulation limits Plaintiff's ability to obtain Monell-discovery from the City. However, the Stipulation does not doom Plaintiff's entire case. Plaintiff has thousands of documents concerning the underlying investigation and the resulting criminal prosecution. Plaintiff's claims against the individual defendants remain. Plaintiff may depose the individual defendants and may yet muster sufficient proof to prevail.

Granting Plaintiff relief from the waiver of discovery would allow Plaintiff, essentially, to start over in discovery in a case that is now six years old, concerning an event that is now forty-two years old. Like the defendant in Waldorf, which sought to gain a tactical advantage, Plaintiff seeks the same outcome. However, like Waldorf, there are no facts to support granting this request based upon Mr. O'Connor's arguable "tactical decision." The Third Circuit's ruling in Waldorf is significant because despite the heavy stakes involved, the Third Circuit was extremely hesitant to undue a valid stipulation. This analysis weighs against Plaintiff's motion.

**B. The effect on the other parties to the litigation**

Relieving Plaintiff from the stipulation to limit discovery would be unduly prejudicial to the City. As discussed above, written discovery requests would absolutely result in additional significant delays to this already six-year-old litigation. Most notably, this very same concern was the central issue raised by the City in 2017 and is exactly that which the City sought to avoid. The City, like any party, is entitled to be treated fairly. Six years of litigation is just as burdensome on a public entity as it is on any other party. Permitting broad Monell-discovery will likely add significant delay to this matter on top of the already wasted time.

**C. Effect on the judicial system**

The Third Circuit in Waldorf also considered the prejudice to the judicial system by undoing the stipulation. Id. at 615. Just as in this case, the Waldorf court was presented with new counsel, and the district court was concerned that "new counsel might have tried the case differently than the previous counsel if he had been present at the outset of the case." Id. As the Third Circuit noted, the district court was entitled to rely upon judicial estoppel, "precluding a party from asserting a position in a proceeding that is inconsistent with a previously asserted position," as grounds to refuse to vacate the stipulation. Id.

Estoppel likewise applies here, because Plaintiff seeks to undermine a Court-approved stipulated discovery procedure, merely because new counsel disagrees with prior counsel's litigation strategy and perhaps might have conducted pre-trial discovery "differently than the previous counsel if [she] had been present from the outset of the case." This analysis weighs against revisiting the stipulation.

**D. The occurrence of intervening events since the parties agreed to the Stipulation**

Other than plaintiff's change of counsel, no intervening events occurred since Mr. O'Connor waived the right to conduct discovery. Naturally, Plaintiff's third counsel approaches this six-year-old case with her own litigation tactics. However, "evidential rethinking and other morning-after quarterbacking [is] prohibited as grounds for relief from a stipulation, and any prejudice suffered by plaintiff is grounded upon its own failure to exercise due diligence with respect to the pre-trial stipulations." E.E. Cruz & Co. v. Hartford Fire Ins. Co., No. CIV.A. 05-1523 (MLC), 2006 WL 3327909, at *3 (D.N.J. Nov. 15, 2006)(citations omitted).

Plaintiff's arguments in support of relief from the stipulation are the essence of morning-after quarterbacking. Accordingly, this analysis weighs against granting relief.

**E. Whether evidence contrary to the Stipulation is substantial**

Plaintiff has presented no substantial evidence contrary to the stipulation. This element also weighs against Plaintiff's instant motion.

**Conclusion**

Based on the foregoing, the City requests Plaintiff's motion to serve limited written discovery be denied in its entirety.

By: *_/s/ Gary Lipshutz_*
Gary Lipshutz
Assistant Corporation Counsel

Dated: January 21, 2020