**Jennifer Bonjean**
**Ashley Cohen**
**Bonjean Law Group, PLLC**
**467 Saint Johns Place**
**Brooklyn, New York 11238**
**Tel: 718-875-1850**
**Fax: 718-230-0582**
**Jennifer@bonjeanlaw.com**
**Ashley@bonjeanlaw.com**

**Attorneys for Plaintiff**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK VICINAGE**

---

| | | |
|---|---|---|
| **LEE EVANS,** | ) | Case No. 2:14-CV-00120 |
| | ) | |
| **Plaintiff,** | ) | The Honorable District Court Judge |
| | ) | Kevin McNulty |
| **-vs-** | ) | |
| | ) | Honorable Magistrate Judge |
| **CITY OF NEWARK, ET AL.** | ) | Michael A. Hammer |
| | ) | |
| | ) | **MOTION DAY:** December 21, 2020 |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER MAGISTRATE JUDGE'S ORDER QUASHING PARAGRAPHS 1-5 OF PLAINTIFF'S THIRD-PARTY SUBPOENA**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .................................................................................. 1

ARGUMENT

Plaintiff's Subpoena (¶¶1-5) to ECPO Was Properly Issued Pursuant to Fed. R. Civ. P. 45 and Was Not Designed to End-Run the Written Discovery Procedure for Parties Since it Seeks Material that Is Not in Possession of the Defendants and Could not Be Obtained from the Defendants.................................................................................... 8

CONLUSION.......................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**


*Beck v. City of Pittsburgh,* 89 F. 3d 966 (3d Cir. 1996) .......... 17

*Brewer v. Berks Cty. Sheriff,* 2015 U.S. Dist. LEXIS 193191, *4 (E.D. Pa 2015) .......... 16

*Conrey v. IBM Corp. (In re Subpoena to Keebaugh)*, 2019 U.S. Dist. LEXIS 193395 (E.D. Pa. Nov. 6, 2019) .......... 13, 14

*Costantino v. City of Atlantic City,* 152 F. Supp. 3d 311, 322, (D.N.J. 2015) .......... 17

*David v. Grynkewicz,* 2013 U.S. Dist. LEEXIS 72307 (W.D. Pa. 2013) .......... 19

*Dawson v. Ocean Township,* 2011 U.S. Dist. LEXIS 25545 (D.N.J. Mar. 14, 2011) .......... 16

*Evans v. City of Newark,* 2016 U.S. Dist. LEXIS 62070 .......... 2

*Fallen v. McEnroe, Hadley, et al.,* 15 CV 2286 .......... 10, 11

*Grabski v. Logan,* 2014 U.S. Dist. LEXIS 46680, *7 (E.D. Pa. 2014) .......... 18

*Kyam v. Esssex County Prosecutors Office,* 2:15 CV 4436 .......... 10

*Reid v. Cumberland County,* 34 F. Supp. 3d 396 (D.N.J. Mar. 19, 2013) .......... 16

*Stokes v. Xerox Corp.* 2006 U.S. Dist. LEXIS 98888 (E.D. Mich. Oct. 5, 2006) .......... 14

*Wiggins v. City of Trenton,* 2013 U.S. Dist. LEXIS 36778 (D.N.J. 2013) .......... 16


**Rules**


Fed. R. Civ. P. 45 .......... 8, 12, 13

Fed. R. Evid. 404(b) .......... 17

L. Civ. R. 7.1 .......... 1

## INTRODUCTION

Pursuant to L. Civ. R. 7.1(i), Plaintiff moves this Court for reconsideration of its November 16, 2020 [D.E. 162] order where this Court erroneously quashed portions of Plaintiff's third-party subpoena, namely ¶¶1-5, issued to the Essex County Prosecutor's office ("ECPO") despite the fact that neither the ECPO nor any party lodged an objection to those portions of the subpoena. (Exhibit A – ECPO Subpoena, ¶¶1-5) Plaintiff does not move this Court to reconsider its order related to Defendant Carrega's personnel and/or disciplinary records. Rather, Plaintiff moves this Court to reconsider its order specific to requests set forth in ¶¶1-5 of the subpoena, material that is relevant for discovery purposes and material that Plaintiff did not discover until the taking of oral depositions in August of 2020. Additionally, this material can only be obtained through the issuance of a third-party subpoena. These materials are *not* in the possession of the parties to this litigation but rather are maintained by the ECPO which did not object to producing it. Indeed, no one objected to the requests set forth in ¶¶1-5 of Plaintiff's Rule 45 subpoena to the ECPO. Because neither ECPO nor any party to this litigation ever objected to this portion of the subpoena, this Court should reconsider that portion of its *sua sponte* order after considering Plaintiff's arguments set forth *infra.*

## FACTUAL BACKGROUND

On May 10, 2016, the Honorable District Court Judge Kevin McNulty granted in part and denied in part the Defendants' motion to dismiss Plaintiff's amended complaint. [D.E. 71] Specifically, the District Court denied the Defendants' motion to dismiss Counts Three, Four, and Five of Plaintiff's amended

complaint in which Plaintiff alleged federal and state law claims of malicious prosecution and Due Process violations. *Evans v. City of Newark,* 2016 U.S. Dist. LEXIS 62070, *41-46. The District Court also denied Plaintiff's *Monell* claims that allege, in part, that the City of Newark had a policy or custom of fabricating or "building" a case around a targeted suspect without establishing probable cause. And that Newark police officers were not properly supervised or trained. *Id*. at 47-51.

On June 23, 2016, Defendant Tietjen filed an Answer to the amended complaint consistent with the federal rules of civil procedure. Neither the Newark Defendants nor Defendant Carrega filed a timely Answer to the amended complaint. The Newark Defendants filed their Answer on January 10, 2020. [D.E. 138] Defendant Carrega filed his Answer on June 18, 2020. [D.E. 152]

Plaintiff represented himself *pro se* for a period of time. Attorney Craig O'Connor filed an appearance on behalf of Plaintiff on July 7, 2017. [D.E. 84] On July 20, 2017, this Court entered a scheduling order requiring all written fact discovery to be served by September 1, 2017. [D.E. 89]

Over the course of the next two years, Plaintiff's counsel, Mr. O'Connor, repeatedly failed to comply with this Court's scheduling orders or otherwise participate in discovery consistent with the federal rules of civil procedure. Mr. Connor senselessly waived Plaintiff's right to seek written discovery from the City of Newark and did not seem to even propound written discovery to all the individual

defendants.[1] At no point was Mr. O'Connor sanctioned for his repeated and flagrant disregard of the Court's scheduling orders.

Undersigned counsel filed an appearance in this case on September 25, 2019. [D.E. 122] Undersigned counsel made numerous efforts to obtain prior counsel's complete file and to discuss the status of discovery with him. [Cert. of Counsel at ¶2] Prior counsel indicated that he had been suffering from some type of health issues and had conducted no oral discovery in the case. [*Id*. at 4] He was unable to explain what if any written discovery had been conducted. (*Id.* at ¶5] Undersigned counsel subsequently learned that prior counsel had conducted virtually no written discovery in the case. [*Id*. at ¶6])

On October 17, 2019, this Court ordered the parties to re-produce discovery in an effort to get this case back on track. [D.E. 133] This Court further ordered that Plaintiff communicate with Defendants about the additional written discovery he sought and identify any disputes among the parties. [D.E. 134] To the extent any disputes could not be resolved by the parties, this Court set a briefing schedule for raising the matters with the Court for a ruling. *Id*. This Court ordered Plaintiff to file a Memorandum of Law by January 7, 2020 and ordered Defendants to respond

[1] This Court's order of August 17, 2020 [D.E. 153] provides a detailed account of prior counsel's chronic failure to comply with this Court's many scheduling orders as does Plaintiff's January 7, 2020 memorandum. [D.E. 136] Although this Court asked counsel for Defendant Carrega to obtain the transcripts from this Court's August 17, 2020 order issued orally, Defendant Carrega did not provide a copy of the transcripts of this Court's order to Plaintiff's counsel or otherwise file the transcripts on the docket in support of his motion. Accordingly, undersigned counsel respectfully asks that this Court order counsel to file the transcripts on the record so a complete record of this issue is set forth and available for further review.

by January 21, 2020. *Id.*

Per this Court's order on January 7, 2020, Plaintiff's counsel filed a memorandum with the Court identifying specific written discovery requests he sought from the City of Newark. [D.E. 136] Plaintiff did not raise any additional written discovery he sought from Defendant Carrega or Defendant Tiejten, because he did not seek any additional discovery from those individual defendant officers. Since Defendant Carrega was retired, it seemed unlikely that he had any documents in his possession that Plaintiff deemed critical to prosecuting this old case.

Undersigned counsel wasted no time and promptly issued deposition notices for the defendant officers on January 31, 2020. [Cert. of Counsel at ¶7] Undersigned counsel noticed the defendant officers deposition three separate times over the course of six months. [*Id.* at ¶¶7-13] On June 22, 2020, undersigned counsel also served subpoenas to take the depositions of the Essex County prosecutors who tried the criminal case. [*Id.* at ¶¶15-16] **To be clear,** undersigned counsel attempted to depose the defendant officers for over six months. Understandably, the region went on a lock-down due to the COVID-19 crisis at the end of March, but undersigned counsel continued to press defendants to provide dates for their depositions and agreed to conduct those depositions remotely.

All of the defendants with the exception of Henry, McCarthy, and Booker were deposed in July and August; Defendant Carrega's deposition was completed on October 22, 2020. [*Id.* at ¶21] The prosecutors were also deposed in August;

however, former prosecutor Guarino's deposition has not been completed. His deposition is scheduled to continue on December 3, 2020. On October 26, 2020, Plaintiff issued notices to the City of Newark to conduct 30(b)(6) notices and requested that counsel for the City indicate his position or proposal in connection with deposing McCarthy and Booker. To date, counsel for the City has not responded. [*Id*. at ¶26]

Promptly after the defendant officers' and the prosecutors' depositions, Plaintiff issued a subpoena to ECPO on September 1, 2020, seeking material based largely on testimony developed during the defendant officers' and the prosecutors' depositions. (Ex. A) Apart from Defendant Carrega who objected to only a portion of the subpoena (¶¶7-10), no party to this lawsuit objected to the subpoena. [D.E. 157] On September 4, 2020, the parties filed a joint status report with this Court which expressly stated that Plaintiff had issued a subpoena to the ECPO. [D.E. 155] (Exhibit C – Status Report) All defendants signed off on that status report and none voiced an objection to the third-party subpoena issued by Plaintiff to the ECPO. ECPO did not file a motion to quash the subpoena or otherwise voice an objection to materials sought by the subpoena.[2] Specifically, no party lodged a formal objection to the following requests in the subpoena to ECPO:

---

[2] Oddly, prior to the status conference held on November 16, 2020, Plaintiff's counsel reached out to the ECPO to determine the status of the subpoena and was told that the office had already produced documents responsive to the subpoena. ECPO did not voice an objection to producing the documents sought by the subpoena. (Exhibit B – Email communication from prosecutor Rasool)

Any and all Documents, records, and/or files in your possession, custody, and control that comprise, constitute, refer, or relate to the investigation, criminal prosecution, trial, and dismissal in the cases of:

**1)** *State of New Jersey v. Corey Fallen,* Case Number: ESX-12-007067; Complaint Number: W2012 0036070706
**2)** *State of New Jersey v. Johnny Be Jones III,* Indictment No: 14-05-01287-I; Case Number: ESX-12-007067
**3)** *State of New Jersey v. Brian Love,* Indictment No: 14-05-01287-I; Case Number: ESX-12-007067
**4)** *State of New Jersey v. Peter Labrada*
Including but not limited to:
**a)** Charging instruments, pleadings, motions, discovery requests, documents tendered in discovery and discovery receipts, subpoenas, subpoenas duces tecum, court orders, and correspondence;
**b)** All police reports; investigative reports; supplemental or continuation reports;
**c)** Photographs (including but not limited to line-up photos, photo arrays and crime scene photos);
**d)** Any statements of all the defendants and witnesses whether oral, handwritten, court reported, or audio and/or video recorded;
**e)** Any requests or protocols for the testing and/or analysis of DNA, fingerprints, blood and other bodily fluids, and any other materials or physical evidence, and any laboratory reports and test results relating to such testing and/or analysis;
**f)** All investigators' reports and notes;
**g)** Transcripts of court proceedings (including but not limited to status hearings, pre- trial motions, grand jury, trial, post-conviction, and dismissal hearings);
**h)** Any exhibits marked for identification and/or admitted into evidence, and any evidence used or available for use at trial, and/or dismissal.
**5)** All policies, guidelines, directives, and Standard Operating Procedures of the Essex County Prosecutor's Office or any agency affiliate with the Essex County Prosecutor's Office related to investigative procedures in effect between 2007 and 2012.
**6)** Any and all Documents, records, files, and/or forms in your possession, custody, and control that comprise, constitute, refer, or relate to a "Request for Dismissal," including "Request for Dismissal" forms completed between 2007 and 2012.

After failing to voice any objection to the subpoena or otherwise inform undersigned counsel that he had an objection, Defendant Carrega filed a motion

with this Court, objecting to the production of materials related to Defendant Carrega's disciplinary and training records. [D.E. 157] In direct contravention of this Court's local rules, Defendant Carrega made no effort to meet and confer regarding his objection to the ECPO subpoena.

This Court held a hearing on the issue on November 16, 2020 and ordered Defendant Carrega to produce documents consistent with paragraph 1 of the Court's August order. [D.E.153] This Court also ordered that materials related to an ethics complaint filed in connection with the criminal prosecution of the case be produced. Mr. Carrega indicated that although he did not represent ECPO he would inquire about the "ethics complaint." The ethics complaint was sought by paragraph 7 of the subpoena. Plaintiff does not seek reconsideration of this portion of the Court's order.

However, this Court *sua sponte* asked undersigned counsel to defend his request for specific criminal case files articulated in paragraphs 1-4 of the subpoena. The Court directed the City to produce case captions for cases in which the defendant officers had been sued, but quashed the subpoena directed at ECPO (¶¶1-4). Although the Court did not expressly state so and ended the status conference before undersigned counsel could get clarity, it would seem that the court also quashed the ECPO subpoena as to items requested in ¶5 of the subpoena. Plaintiff now moves this Court to reconsider its order quashing those portions of Plaintiff's ECPO subpoena, that is, ¶¶1-5 of the subpoena.

## ARGUMENT

**Plaintiff's Subpoena (¶¶1-5) to ECPO Was Properly Issued Pursuant to Fed. R. Civ. P. 45 and Was Not Designed to End-Run the Written Discovery Procedure for Parties Since it Seeks Material that Is Not in Possession of the Defendants and Could not Be Obtained from the Defendants.**

Because this Court quashed Plaintiff's Rule 45 subpoena as to materials requested in paragraphs 1-5 even though no party objected to the production of those documents which are undeniably relevant to the litigation, Plaintiff respectfully asks this Court to reconsider this portion of its Order.[3] Fact discovery in this case currently remains open. After spending six months attempting to get the defendants to sit for a deposition, defendants Hadley, Tiejten, and Carrega were finally deposed in July and August, along with third-party witnesses Essex county prosecutors Guarino and Cucinello. The depositions revealed information previously unknown and that prompted undersigned counsel to issue the ECPO subpoena to further develop the information learned during the deposition. For example, at paragraph 5 of the subpoena (Ex. A) Plaintiff seeks the following:

> All policies, guidelines, directives, and Standard Operating Procedures of the Essex County Prosecutor's Office or any agency affiliate with the Essex County Prosecutor's Office related to investigative procedures in effect between 2007 and 2012.

[3] While it is entirely possible that Defendants may have an objection to lodge on reconsideration, no party to this lawsuit voiced an objection to ¶¶1-5 to the ECPO subpoena prior to this Court's hearing on November 16, 2020.

Prior to deposing the defendants and prosecutors in this case, it was not clear that Defendant Carrega may have been the "lead" investigator rather than a Newark detective (although Carrega denies that he was the lead investigator). Indeed, during the depositions, the witnesses and parties offered vague, contradictory and sometimes inconsistent testimony about which agency was in charge of the Evans investigation between 2008 and 2010. For example, prosecutor Cucinello testified that ECPO led the Evans investigation (Ex. D – Portion of Prosecutor Cucinello testimony) while Defendant Carrega testified that Newark Police detectives were leading the investigation (Ex. E – Portion of Carrega's deposition), and Defendant Hadly explained that Newark did at one time conduct their own homicide investigation but at some point the Essex County Prosecutor's office became an "umbrella" for homicide investigations; he was less than clear about when that occurred. (Ex. F at pg. 14-17 – Portions of Hadley deposition) Prosecutor Cucinello further explained that ECPO investigators had their own written rules and regulations although she could not expound on them. (Ex. G – Portion of Cucinello Deposition)

Since defendants themselves are in conflict about which agency "led" the murder investigation, undersigned counsel thought it appropriate to request the rules and regulations for investigators in the ECPO. Until the depositions, undersigned counsel had no idea that the ECPO even had separate rules and regulations that may or may not vary from Newark's rules and regulations, nor did

she know that defendants were in disagreement about *which* agency was leading the investigation.

During the depositions, Plaintiff further learned that the defendant officers have been sued in connection with other malicious prosecution cases, at least one of which is still pending.[4] All of the cases involved the Newark Police department and resulted in either acquittals or dismissal of all charges against the accused. For example, Defendant Hadley is currently being sued in a federal civil rights action, *Fallen v. McEnroe, Hadley, et al.,* 15 CV 2286, [D.E. 53 on 15 CV 2286 Docket] in which he is accused of a number of civil rights violations related to the wrongful arrest and prosecution of Corey Fallen. Undersigned counsel questioned Defendant Hadley about his involvement in the investigation but Defendant Hadley could not

---

[4] Although Defendant Carrega testified at his deposition that he had been sued only one prior time in connection with his work as an ECPO investigator [Ex. H at 14] , undersigned counsel's own research has discovered that Carrega was also sued in connection with another case previously pending before this Court and Your Honor. *Kyam v. Esssex County Prosecutors office, Detective Louis Carrgea*, 2:15 CV 4436 (ES)(MAH). In all fairness, it is not clear from the docket that Carrega was aware of this lawsuit but this situation merely underscores the point that developing this type of discovery is not always straightforward. Notably, the Plaintiff in *Kyam* makes similar allegations against Carrega as does Plaintiff in this case. Kyam alleges that in 2009 Carrega fabricated a narrative and manipulated allegations to frame Plaintiff for a crime committed by someone else. [*Id*. at Doc. No. 1] Plaintiff's allegations against Carrega also occurred in 2009. Should this Court reconsider its Order, Plaintiff will also seek leave to issue an amended subpoena to ECPO that includes the criminal prosecution file for the *Kyam* case. Plaintiff maintains that he is entitled to criminal files related to prosecutions involving the defendants wherein the accused has made allegations of misconduct. Such evidence is relevant conduct of the defendant officers and further may serve to demonstrate a *de facto* practice of the Newark Police Department. This can hardly be seen as a fishing expedition where the Newark Police Department came under a consent decree in 2016 for rampant Fourth Amendment violations.

provide much information about the case or why it was that he was sued for civil rights violations in the case other than to say it involved malicious prosecution. [Ex. F – 18- 24] According to Fallen's amended complaint, Hadley prematurely focused on Fallen as a suspect in a murder because a google search revealed that he had "beaten a murder rap" in Atlantic. [Fallen D.E. 53 ¶34] Fallen accused Hadley of failing to conduct a proper investigation, failed to investigate verifiable facts that would have shown that Fallen was not in the state of New Jersey at the time of the murder (or ever), that Hadley and his partner told Fallen false facts to attempt to secure an inculpatory statement from Fallen even though forensic evidence excluded Fallen as a suspect, and that the affidavit in support of probable cause to arrest included false information and omitted exculpatory evidence. *Id.*

Similarly, Defendant Carrega was sued in connection with the wrongful prosecution of Peter Labrada. [Ex. H – portion of Carrega deposition] Notably, prosecutor Guarino was also prosecuted in connection with the Labrada malicious prosecution case. Although Carrega was apparently dismissed from the civil case, the fact remains that Peter Labrada made malicious prosecution allegations against Defendant Carrega and other Newark police officers, alleging that investigators had chased a bogus lead, overlooked critical evidence, and let the true killer go free. [Ex. I – "Essex prosecutor ends case against Monmouth man accused in Newark killing, Mar. 25, 2009]

Although these cases should have spurred internal affairs investigations by the Newark Police department, Newark has not produced any internal affairs

investigative files in connection with these cases. Because these cases involve allegations of malicious prosecution, they presumably are as relevant as any internal affairs complaints involving malicious prosecution or other Due Process violations. As a reminder, this Court has already ordered the City of Newark to produce internal affairs investigation of the defendant officers involving claims of malicious prosecution.

Consistent with Fed. R. Civ. P. 45, Plaintiff issued a subpoena to the ECPO seeking documents in their care and custody related to the foregoing matters. ECPO did not move to quash the subpoena. And no party to this litigation objected to those requests with the exception of Defendant Carrega who only objected to a portion of the subpoena concerning his own disciplinary and personnel records. Again, Plaintiff does not seek reconsideration of that portion of this Court's order.

Fed. R. Civ. P. 45 permits parties to a litigation to command the production of documents from third-parties. "[o]n timely motion, the court for the district court where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond a geographical limit specified by Rule 45(c)

(iii) requires a disclosure of privileged or other protected matter, if no exception or waiver applies; or

(v) subjects a person to undue burden.

Despite the fact that no motion to quash was filed by ECPO and no party objected to Plaintiff's request for materials from ECPO set forth in ¶¶1-5 of the subpoena, this Court quashed those paragraphs of the subpoena.

This Court did not identify any basis identified in Fed. R. Civ. P. 45(d)(3) as a basis for quashing the subpoena but instead suggested that Plaintiff was attempting to end-run the Court's August order and somehow waived his right to obtain these materials since Plaintiff's prior counsel *could* have somehow previously discovered this information previously, even though ECPO was dismissed as a party to this lawsuit years ago.

This Court labors under a number of misapprehensions: (1) the documents sought by Plaintiff were only discovered during oral discovery in August as shown in Exhibit D-H; (2) the prosecution's criminal files for Fallen and Labrada are not in the possession of any party to this litigation; and (3) there is no reason to believe that Plaintiff could have discovered the information earlier even if Plaintiff's former counsel had provided competent representation. Indeed, the defendants themselves seem to possess limited information about their own involvement in these cases.

It is true that a party may not circumvent the discovery process through a non-party subpoena, but that is not what Plaintiff has done because the documents sought by the Rule 45 subpoena do not belong to any party to this lawsuit. This issue was addressed in *Conrey v. IBM Corp. (In re Subpoena to Keebaugh)*, 2019 U.S. Dist. LEXIS 193395 (E.D. Pa. Nov. 6, 2019). In that case, the defendant IBM moved to quash a third-party subpoena because it sought documents produced by

IBM in another matter (the Keebaugh matter) under a protective order. *Id*. at *8. The Court quashed the subpoena observing that the Plaintiff should seek the documents directly from IBM and not via a third party since the documents originated with IBM. *Id*. at *9. The court noted that "Conrey [the plaintiff] may not circumvent the discovery process through a non-party subpoena for the production of documents *belonging to a party."* (emphasis added) *Id*. at *12 *citing Stokes v. Xerox Corp.* 2006 U.S. Dist. LEXIS 98888 (E.D. Mich. Oct. 5, 2006). The court wrote "to the extent the documents sought in the Keebaugh subpoena [the Rule 45 subpoena] overlap with Conley's Third Set of Request for Production of Documents, the Keelbaugh subpoena is an improper end-run around the discovery procedures governing the Conrey action." *Id*.

In this case, Plaintiff does not seek documents from ECPO that belong or are in the possession of any party to this lawsuit. The criminal prosecution files are *only* in the possession of ECPO. Furthermore, no party to this litigation claimed that Plaintiff was seeking their documents. Therefore, Plaintiff is not circumventing Rule 34 or written discovery procedures.

To the extent this Court is of the mistaken view that Plaintiff is engaging in some type of fishing expedition, Plaintiff reminds the court that he is seeking investigative materials from cases where the *defendant officers* (along with other Newark police officers) were accused of the same behavior alleged in this case; cases where the accused were indicted with homicide charges and then were later were acquitted or all charges were voluntarily dismissed by the state. That is, these are

cases where the plaintiffs alleged Fourth Amendment violations.[5] Furthermore, Plaintiff's request is not particularly burdensome as it seeks only two criminal prosecution files[6] (three if this Court allows Plaintiff to obtain the Kyam file).

Furthermore, the record does not support that view that even if Plaintiff had competent counsel earlier in this litigation, he would have discovered this information prior to oral discovery. Theoretically, Plaintiff *could* have asked the defendants to disclose the lawsuits in an interrogatory to which they have been a party via an interrogatory, but nothing required him to do so. Regardless, he would still have had to issue a Rule 45 subpoena to the ECPO for the criminal prosecution documents. At bottom, there is nothing unusual or improper about asking a party during a deposition whether they have been a party to any other lawsuits. Surely, Defendants will ask Plaintiff that question when he sits for a deposition. It is also perfectly reasonable to follow up with a Rule 45 subpoena or supplemental written discovery request if necessary for documents related to those disclosures. To require Plaintiff to intuit what discovery he might seek prior to deposing any witnesses and

---

[5] Not for nothing, in 2011 the Department of Justice opened an investigation into the Newark Police Department after receiving hundreds of serious allegations of civil rights violations, including allegations of false arrest, malicious prosecution and other Fourth Amendment violations. *See* United States Department of Justice Civil Rights Division of Attorney's Office District of New Jersey, Investigation of Newark Police Department, July 22, 2014. And in July 2014, the DOJ concluded that Newark Police Department had showed a pattern and practice of constitutional violations related to its arrest practices, among other practices.

[6] Although at ¶¶2-3 of the subpoena Plaintiff seeks the criminal prosecution files for Mr. Jones and Mr. Love, those individuals were co-defendants to Mr. Fallen. Thus, the criminal prosecution of Mr. Fallen likely contains all relevant reports and documents and is duplicative to Jones and Love's prosecution files.

then forbid him from developing information learned during a deposition unreasonably interferes with Plaintiff's ability to develop discovery and prosecute his case.

Again, no party objected to the material sought in paragraphs 1-5 of Plaintiff's subpoena to ECPO which would suggest that even defendants recognize the relevance of the material sought. Material is relevant if "it encompasses any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is, or may be in the case." *Brewer v. Berks Cty. Sheriff,* 2015 U.S. Dist. LEXIS 193191, *4 (E.D. Pa 2015). There is simply no question that other similar allegations of investigative misconduct by two of the defendants in this case could lead to admissible evidence in this case. By way of comparison, there is a huge body of case law from this District that supports the view that civilian complaints of misconduct against a defendant officers that is similar to that alleged by a plaintiff is unquestionably discoverable. *See, e.g., Dawson v. Ocean Township,* 2011 U.S. Dist. LEXIS 25545 (D.N.J. Mar. 14, 2011) (permitting discovery of defendant officers' IA files and personnel files noting that "any past complaints, performance evaluations, disciplinary proceedings or general information about hiring and training are highly relevant" when § 1983 allegations are lodged against a particular police officer); *Reid v. Cumberland County,* 34 F. Supp. 3d 396 (D.N.J. Mar. 19, 2013); *Wiggins v. City of Trenton,* 2013 U.S. Dist. LEXIS 36778 (D.N.J. 2013) (holding that internal affairs allegations of similar complaints is relevant for discovery purposes) In fact, there is an impressive body of law in this District that

holds that internal affairs complaints of non-party officers is highly relevant to a Plaintiff's *Monell* claims. *See, e.g., Costantino v. City of Atlantic City,* 152 F. Supp. 3d 311, 322, (D.N.J. 2015); *Beck v. City of Pittsburgh,* 89 F. 3d 966, 971 (3d Cir. 1996).

Although this subpoena does not request internal affairs complaints, it seeks the investigative files related to prosecutions of two civilians who alleged police misconduct, namely malicious prosecution in a civil lawsuit. Indeed, these allegations are not simply unproven empty allegations. These are cases where the plaintiffs were criminally indicted and then exonerated either by acquittal or because all charges were dismissed. These files are relevant for a number of different purposes. Just by way of example, the prior conduct of the defendant officers is potentially relevant to show the intent of the officers or to rebut a claim of "accident," that is, the defendant officers acted in good faith rather than maliciously. Such evidence could be admissible under Fed. R. Evid. 404(b). Equally important, these other cases could shed light on the *de facto* investigative polices of the Newark Police department. Both prosecution files sought by the Plaintiff involve the Newark police department and ECPO investigators. It is true that Plaintiff's *Monell* claims do not apply to ECPO, but they do apply to Newark who participated in these investigations (in conjunction with ECPO). Furthermore, the prosecution's file contains the identities of potential witnesses along with the police reports that more specifically identify the investigative conduct of the officers.

This Court suggested that the information sought by Plaintiff is publicly available. Not so. While perhaps a plaintiff's complaint filed in federal court may be available on the docket, complaints provide minimal, and often unreliable, information about the investigation; they are often wholly lacking in detail because the author of the complaint does not have the investigative file when he/she drafts the complaint or the author is a *pro se* litigant. The prosecution's file is a record of the investigative conduct of the detectives (both from ECPO and Newark) that investigated those homicide cases. Whether those detectives used similar tactics as were used in this case, such as providing inducements or making threats to witnesses, is potentially admissible evidence not only as to individual liability but as to *Monell* liability.

Similarly, the rules and regulations of ECPO are reasonably calculated to lead to admissible evidence since the question of whether Defendant Carrega followed his own agency's policies, particularly as it relates to the interrogation of suspects/ witnesses and offering inducements to cooperators is going to be a hotly contested at issue at trial. While it is true that Plaintiff does not, and could not, bring a *Monell* claim against ECPO, the question of whether Carrega followed policy is still potentially relevant. Whether an officer has complied with a rule, regulation, or policy is one piece of evidence that can be used to determine whether an officer's conduct was reasonable or proper, particularly if the officer alleges that he complied with all of his department's policies. *See, e.g., Grabski v. Logan,* 2014 U.S. Dist. LEXIS 46680, *7 (E.D. Pa. 2014) (denying the defendant's motion to

exclude a police directive but agreeing to instruct the jury that any testimony regarding the directive is to be considered only as one piece of evidence in determining how a reasonable officer might respond in the circumstances presented in this case). *See also, David v. Grynkewicz,* 2013 U.S. Dist. LEEXIS 72307 (W.D. Pa. 2013) ("evidence of the force continuum and Act 120 training shall be admitted for the purpose of proving only how a reasonable office might respond under the circumstances.)

Although no party to this litigation or third-party ECPO challenged the "relevance" of the materials sought by Plaintiff's subpoena in ¶¶1-5, this Court on its own motion quashed that portion of the subpoena. Clearly since that portion of the subpoena had not been challenged, Plaintiff had no reason or ability to defend it. Accordingly, Plaintiff moves this Court to reconsider that portion of its Order with the benefit of the foregoing arguments and authority never previously considered..

Respectfully Submitted,

/s/JENNIFER BONJEAN
Bonjean Law Group PLLC
467 St. Johns Place
Brooklyn, NY 11238
Tel: (718)875-1850
Email: Jennifer@bonjeanlaw.com

CC: All counsel via ECF