UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EVANS,

Plaintiff,

vs.

NEWARK CITY, et al.,

Defendants.

Case No. 14-cv-00120

Newark, New Jersey
April 20, 2021

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (the parties appeared via teleconference):

For the Plaintiff: JENNIFER ANN BONJEAN, ESQ.
Bonjean Law Group PLLC
467 Saint Johns Place
Brooklyn, NY 11238
(718) 875-1850
jennifer@bonjeanlaw.com

ASHLEY BLAIR COHEN, ESQ.
Bonjean Law Group PLLC
467 Saint Johns Place
Brooklyn, NY 11238
(718) 875-1850
ashley@bonjeanlaw.com

Audio Operator:

Transcription Service: KING TRANSCRIPTION SERVICES
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(APPEARANCES continued)

| | |
|---|---|
| For the Defendants Essex County Prosecutor's Office, et al.: | JAMES A. KASSIS, ESQ.<br>Schenck, Price, Smith & King, LLC<br>220 Park Ave.<br>P.O. Box 991<br>Florham Park, NJ 07932<br>(973) 540-7339<br>Jak@spsk.com |
| For the Defendants Cory A. Booker, et al.: | GARY S. LIPSHUTZ, ESQ.<br>City of Newark Department of Law<br>920 Broad Street, Room 316<br>City Hall<br>Newark, NJ 07102<br>(973) 733-3880<br>lipshutzg@ci.newark.nj.us |
| For the Defendant William Tietjen: | VICTOR N. DIFRANCESCO, JR., ESQ.<br>Office of the NJ attorney general<br>Corrections and State Police<br>R.J. Hughes Justice Complex<br>P.O. Box 112<br>Trenton, NJ 08625<br>(609) 376-2964<br>victor.difrancesco@njoag.gov |

# I N D E X


| Proceeding | Page |
|---|---|
| Proceedings | 4 |
| The Court's ruling on Guarino ethics complaint | 14 |
| The Court's ruling on production of lawsuits | 25 |
| The Court's ruling on certification and compliance | 31 |
| The Court's ruling on training materials | 36 |
| The Court's ruling on 30(b)(6) witness document demands | 39 |
| The Court's ruling on scope of 30(b)(6) witness testimony | 48 |
| The Court's ruling on deposition of Cory Booker | 58 |
| The Court's ruling on discovery deadline extension | 62 |

(Commencement of proceedings)

THE COURT: We're on the record in Evans versus City of Newark, et al., Civil No. 14-120.

Can I have appearances, please, beginning with plaintiff's counsel.

MS. BONJEAN: Jennifer Bonjean and Ashley Cohen on behalf of the plaintiff.

THE COURT: And for the defendant?

MR. KASSIS: James Kassis, law offices of Schenck Price Smith & King on behalf of defendant Lieutenant Carrega.

MR. LIPSHUTZ: Good afternoon, Your Honor. It's Gary Lipshutz, assistant corporation counsel, for the City of Newark, Joe Hadley, Darnell Henry, Corey Booker and Garry McCarthy.

MR. DIFRANCESCO: Good afternoon, Judge. Victor DiFrancesco, Attorney General's Office, on behalf of defendant Tietjen.

THE COURT: All right. I think that's everybody. Right?

Okay. So I have the parties' April 9th, 2021, and April 12th, 2021, letters, Docket Entries 196 and 197, which raised still additional discovery disputes, which we might as well take in order, unless -- have the parties reached resolution of any of these issues? I know at least in

certain parts, counsel for defendant Carrega has asked for an additional two weeks to provide responsive information. I believe -- I think those -- the request for some additional time came -- oh, I don't remember of there being any requests from Newark.

So let's -- let's take first -- working off of plaintiff's April 9th letter, Docket Entry 196, let's take the issues in order.

So with regard to the first issue, documents from Defendant Carrega consistent with paragraph 1 of the August 7th, 2020, order and Essex complaint materials in paragraph 7 of plaintiff's Rule 45 subpoena to the Essex County Prosecutor's Office, is this still an issue? I believe, looking at the defendant Carrega's part, that they weren't necessarily opposing at least the -- as much as looking for additional time, regarding the internal affairs materials, so you folks tell me what the status of that is.

MR. KASSIS: So, Judge, this is Jim Kassis on behalf of Lieutenant Carrega.

We are -- we are not taking issue with regard to the internal affairs records, and we are not taking issue with regard to obtaining information about captions of lawsuits that involve the issues of false arrest, malicious prosecution, and withholding of Brady material. The only -- the only issue for -- and it's an issue on my end is we

simply need more time in order to obtain or search for those terms. And I did request for two weeks. I may actually need another week, but we do not have any objection to undertaking the search.

And I think -- to provide that to you in camera, although I could be mistaken about that.

THE COURT: What -- what's the part about -- what exactly are you going to provide to in camera. Is this the -- well, let me get my -- is this the -- you're talking about the ethics complaint in question for Guarino?

MR. KASSIS: Well, the ethics complaint is a separate issue. There is a -- there is still a dispute as concerns that matter.

THE COURT: So I'm not sure what I'm looking at in camera.

MR. KASSIS: Then I misspoke when I -- a moment ago. It would have been -- it would have been the ethics complaint that you would have looked at --

THE COURT: Okay.

MR. KASSIS: -- in camera.

THE COURT: Okay.

MR. KASSIS: You are correct. I sort of -- I misspoke.

THE COURT: No, you conflated the two. I understand. But I want -- I just wanted to make sure that

there's not some other in camera submission that I'm overlooking.

MR. KASSIS: Not that I'm aware of.

THE COURT: All right. So let's take the -- look, let's take the ethics complaint, but I very much want to hear from both sides on that. Let's take that, put that off to the side, the Guarino stuff.

It sounds like with regard to the IA files and the list of lawsuits, there's not an issue. It's a matter of you need until -- whatever three weeks is, which is one -- so May 11th. Is that what you're asking for?

MR. KASSIS: Yes, Judge.

THE COURT: Ms. Bonjean, is there any objection to that? I know this has dragged out for a while. I want to see it move as much as anybody, but realistically, is there any objection?

MS. BONJEAN: No objection.

THE COURT: All right.

MR. KASSIS: Thank you.

THE COURT: So produce by May 11th.

Okay. Let's talk about Guarino. If I recall correctly -- and obviously in this case and the discovery issues, there's a number of moving pieces. But if I recall correctly -- and looking at my November 16th order, we have a conference on the record on November 16th, which was relevant

to the defendant Carrega's application to -- or a motion to squash subpoenas plaintiff had issued. I granted in part and denied in part the application. One of the rulings was the defendant was required to provide a copy of the ethics complaint in question. This is for Guarino -- for in camera review. I don't believe I ever got it, but I have to say at least from what I'm reading in the plaintiff's § 1 of their letter, defendant seems to acknowledge that the ethics complaint against Guarino concerned this case. It sounds like it's in Guarino's transcript that Guarino acknowledges its existence, and that Judge Costello initiated the ethics action against and in connection with this case. In short, I don't see how it's not relevant here, but I'll certainly give defense counsel an opportunity to be heard on that, and then I'll hear from plaintiff, since I'm inclined to see this plaintiff's way, honestly.

MR. KASSIS: So, Judge, as I said in my letter, nothing new here. At the November 16th hearing, Ms. Bonjean expressly limited the scope of what she was looking for when she represented on the record that she really was concerned about whether or not the ethics complaint that was filed before to be filed against Guarino involved conduct of Lieutenant Carrega. I think it's clear from many sources that that wasn't the case. It was conduct that concerned Mr. Guarino himself. And that so based on those sources of

information, I think we have the answer to Ms. Bonjean's question.

There is twice I cited in the November 16th transcript on page 16, starting at line 16 and page 27 starting at line 13 where she simply was looking for whether or not the -- the complaint that was lodged against Mr. Guarino involved conduct by -- and I quote -- conduct by Lieutenant Carrega.

There's no question that it didn't. And so I think that should end the issue. But I don't think it -- I don't think it does.

THE COURT: Ms. Bonjean, please, respond if you would.

MS. BONJEAN: Yes, Judge. I issued a Rule 45 subpoena that expressly requested Prosecutor Guarino's ethics complaint because Prosecutor Guarino testified at his deposition regarding an ethics complaint, the scope of which -- or the basis of which he was hazy about. He didn't really provide a lot of detail about what the basis was or what it involved or who it involved, et cetera.

During the hearing, it is absolutely true that on a couple of occasions I misspoke and conflated, as sometimes happens, Guarino and Carrega. But I think I clarified that at the end, and I think my --

THE COURT: Hold on. You know what -- I'm sorry to

interrupt.

But somebody point me to where in the record -- because both sides refer to the transcript of the November 16th conference.

Can somebody -- is it an exhibit to a filing?

MR. KASSIS: I annexed, Judge, to the letter, which is Docket Entry 196, with an excerpt of the pages that I'm referring to.

THE COURT: Oh. That's your Exhibit A. Okay. Sorry.

You know what? Okay. Give me just a moment.

MR. KASSIS: Yes, and it's -- it's on page 16 and page 27, where I referenced the transcript.

THE COURT: Wait. When I open up -- I must be doing wrong. Hold on. Because when I open up 196 Exhibit -- there's one exhibit to Exhibit A, and it's a -- it's just a notice of Rule 30(b)(6) deposition. So I don't think it's Docket 196.

MR. KASSIS: You're correct, Judge. It appears that when I sent it over to Ms. Bonjean's office and she -- and her office uploaded it to ecourt -- not to eCourts, but ECF, it was omitted from the letter. I don't -- I don't ascribe any nefarious intent.

THE COURT: No, it happens --

(Simultaneous conversation)

THE COURT: --

MR. LIPSHUTZ: Judge, if you want to look at 188-2, I believe it's the transcript. 188-2.

THE COURT: Okay. Okay. Yup, yup, yup.

So -- all right. So you -- I'm sorry. Let me start first with Mr. Kassis, and then Ms. Bonjean can tell me where she clarified.

So, Mr. Kassis, where are you talking about?

MR. KASSIS: On page 16, lines 16 to 19. Lines 16 to 19, starting on page 16.

THE COURT: Okay.

MR. KASSIS: Then when you're through that, there's also another citation.

(Pause in proceedings)

THE COURT: -- I believe I would ask Mr. Bowens, if he believes Mr. Carrega was subject to that. If it is, then I don't think we have anything else to discuss.

Okay.

MR. KASSIS: Now, there's also on page 27, lines 13 to 20, again. And then I'd like a moment to speak after you read that, Your Honor.

(Pause in proceedings)

THE COURT: 13 to 20. Okay.

Okay. I read it.

MR. KASSIS: I don't -- I don't -- I think the

confusion about whether the ethics complaint involved Carrega or Guarino is not an issue. I think that was clarified. And in that sort of -- in that -- in that hearing transcript, I think it's clear at that point that it's understood that the ethics complaint was against Guarino. But Ms. Bonjean's only concern was whether or not it involved conduct of Lieutenant -- Lieutenant Carrega. And it clearly didn't.

And Guarino -- and I know you said, Your Honor, you thought this was -- this may be relevant. But Guarino's no longer a defendant in the case. So -- so I am not sure how it would be relevant. But even if it is relevant, there's nothing about the conduct that involved Mr. -- or Lieutenant Carrega.

THE COURT: Okay.

Ms. Bonjean, it does appear that at least at the hearing and the cite -- the sections that defense counsel just cited, you were looking for to determine whether it involved conduct by Carrega.

So are you telling me that at somewhere else you basically clarified or cleaned it up?

MS. BONJEAN: Well, first of all, I put it in my subpoena that it was Guarino.

Second of all, the reason I focused on Carrega is because Mr. Bowens represents Carrega. And it was not clear to me during this hearing at the time that he was also

representing Guarino or the Essex County Prosecutor's Office, which really is who the subpoena was issued at.

So my point was when we were debating this was, well, it could implicate Carrega. I don't -- you know, I don't know what the scope of the ethics complaint was.

I did misspeak, and I think that's clear. I'm looking through the transcript now, because I corrected myself.

But the bottom line is my subpoena, which was issued to the Essex County Prosecutor's Office related to Guarino, because Guarino expressly testified that he was subjected to an ethics complaint as a result of the conduct in this case.

And then it got very confusing to me during this dep- -- during this hearing -- I am not going to lie, because Bowens had moved to quash a portion that related to Carrega, and then the Court was asking questions about other areas of the subpoena that, from my perspective, had not been objected to. And I was not really following, frankly, because, again, Mr. Bowens represented Carrega. And my point, well, it could involve Carrega. I don't really know. I haven't seen the ethics complaint.

It is clear that I was not intent -- I was not expressly limiting my request. For the purposes of this hearing, I was focused on Carrega, because that's whose

counsel was there. And it was never made clear to me, never -- and it still isn't clear to me, whether Mr. Bowens represents the Essex County Prosecutor's Office, who is in possession of these materials. I think he offered sort of casually by virtue of his relationship with the Essex County Prosecutor's Office to retrieve it, but -- so, you know, I don't really know -- I don't think that it's really fair to say that somehow in the context of what I considered to be an issue that was raised on the fly during this hearing, because, again, no one had taken issue -- Mr. Carrega had not in his paper taken any issue with the Essex complaint, which was expressly requested in the Rule 45 subpoena.

So I guess the bottom line is the Rule 45 subpoena requested Guarino's ethics complaint. Whether it involved Carrega or not, I don't know. I still don't know. But it certainly is relevant, and I don't think I was expressly -- even that -- that may have been my focus during this hearing, but I wasn't limiting or intentionally limiting my request for those materials in this hearing.

And I guess that's the best I can say. But I do think the record is clear that I was -- I did correct my misspeaking when I was talking about it in terms of Carrega. But that's my response, I guess.

THE COURT: All right. I'm going to -- I'm going to allow plaintiff to obtain this, and I'll explain why.

I do believe, first of all, that it's plainly relevant insofar as it now appears that the ethics complaint pertained to one of the two prosecutors' handling of the case against Mr. Evans. I think on its face, then, it's relevant.

The question is in a case where, as reflected in my August 17th, 2020, ruling and my November 16th, 2020, ruling -- and for that matter, the February 17th, 2021 denial of plaintiff's application for reconsideration, the parties -- and for that matter, the Court had been wrestling with the fact that prior plaintiff's counsel had essentially waived written discovery. And so the issue is is this also within the ambit of the Court's prior rulings in August 2020 and November 2020?

I believe that a fair reading of the Court's rulings on those dates allows that this is. First, plaintiff did seek this information in her subpoena to the Essex County Prosecutor's Office. Two, while not directly encompassed by my paragraph 1 of the order on August 17th, it is the case that the August 17th ruling required, at least for the officers directly involved in the investigation and prosecution of plaintiff and their immediate supervisors, the records of any IA investigation, disciplinary charges, punishment, et cetera.

It stands to reason that as one of the two prosecutors handling this case, who didn't necessarily have

what one call supervisory responsibility over the officers, did have supervisory responsibility over the prosecution itself.

In that regard, then, while not directly encompassed by paragraph 1 of the August 17th order, I do believe it's entirely -- requiring production of it now is entirely consistent with that paragraph 1 of the August 17th order. And as I've said, it easily falls within the ambit of Rule 26.

So the question is -- so I do believe plaintiff is entitled to it, even with the limitations on discovery that the August 17th, 2020, November 16th, 2020, and February 17, 2021, orders have placed on additional written discovery.

The question I have now for at least, Mr. Kassis, is, as I understand it, your firm, you and Mr. Bowens represent Detective -- or Lieutenant Carrega. I don't know whether I can order your firm then to produce the -- the ethics complaint. Although I do understand that you have it.

If not, plaintiff will renew her subpoena to ECPO for it, but either way I do believe the plaintiff gets it. It really ends up being a logistics issue now.

MR. KASSIS: So I can answer that, Judge. We don't represent -- not in this case, anyway, the Essex County Prosecutor's Office. I don't have a copy of it. I don't know --

THE COURT: Okay.

MR. KASSIS: If the Essex County Prosecutor's Office has a -- a copy of it. We do deal with the Essex Prosecutor's Office, so as a courtesy to Ms. Bonjean, we would certainly -- and I think what Mr. Bowens was offering was to contact Essex County Prosecutor's Office and ask them about it, and if they have a copy, to provide us -- for us to provide to you for in camera review.

I don't know what my efforts are going to turn up. But my understanding is Mr. Bowens has contacted -- that he can reach and make the request. I don't know if it's going to bear fruit. But if it doesn't, then, obviously, as you've pointed out, Ms. Bonjean would then be relegated to turning her attention to the OAE or whoever it is, wherever it filed. I do know that Mr. -- so I don't -- I don't believe Mr. Guarino -- or, rather, former Assistant Prosecutor Guarino has a copy of it. So -- but -- I mean, based on your order, we will make the inquiry, and if it exists, I will submit it to Your Honor for in camera review. If it doesn't exist, then certainly we'll share that information, and then that would leave Ms. Bonjean to attempt to request it from the source, which, I guess, the OAE or whatever --

THE COURT: Well, what I would suggest, two things. One, given that this case is seven years old, Ms. Bonjean doesn't need me to tell her how to practice law, but you may

want to just issue the subpoena anyway, rather than wait and see if this process plays out.

Second, look, if I have to do an in camera review, I'll do them. What am I doing an in camera review for? Is it relevant? Is it -- what's the purpose of the in camera review.

MR. KASSIS: Judge, I don't -- I wasn't part of the November 16th hearing, although I did review the transcript --

THE COURT: Oh, no. Okay. So let me clarify. The purpose of the in camera review at that point was to determine whether the ethics complaint pertained to -- if I'm remembering this correctly, pertained to Defendant Carrega. Nobody was sure at that point. All we know, I think, or thought we knew was that there was an ethics complaint. Didn't necessarily know whether it was against Carrega or not. The idea was, I think, I was going to review the ethics complaint to determine whether it pertained to Carrega. And if it did, it would be relevant and subject to production. If it didn't, that would be another matter.

MR. KASSIS: Which, you know, kind of goes to my -- the earlier argument was, you know, I think it's clear that it only involved Guarino and that it goes to the -- it goes to relevance --

THE COURT: I am not necessarily disagreeing with

you. I think, at least from what the parties have now both represented to me, it sounds like you are right.

But I do find that plaintiff is entitled to it, for the reasons I've articulated. But I do understand your argument.

MR. KASSIS: Judge, in camera, Judge? Or am I just going to -- if I can get it, obviously.

THE COURT: Again, what I come back to is I am not sure exactly what the -- I think it should be produced, because in an ethics complaint, my understanding -- I'll put it this way: If the producing party wants it marked as confidential pursuant to the parties' confidentiality order, I certainly wouldn't dismiss that out of hand subject to, you know, it being used at trial or in a dispositive motion later, and we'll deal with whether it's still confidential at that point.

I am not -- I'm still not sure that I have clarity on what I'm doing an in camera review for.

MR. KASSIS: Well, I -- yeah. So it sounds like, I mean, what you said a moment ago, which was to determine whether or not it involved Carrega's conduct or Guarino's conduct. And if it was the latter, than it wouldn't be produced. If it's the former, then it would be produced, because, obviously, Carrega, it would be relevant, because Carrega is a defendant in the case. Guarino is not. So

that's where my confusion lies. And that's sort of --

(Simultaneous conversation)

THE COURT: I thought that we had just established from your joint letter, the Docket Entry 196, that this ethics complaint pertained to Guarino, not Carrega.

MR. KASSIS: Yes.

THE COURT: Right. So we've already deconflicted that issue. Right?

MR. KASSIS: Okay. So -- right. So I thought that sort of ends the -- in my mind that ended the inquiry, because why did that issue even come up. If that --

(Simultaneous conversation)

THE COURT: I just explained this.

Okay. Listen. Here's my ruling, because we've just been through all this, and we have, like, four other issues we've got to get through.

For the reasons I've already articulated, even insofar as the ethics complaint didn't pertain to defendant Carrega and pertained to Prosecutor Guarino, for the reasons I've already articulated, I find that plaintiff is entitled to it.

I'll leave it to the producing party as to whether they want to mark that, in producing it to the plaintiff, as confidential pursuant to the discovery confidentiality order, and if plaintiff -- if it turns out that no party in this

case can produce it, then plaintiff may reissue a subpoena to the appropriate party for it.

Okay.

Next issue. List of lawsuits against the defendant officers. All right. Is this still an issue? I mean, the City tells me that -- Ms. Bonjean, that the plaintiff issued an OPRA request. In response, the City produced 91 unredacted civil complaints filed in federal -- the OPRA request being for not just these officers, but for all civil lawsuits and complaints brought against any member of the Newark Police Department for the 10-year period of 2008 to 2018; that in September 2020, the City conducted a search and produced approximately 91 unredacted civil complaints in both federal and state court constituting all the civil rights lawsuits that the City could locate, some of which included claims against the individual defendant.

In light of that, is this even still an issue?

MS. BONJEAN: Judge, it's not that it's necessarily an issue, although we have found lawsuits that were not produced, so I don't -- and I don't know if that's because the City has not maintained --

THE COURT: In that time period? But the same scope, you're saying?

MS. BONJEAN: Yeah, I believe so. There's at least -- so I think there is -- there is a little bit of a

disconnect, because when the lawsuit was filed versus when the conduct occurred, I think is -- I think the City is focusing on when the lawsuit was filed, which is, from our perspective, not the relevant time period. We wouldn't -- when the lawsuit's filed is sort of irrelevant, frankly. It's when the conduct of the false arrest, malicious prosecution, or the withholding of Brady material occurred.

And, again, I am not -- it's my position, based on my own due diligence that the list is not complete.

But if it is -- and I am not going to argue with the City about it -- I would just ask if the City, as they would with any Rule 26 retire- -- disclosures, certify that they complied with that request. I don't think that's an unreasonable request.

So if they have, then they should just certify to it, if they believe they have. I am not --

THE COURT: What issue? One thing that does jump out at me is my November 16th order required the production of prior lawsuits for 2007 to 2011. I know -- or from Mr. Lipshutz's letter the production was from 2008 to 2018.

So is there a gap there for 2007?

MS. BONJEAN: -- one case that involved one of the defendant officers. And it is true that Mr. Lipshutz provided a lot of -- related -- and to the City, which frankly, you know -- that's, I think a lot -- those

individuals typically get named in lawsuits against the --

THE COURT: Yes.

MS. BONJEAN: It's not as a result of any individual conduct.

And far more -- I, you know, it makes the burden easier. My -- I would even remove those policy-makers if they're just being identified as policy-maker. I'm far more concerned about the individual defendant officers Hadley and Henry. And I believe that defendant Hadley was sued for conduct that occurred between 2007 and 2011, and that we were produced those lawsuits.

But, again, I don't -- you know, I am not really trying to nit-pick, because if I -- on my own, I'm fine doing so. I just ask the City to clarify and certify that they have, indeed, produced for that period, and to, I guess, resolve the question of whether it's conduct from 2007 and -- year 2011 or whether it's lawsuits filed, because, obviously, with the statute of limitations, you know, a lawsuit could be filed a couple of years after the conduct, and the conduct would be within the relevant time period.

THE COURT: Mr. Lipshutz, what clarity can you bring to bear on this?

MR. LIPSHUTZ: Thanks, Judge. Thank you, Judge.

Judge, your order said -- your order of November 16th said, turn over prior lawsuits, name, caption,

court, for any action filed against them for the period of 2007 to '11 relating to false arrest, malicious prosecution, withholding Brady material.

There was obviously an overlap with the OPRA request that asked for lawsuits against any police department employee. We spent days looking for the records, and I was -- was looking for them. We went back, as best as we could, to find all the lawsuits. We copied and served in response to the OPRA request, 91 cases for that period. I did look for 2007, as I said in my letter to you on the 12th, and I was unable to find anything else. We have limited availability in the records to go back and find it.

So I think I've complied. I've sent them -- they have them. If there's one that they don't have that they know of, if I missed it, let me know. But I don't know. We've -- we've looked. The court dockets are -- don't -- are not as easily searchable. Okay? I did search for the officers in federal court to see if there were other cases filed in that time frame. I did -- I think I'm almost certain I searched the Essex County dockets for officer -- for the officers as well, and I couldn't find anything for that time frame that we hadn't turned over.

But --

THE COURT: So, wait, Gary -- can we -- I'm sorry -- Mr. Lipshutz. Can we just -- I just want clarity on

one issue.

Did your search, separate and apart from the OPRA request, because the OPRA request was for 2008 to 2018, did the search encompass 2007?

MR. LIPSHUTZ: Initially, it did not. And I had overlooked 2007. But I then -- I have gone back and I did do personally a search for 2007. And I could not find any other complaints against any of the individual defendants, which is what Your Honor ordered. So I did look -- I did do both. And so I don't know what else to do.

THE COURT: Okay. Here's my ruling on this.

One, counsel has now represented on the record that in the course of responding to the OPRA request and in the course of responding to the Court's November 16th order, it conducted a search for any and all responsive records and found no additional records beyond that which is produced. Counsel has now represented that unequivocally, both in writing, in his April 12th letter, and on the record today. And that is sufficient. I am not going to require counsel to -- and this is not a situation where no records were produced. Newark produced approximately 91 civil lawsuits. I'll accept counsel's representation.

If, however, plaintiff -- or plaintiff's counsel, rather, becomes aware of or has reason to believe there are other lawsuits potentially out there that have not been

produced, this is exactly why we have the meet-and-confer requirement of Rule 37.

With regard to the clarification of the time frame, I agree with Mr. Lipshutz, the order, which the November 16th order, Docket Entry 162, which as, counsel, I'm sure, remember well because the Court does. It was the product of significant back-and-forth between the parties and a conference with the Court and the input of the Court, clearly says for any action filed against them for the period of 2007 to 2011. It was very clear and specific, and therefore, the Court's order stands. In short, with regard to issue Number 2, the Court will take no action at this time.

Let's turn to Item Number 3, City's compliance with the August 17th order. This is with regard to the City having represented that that it has no responsive documents to produce regarding paragraph 1 of the August 17th order, which required essentially IA files, disciplinary charges or discipline regarding a number of categories, including but certainly not limited to false arrest and malicious prosecution.

Now, I understand the plaintiff takes issue with the production that it has received. Plaintiff is aware that defendant Hadley's been sued at least three times. And plaintiff wants a certification from the City that no such documents exist that are responsive to this request. And

then we'll get to the second issue.

So, Ms. Bonjean, why don't you tell me specifically what you're looking for here, and then I'll hear from Mr. Lipshutz.

MS. BONJEAN: Judge, I'm simply asking that consistent with civil -- Fed. R. Civ. P. 26(g) that the City certify that they have conducted a search, that they do not have any internal affairs investigations on these subject matters related to -- for this time period. That's it.

It is relevant that the City does not have those materials. It's relevant to the plaintiff's Monell claim. It's relevant for other things as well, because we know for a fact that defendant Hadley was sued under theories consistent with false arrest and malicious prosecution. So if the City has not initiated an internal affairs investigation, that's as relevant as if it had. Sometimes the failure -- I mean, that's one of the theories here, the failure to supervise, monitor, conduct investigations. It's also relevant because there is a reading of the attorney general guidelines that Newark probably should have initiated an internal affairs investigation into these matters. I know a number of departments -- maybe not Newark -- but a number of departments in the state of New Jersey, that triggers an internal affairs investigation, the mere filing of a complaint would trigger an internal affairs investigation.

So the fact that they don't exist is important.

And the reason we need a certification is to prevent, at some point -- well, maybe not prevent, but to deal with the possibility that at some point, the City comes and says, oh, wait, wait, we do have one. You know, it's just basically to told the City accountability for saying, yeah, we did a diligent -- and it doesn't exist. I think that's fair. That's -- required. If these requests had timely been made, I know it was made via a court order, but had they been timely made, of course, requests to produce are accompanied by certification. So --

(Simultaneous conversation)

THE COURT: Yeah. I see your point.

Mr. Lipshutz, look, I think -- I see Ms. Bonjean's point that the lack of -- from at least the plaintiff's perspective, the lack of training materials may very well be relevant here. I don't know -- and perhaps you can inform me whether there was that representation made in, you know, written responses to plaintiff's document production requests. I suspect no because of just the way this case has developed. I think Ms. Bonjean has a point.

Has there ever been a Rule 26(g) certification?

MR. LIPSHUTZ: No.

THE COURT: Okay.

MR. LIPSHUTZ: But, Your Honor.

THE COURT: Yes.

MR. LIPSHUTZ: There was no document requests made to the City of Newark.

THE COURT: I understand that --

(Simultaneous conversation)

THE COURT: And believe me, we have beaten that issue.

MR. LIPSHUTZ: But, no, I mean, I want you to understand --

THE COURT: Right.

MR. LIPSHUTZ: Right. There were no discovery demands. This was Court-ordered. So I obtained the comprehensive disciplinary histories for the officers and even ones that were not defendants. I reviewed them and reviewed them for the time period, and I'm -- again, I'm happy to provide them to Your Honor for in camera review.

But I did that. If Your Honor need -- if -- you know, that's what we normally do. I've done this in all the cases that I've always done.

But, you know, I don't know what else to say. You know, I did it. I did it timely. You know, Your Honor ordered it on the 17th, and 33 days later, I told them we didn't have any responsive documents to those internal affairs. I am not talking about training. I'm talking about internal affairs.

So that -- that was the point. I am not sure, you know, everything that I do has to be certified to. That's, I guess -- I guess that's what it's coming down to. But I responded. I'm willing to give Your Honor the comprehensive disciplinary histories yourself, as well as the two investigations that I did ask for -- think there were two, because I wasn't clear from the comprehensive disciplinary histories. And I reviewed as well, and they don't encompass anything within the -- the topics that we had to turn over. So...

THE COURT: You're talking -- so essentially what you're saying in a nutshell is after your search, you found nothing responsive to paragraph 1 of the August 17th order.

MR. LIPSHUTZ: No, I didn't. And that I told them that a year ago.

THE COURT: Understand that.

All right. So what I'll ask, then, is counsel to produce by --

MR. LIPSHUTZ: But I did say one thing, Your Honor that was -- I'm sorry -- they wanted to do --

THE COURT: Go ahead.

MR. LIPSHUTZ: They wanted to do a 30(b)(6) deposition. Okay? And I also said, well, when you're doing that, since the deposition is limited to the topics that Judge Hammer ordered us to provide, I'm sure you can ask that

witness about the search.

So -- one of the reasons why this is banging around is -- and we're going to get to it, I know, is that the 30(b)(6) witness doesn't ask, doesn't comply with Your Honor's order. It seeks things for decades. So this is the problem I had. And we'll talk about it later. But she could have -- she could have made that inquiry of our designated witness.

THE COURT: Okay.

All right. I'm prepared to rule on this. I'm not going to require a separate certification, because Mr. Lipshutz has just stated on the record as an officer of the Court, comprehensively that not only does the City not have any documents responsive to paragraph 1 of the August 17th order, he's explained exactly what his search methodology was and what the results of that were. Rule 26(g) allows for a certification by either counsel of record or by the party personally if unrepresented.

The -- and it requires among other things, that after a reasonable inquiry with respective disclosure is complete and correct as of the time it is made, that with respect to a discovery request response objection, it is consistent with these rules and -- by existing law, not interposed for any improper purpose, such as harass, cause unnecessary delay, or needlessly increase the cost of

litigation, and neither unreasonable or unduly burdensome, et cetera.

Mr. Lipshutz's representations on the record as an officer of the Court easily satisfied criteria under Rule 26(g). To require a separate certification would just be entirely redundant, "make work," based on Mr. Lipshutz's fulsome explanation concerning the City's search for documents responsive to paragraph 1 of the August 17th order. So that is my ruling with respect to the certification issue.

MS. BONJEAN: Judge, I'm just -- that's fine. I have no problem with that.

I just want to make sure that that included the investigations. I assume Mr. Lipshutz was also including the internal affairs investigations. He said disciplinary records, but these are kind of the same thing. So I just want to make sure --

THE COURT: Yeah, Mr. Lipshutz, I assume when you were speaking to no responsive records to paragraph 1, that meant for all of the categories in there. Right? IA investigations, disciplinary charges, and punishment or discipline relating to, and then the various categories?

MR. LIPSHUTZ: Yes, thank you, Your Honor, for asking me that. Because there were no IA investigations related to these topics, there were no disciplinary or punishment meted out for these topics. So that's why there

are no records.

THE COURT: Okay.

All right. So, Ms. Bonjean, I'll turn it back to you, with regard to Number 3, what's -- is there still an issue with the Hadley and Henry? And if so, what -- what exactly is the plaintiff looking for?

MS. BONJEAN: I'm sorry, Judge. We're moving on. Right?

THE COURT: Yes.

MS. BONJEAN: Okay. And you said --

THE COURT: I'm trying to figure out, because it looks to me, at least if I'm reading this correctly, there are a couple of issues within § 3 of your April 9th letter. It looks it me like the next one is --

MS. BONJEAN: Training -- the training --

THE COURT: Hadley and Henry.

MS. BONJEAN: Right. Judge, I mean, so our position was -- or at least we were seeking clarification and an order from the Court for clarification, the City was ordered, I think, to produce training materials. I believe our position was that included in that was at least a log of Henry and Hadley's training background. I know the defendant Tietjen, for instance, produced a log. It doesn't have to necessarily be the entire training file, but some type of list or log of training completed by defendants Hadley and

Henry were contemplated by this request or the Court's order. I think the City has a different position on that. I think the -- the words that this Court used in its order were "training materials."

So I guess we're just at a -- we just have a difference of opinions as to what that encompasses. And I think our position is, you know, we were -- we believe that it included training materials of the defendant officers, which included, you know, what training they completed. Even if it's by a log, I -- you know, again, I am not trying to be overly burdensome. I'm trying to be reasonable, but we believe that that was included in that.

THE COURT: Mr. Lipshutz, go ahead. I assume this is you.

MR. LIPSHUTZ: Yeah, Judge. Thank you.

I don't want to rehash. But we fought substantially over reopening discovery, redoing discovery. We fought extensively. I had a very strong good-faith reason, belief that we -- that the plaintiff waived discovery.

Your Honor ruled that the City had to do certain things, and that was it.

And paragraph 2 of your order said "for the period of 2007 to 2011, any policies, procedures, and practices of the City of Newark Police Department." And it goes through

the same types of areas. It doesn't say their training of the officers. It doesn't say -- oh, wait a minute. Now I'm confused, because now we're talking -- we're talking training? The paragraph 3. Any training --

(Simultaneous conversation)

THE COURT: We're in paragraph -- I think we're in paragraph 3 of the August 17th order.

MR. LIPSHUTZ: Still the same thing. Any training materials for the City of Newark Police Department concerning the preparation of reports, et cetera, et cetera.

Now, that doesn't say -- that is the police department's training materials. It didn't say the training that the officers underwent. I don't think it's a crabbed view. I viewed in the sense of the three things that Your Honor ordered us to do were all directed to the City and not any individual defendant. And Your Honor's order is clear. And we had fought over this. Otherwise, it was -- you know, it meant nothing, because I did get interrogatories from the plaintiff after this order, asking me for training materials for the individuals. I did get the notice to produce, which was direct in conflict with Your Honor's order.

And I have done what Your Honor asked -- ordered me to do.

So I don't agree that -- and I'm just trying to

stick with the order. And the fight that we had about reopening discovery where we went through this where it was waived. Not because of me. Because I -- you know, we -- I brought it to forefront for years.

So I've complied with Your Honor's order. You didn't order the City to turn over the defendants' training records. I turned over the policies and -- that we had for that time frame that they could locate.

THE COURT: Okay. I appreciate the parties' arguments. I am not going to modify my order now from August 17th. Paragraph 3 of the order said for the period of 2007 to 2011, any training materials for the City of Newark Police Department concerning the preparation of policy reports, the disclosure of Brady material, or otherwise exculpatory information to a criminally charged defendant, and the proper handling of physical evidence and witness statements, including the taking of or memorializing statement from a witness.

As Mr. Lipshutz fairly notes, that ruling itself was the result of extensive back-and-forth between the parties in their written memoranda from, among other things, plaintiff's January 7, 2020, letter, Docket Entry 136; defendant City of Newark's letter, January 21, 2020, Docket Entry 139; plaintiff's letter June 18, 2020, Docket Entry 144; Detective Carrega's letter, June 19, 2020, Docket Entry

145; City of Newark's letter, June 23rd, 2020, Docket Entry 146; and defendant Tietjen's letter, June 24th, 2020, Docket Entry 147.

The Court gave very careful consideration to the parties' arguments. It allowed certain discovery to go forward, notwithstanding prior counsel's foreswearing of written discovery and the March 21, 2018, order, and the August 17th -- and tried to strike an appropriate balance between the age of the case, the prior orders, the discovery plaintiff had already adduced by the point, as well as the plaintiff's existing requests.

That order, the August 17th order, in addition to being the product of considerable back-and-forth and consideration by the Court itself was neither the subject of any motion for reconsideration, clarification, or appeal. That was seven-plus months ago. I see no need at this point to -- or basis under the law to go back and essentially start to rewrite that order.

So to the extent that that order -- and it does not -- provide for individual training logs, plaintiff's application to that effect is denied.

All right.

MS. BONJEAN: And, Judge -- sorry -- if I could just -- I am not -- that's fine. I just -- I'm thankful for the order.

I just want to make clear, though, our position has always been and will continue to be and was raised on appeal is that that order related to the City, not the defendant officers. It's our position that we, the plaintiff is of the belief -- and we've laid that out that the prior counsel waived discovery as to the City of Newark, which is an individual party, a separate party, separate and apart from the defendant officers. We didn't waive as to the defendant officers.

But I understand the Court's ruling. I just want to make it clear that we see these parties as different entities, different parties to the lawsuit. So -- and our belief was that the August 17th letter related to the City and didn't preclude discovery as -- written discovery as to the individual defendant officers.

But understood the Court's order and -- it.

THE COURT: All right. Thank you.

MR. LIPSHUTZ: Judge, your order is -- the next paragraph of your order --

THE COURT: Why are we arguing? I already ruled. I appreciate counsel's arguments.

And I -- look, I have to say, I said that too fast. I also appreciate counsel's, you know, litigation initiative and efforts in this case.

But you folks have my ruling. You can agree with

it, disagree with it, appeal it; that's certainly your prerogative. But let's move on.

So all right.

We've got the 30(b)(6) testimony issue. Okay. This basically boils down to really two things. It's a dispute about the scope of the Rule 30(b)(6), and there's two parts. There's the testimonial part, and then there is, I think, any attendant written discovery. Part of the -- so if I understand correctly, plaintiff's Rule 30(b)(6) notice was to have the City produce a witness to speak to policies and practice between 1994 to 2010 and on a number of topics such as missing persons, homicide, cold-case investigations, probable cause determinations. The notice of the witness -- oh, and as well to training in those areas.

The Rule 30(b)(6) notice always acts as a disguise -- according to the defense -- as a disguised notice to produce, because it requires the witness to produce any and all relevant documents for that broad scope.

Let me -- I want to -- I'm going to rule on the notice to produce documents, because I'm clear on what I want to do there, but then we're going to focus on the testimonial part where I do want to talk to the parties.

To the extent that the subpoena demands the Rule 30(b)(6) witness to produce any and all documents related to the above topics, that part of the notice is

stricken. That would be an entire rewrite of discovery -- or my discovery orders, particularly considering that it seeks entirely new written discovery that prior plaintiff's counsel could have sought prior to the March 21st order and that this Court has squarely addressed in terms of the scope of discovery in at the August 17th, 2020, ruling; the November 16th, 2020, ruling; and by association, at least, the February 2021 ruling on plaintiff's motion for reconsideration.

So plaintiff isn't -- I'm sorry. City of Newark is not required to produce those additional documents.

But it's a different issue, frankly, when we do get to the scope of the witness's testimony, because, as Ms. Bonjean, I think, fairly notes, my order and orders have been limited to written discovery, not deposition testimony. The entire premise for, I think, this issue was the fact that I understand Ms. Bonjean believes that different defendants, different positions, clearly, you know, we're going to have to -- and respectfully, we're going to have to agree to disagree about that.

But it is the case that the case management conference on March 20th, 2018, with prior plaintiff's counsel was premised on prior plaintiff's counsel saying he had elected not to serve written discovery on the defendant City of Newark. That was the basis of the defendant's

objections to Ms. Bonjean's renewed attempt -- or attempt to have the Court reconsider the March 20 -- or 21, 2018, order, and much of the disputes that the parties have had and the Court has ruled on since then on the limits of written discovery.

The 30(b)(6) notice, to the extent that it would have a 30(b)(6) witness or witnesses testify in a deposition about the subject is a different matter entirely.

Having said that, I'd like to talk to the parties and really have the parties meet and confer on this to try and find some clarity. I don't get the sense, quite honestly -- and maybe I am wrong; you'll tell me if I am -- that there's been a whole lot of meeting and conferring on these issues. And what I'm hoping is my rulings today and the comments I'm making with regard to particularly the 30(b)(6) issue, will allow the parties to have a meaningful meet-and-confer.

I don't know that I'm in a position at this point to just, you know -- to rule on the scope of the deponent's testimony in the Rule 30(b)(6) deposition.

Ms. Bonjean, I'll start with you, since you're the plaintiff's counsel. Understanding my ruling -- and, again, you can agree, disagree, that's fair -- with regard to the production of documents component is what it is.

But with regard to testimonial, why shouldn't I

require the parties now to go back and try and meet and confer on the specific topics?

And is -- here's the other question -- I'm sorry. I hate to ask the question and throw another question at you, but I think it's related.

Is it the case that the entire period of 1994 essentially to 2010 is relevant for all of these areas? Or are there specific windows and time that are relevant, that may in include span that scope but not be that entire scope?

MS. BONJEAN: So, Judge, let me -- let me try to address all of those points.

First of all, I would like to say there have been a number of meet-and-confers.

THE COURT: Okay.

MS. BONJEAN: More than I -- more than usual. We have pushed for them as plaintiff's counsel.

-- and I think, you know, it's no secret, the City has from day one taken a very hardline position. They -- everything has had to be litigated, because the City took the position that prior counsel waived all written discovery of everybody and anybody at all times. They continue to take that position. They have taken the position that it even extends into subject matters on oral discovery; we had to stop a deposition to get the Court's ruling on that. So, you know, just as they're entitled to aggressive, obviously,

plaintiff is -- you know, plaintiff is entitled to be aggressive. They are entitled to be aggressive in their litigation.

But the meet-and-confers have not been successful because the City has taken the position that -- and we haven't been able to get into the minutiae or even explore whether I'd be willing to limit and narrow the scope of the 30(b)(6) because the City has taken a position that I don't even get to into these areas, period, anything that might be outside of what this Court ordered as it relates to the written discovery. So it was kind of a nonstarter from the City's perspective, as best as I can tell.

Now, and that's just -- you know, my perception.

(Interruption in proceedings)

THE COURT: Oh, wait. Sorry. Hold. I'm sorry.

I've got a criminal emergency that just came up.

I need probably five minutes all right? So we're going to take a 5-minute break and then I'll rejoin. All right? I apologize.

(Recess)

THE COURT: On the record in Evans versus City of Newark. And I believe we were talking about the scope of the -- plaintiff's 30(b)(6) notice with regard to testimony.

So did we leave off with Ms. Bonjean? Did you still -- or was Mr. Lipshutz responding? I don't remember.

MS. BONJEAN: No, I wasn't -- I was concluding my thoughts, Judge, so --

(Simultaneous conversation)

THE COURT: Go ahead. Yeah, by all means, please.

MS. BONJEAN: So in terms of the getting again into the minutiae of the scope of discovery, I certainly am open to trying to narrow those years in a way that would be amenable to the City, but we didn't really get into those discussions because the City had taken a more draconian position about even the subject matters, which, you know, the subject matters themselves are -- couldn't be more relevant, on criminal investigations about missing persons and homicide investigations and cold-case investigations and specifically, you know, in the areas of interrogation, probable cause determinations, and report writing are all highly relevant to this case. And there has been a great deal of testimony in this case already by the detectives about how the case was treated as a cold-case investigation and how it then went to a homicide investigation, and there's -- there's some lack of clarity there that I think deserves some exploration.

Now, again, whether it has to be on all of those subject matters for that entire span of time, I don't think it does --

THE COURT: Right.

MS. BONJEAN: -- but I need some cooperation, and

I'd be happy to work with the City to try to -- if it's a matter of trying to find the right person to speak to these issues, I'd be happy to work with the City. But we have to get past the point where the City is taking the position that these are not fair even areas to be inquiring about.

So I think, you know, that's where we're at.

And as it relates to the third portion of the notice regarding supervision, again, I think we can narrow that time frame, but there's been a great deal of conflicting testimony about who was in charge of the investigation, and, at least, from the City's perspective, I kind of -- that's an important area as to Monell liability, potentially. It has -- I have to have a 30(b)(6) witness to speak to what the actual -- what the actual policy was, rather than a detective saying, well, I think this was it, or maybe this was it or, you know, giving contradictory testimony about it, what their understanding was.

So, again, I guess I would just conclude with saying I'm still willing to go back to the drawing board with the City, but we have to get past the point of that this is not fair game at all.

THE COURT: Mr. Lipshutz? And, look, I am not -- I don't know that I'm in any position at this point -- I'm happy to talk with the parties -- that I'm in any position to rule on relevance. Of course, normally in a deposition in

any event -- really, more, though, with a 30(b)(1) witness -- you know, objections based on relevance can be put on the record, but not the basis for not answering. Of course, here, we're dealing with a 30(b)(6) witness, a little bit different, but really, as I understand it, the way this issue was teed up in the parties' April 9th and April 12th letters, this wasn't a fight over relevance as much as it was a dispute over the scope of the 30(b)(6) notice vis-à-vis the Court's August 17th and November 16th orders.

MR. LIPSHUTZ: Thank you, Your Honor.

I was -- this was, you know -- I'm sorry. I'm mumbling.

THE COURT: That's okay.

MR. LIPSHUTZ: The problem from -- the initial -- the real initial problem was the notice to produce, because I -- and I know that's been taken off the table, because I just felt if this is -- this notice is going to require me to open all those areas, floodgate of discovery, so this was really nothing I could do.

Your Honor has removed the notice to produce aspect of it. And this is an oral deposition notice. And I never -- I never said we would not produce a 30(b)(6) witness. I always said --

THE COURT: Right. The dispute was over the scope of the topics --

(Simultaneous conversation)

MR. LIPSHUTZ: -- the scope of it. And I -- you know, candidly, I felt that -- I still kind of feel -- I still feel that Your Honor's order of what we had to turn over is what we have to turn over, and those should be the topics of discussion. But I have not had that conversation with Ms. Bonjean because --

THE COURT: Okay.

MR. LIPSHUTZ: -- because of the overarching notice to produce.

And I am willing to talk to her about the witness and the time frames and getting it done.

So --

THE COURT: Okay.

MR. LIPSHUTZ: -- that -- so that was my frame of reference here -- okay? -- was the notice to produce and Your Honor's order, and I just felt we really couldn't move. And that's the problem I had. We couldn't move on it. There was really nowhere to go.

So I'm happy to talk to her, and I will.

THE COURT: I think that's by far the most productive route, because as I said, I think there is a clear distinction between the scope of the topics from a -- from a testimonial standpoint versus from a written discovery standpoint.

So I'm going to require the parties to meet and confer. And then if there is -- I'm really hoping there won't be a dispute, that you folks will be able to work it out.

If there is still a dispute, then what I want -- and this time, folks, please, my last order was for a joint letter. I didn't get a joint letter. I am not pointing fingers at one side or the other. Please give me a joint letter. I can get through it so much faster. If it's -- if it's a dispute over relevance of topics -- and, again, not because of my August 17th or November 16th orders. This is testimonial we are talking about. The only dispute would be relevance to the claims in the case. It would be a straight Rule 26 analysis.

If there is still a dispute, then what I want is a joint letter and for each topic that is in dispute, I want on the joint letter, here's the topic that's in dispute, here's plaintiff's argument in a nutshell, one page -- I mean, god, it 's relevance. Right? One page max as to why it's relevant. One page max from the defendant as to why it's irrelevant. And then next topic that's in dispute. Plaintiff, one page. Defendant, one page. And so on.

That'll allow me to process the dispute and get you folks a ruling most efficiently, which we're all interested in.

And then why don't we say -- I don't know -- when do want to -- to give you the opportunity to fully meet and confer with cautious optimism you're going to solve your own dispute but allowing time to write the letter in case you can't, tell me what you think is a reasonable deadline for the joint letter?

MR. LIPSHUTZ: I was letting Ms. Bonjean answer first.

THE COURT: Do you want 30 days? I'll give you 30 days.

MR. LIPSHUTZ: I don't think it'll take that long.

MS. BONJEAN: I am not the one -- I don't really have any -- whatever, two weeks to thirty days whatever -- I can deal with either.

THE COURT: All right. I'll make it easy. I'll give you folks 30 days. That'll give you plenty of time to meet and confer because there's going to be a number of both time frame issues and perhaps some topic issues. I don't really know. And then that'll give the parties plenty of time to give me a -- emphasize all caps, bold, underlined and italics -- joint letter. Okay? Great.

That issue's done.

I think the last issue is the depositions of Garry McCarthy and Senator Booker. And I don't think McCarthy is in dispute. Right?

MR. LIPSHUTZ: Just -- I had trouble reaching him the last couple of days to try to get dates. I had spoken to him before.

THE COURT: Right.

MR. LIPSHUTZ: So that's not in dispute, Judge.

THE COURT: Booker is -- Senator Booker is in dispute. What I'm trying to figure out is -- is this -- look, I am not going to be able to rule on this based on, you know, the letters. I think I'm going to probably need some more discussion. But if I understand the defendant's position correctly, it's that Booker's not relevant. You seem to suggest that in page 4, when you tell me that acting Prosecutor Laurino confirmed she never spoke to then-Mayor Booker about the case, was not aware of anybody in ECPO who did. She had no knowledge of whether Booker had any input on the determination to bring charges against Evans, and it wasn't signed out by -- it was signed out by Lieutenant Carrega.

If -- am I -- so am I correctly understanding, you're basically raising essentially "he has no relevant knowledge to offer" argument?

MR. LIPSHUTZ: Perhaps. But I'm also suggesting that before we have to depose the Senator, that we exhaust other means of obtaining the information that is being sought.

And one of the means that I offered was written questions in lieu of a deposition, and the other offer that I made was, hey, take the deposition of the prosecutor Laurino. Your Honor misquoted my letter. It was prosecutor Cucinello who tried the case --

THE COURT: Sorry. You're right.

MR. LIPSHUTZ: -- who was deposed.

But I said take the prosecutor's deposition and say, hey, what did the Senator do -- or what do Mayor Booker do with respect to this prosecution. Ask the prosecutor.

And so I suggested -- plaintiff says, well, she doesn't want to do it. That's okay.

I have -- I subpoenaed the prosecutor. So his dep is scheduled -- was scheduled for the 29th. Apparently, none of the three plaintiff's attorneys or two or three are available. So I'm going to have to reschedule that deposition.

And then I said, hey, if necessary, we'll revisit Booker after that.

So all I'm saying is -- as -- with regard to a high-ranking official, don't you -- you really have to make an attempt to get the information from other sources before it comes to a head before a court has to rule on, hey, the Senator has to be deposed.

THE COURT: You're saying it's an apex dep; it's a

Morgan doctrine issue?

MR. LIPSHUTZ: Yeah, exactly.

MS. BONJEAN: -- the defendant.

THE COURT: What? I'm sorry.

MS. BONJEAN: He's a defendant. That's -- we should distinguish him from a witness. He's a defendant --

(Simultaneous conversation)

THE COURT: Fair point.

Let me ask this, Ms. Bonjean, what about the idea of waiting and raising this issue after the other discovery has been concluded?

MS. BONJEAN: I mean, Judge, I'm happy to wait. But I don't think it's going to resolve the issue, and this is why.

THE COURT: -- may not. It may inform it. Yeah, I agree with you, it's probably -- it probably won't resolve it. But it may help inform the issue. No?

MS. BONJEAN: It could.

The problem is because there was no written discovery, in part, I think, you know -- if I were to propound interrogatories, as an example, I would have to -- I would have to propound them in such a way that they would be extremely oppressive because I have -- I am not --

THE COURT: Yeah, I am not -- I'll be honest, if it helps. If it helps.

I am not at all inclined to do the written interrogatory thing either for a couple of reasons. One, to the extent -- to the extent, frankly, that the defense is proposing that as an interim step, it probably ends up being more intrusive on Senator Booker's time than just a one-hour deposition.

Two, it may be the case that you're entitled to depose him, but to the extent that there are other witnesses who are directly involved who may be able to shed light through their own deposition testimony on this issue, it may help inform the parties' arguments as to whether plaintiff gets to depose Booker.

So I am not saying no. I'm simply --

(Simultaneous conversation)

MS. BONJEAN: Fine, Judge --

(Simultaneous conversation)

THE COURT: Sorry.

MS. BONJEAN: Yeah, no, I mean, I'm happy to wait. I don't -- I have no objection to waiting. You know, I did ask what I -- I did ask Mr. Lipshutz if, you know -- it's not even clear to me that Senator Booker has objected. So, you know, that's part of the inquiry is is he saying he doesn't want to sit? You know, that's -- that's the other thing. If he -- you know, I would think out of all, many senators, he'd probably -- sure. I'll sit down for a one-hour dep. No

problem. I don't -- I don't even have clarity that he is the one voicing the objection.

THE COURT: Yeah, that's a good -- I think that's a fair point --

(Simultaneous conversation)

THE COURT: Mr. Lipshutz is he -- is Senator Booker himself objecting to? I understand your office represents him because he's being sued in his former capacity as mayor of Newark. So is your office representing him? You're counsel of record, so I guess that there's my answer.

MR. LIPSHUTZ: Yes.

THE COURT: Okay. All right. So through counsel's -- of course, counsel's entitled to object.

MS. BONJEAN: Okay. Yeah --

(Simultaneous conversation)

MS. BONJEAN: -- and I am not -- yeah.

THE COURT: Let's do this. So the remaining depositions are what exactly?

MR. LIPSHUTZ: Again, Judge, I have subpoenaed Laurino, we had that scheduled for the 29th. I understand that that Ms. Bonjean and nobody in her office is available, so I'm going to ask for new dates for that.

There's the deposition of Garry McCarthy. There's the potential deposition of Senator Booker. And there's one other witness who I subpoenaed before the close of discovery,

whose name is Philander Hampton.

THE COURT: And I remember that name, yeah.

MR. LIPSHUTZ: Well, Philander is plaintiff's second cousin and is the one who confessed and upon whose testimony this criminal proceeding was essentially -- went forward.

THE COURT: Right.

MR. LIPSHUTZ: I attempted to serve Mr. Hampton at the best address that I could find. The process server has responded to me that he is evading service. I don't know if the plaintiff has a better address. I would like to schedule that, and I'm willing to resend out the process server. I just don't know if -- unless the plaintiff can produce him for a deposition.

That's about it from my -- from the City of Newark's side, Your Honor.

THE COURT: And the 30(b)(6), I assume.

MR. LIPSHUTZ: Oh, I apologize. I misspoke. And the 30(b)(6), yes.

THE COURT: All right. And let me ask plaintiff, Ms. Bonjean, do you have any, in addition to the four witnesses that we just covered with Mr. Lipshutz, do you have additional depositions that you understand are going forward?

MS. BONJEAN: No, Your Honor. We -- we objected to -- my understanding that discovery closed -- fact

discovery closed as of March 31st. I mean --

THE COURT: We're going to get to that next --

(Simultaneous conversation)

THE COURT: Yeah, no, I appreciate that. We're going to get to that next. What I'm trying to figure out is a time frame here for reraising the Senator Booker deposition issue.

Okay. All right.

So why don't we say within 14 days of the final deposition, joint letter from the parties concerning plaintiff's renewed request, if there is one -- I'm going to assume, at least, for the purposes of this that there will be, but plaintiff's renewed request to depose Senator Booker.

MS. BONJEAN: Well, Judge, can I just place -- I really do think, since Senator Booker is the defendant, it really should be incumbent on the City to raise an objection or a motion to preclude, really, or a protective order of some type. I don't know why the burden -- I mean, I think it really should -- they're the one that has to --

(Simultaneous conversation)

THE COURT: I have to confess -- if it helps, I have to confess, I wasn't thinking -- I wasn't thinking -- this may be on me -- I wasn't thinking as much as imposing a burden as the easiest for the parties to tee this up for me, and then to digest.

MS. BONJEAN: Okay.

THE COURT: So -- but I understand your point. So why don't we do this? Within 14 days -- except the problem is it's still a relevance determination, is it not? And it's plaintiff's burden to show relevance, is it not?

MS. BONJEAN: Yeah, but I -- but I think -- I mean, are all due respect, I mean, Judge McNulty laid out what the relevance of Booker's --

THE COURT: Did he? I might have --

(Simultaneous conversation)

THE COURT: Remind me. We've had so much go on in this. Where did he do that? I am not saying --

(Simultaneous conversation)

MS. BONJEAN: Well, when he denied -- well, when he denied Defendant Booker's motion to dismiss --

THE COURT: Okay. Hold on. Hold on.

I've got to find that. Sorry. I'm guessing that's been a while?

MS. BONJEAN: Yeah, it's been a while.

MR. LIPSHUTZ: Yes, Judge. It has been a while --

(Simultaneous conversation)

THE COURT: Okay. Hold on. We'll find it.

MR. LIPSHUTZ: -- if I could tee it up for you, Judge.

MS. BONJEAN: It's in his opinion.

MR. LIPSHUTZ: Order, opinion on motion to dismiss. My guess is Number 71, Your Honor.

THE COURT: Okay. Hold on.

Okay. So we're back in 2016. There it is.

Okay. Here it is.

Yeah. No. You know what? I have to say, Mr. Lipshutz, she has a fair point. I mean, he specifically did deny the motion is to dismiss as to certain defendants, including as to Monell and supervisory liability. I think -- I'm just going to skip to the ending.

No, he specifically said supervisory liability survives, Count 6 survives as against Mayor Booker and McCarthy.

So, okay.

MR. LIPSHUTZ: Mayor Booker has nothing to do with the supervisory responsibility.

THE COURT: I understand that. And I'm sure you'll make a compelling argument to Judge McNulty on summary judgment, but we are where we are at this point.

So all we're deciding right now is the order of the letter.

So here's what I'm going to do. So by -- within 14 days, defendant file a letter as to why plaintiff shouldn't proceed with the deposition of Booker.

And, look, let's be realistic, folks, these

arguments are hardly, like, going to be -- when you see each other's letters, it's not going to be for the first time. We've gone around and around on this issue. So, you know, it's not a surprise issue. And if you really believe you've been surprised, you can ask the Court to file another letter. It's more important to me to get the issue right.

Within 14 days as to why plaintiff shouldn't be allowed to depose Booker. And then plaintiff respond 14 days after that. Okay?

Okay.

All right. The last issue, it seems to be the close of discovery -- I am not even sure what the issue is here, given that as much as -- as much as I would like to get to the disclose of discovery, we have this issue. I am not sure what the issue is. Is it Philander Hampton?

MS. BONJEAN: Well, Judge, I think our position is that we -- the Court set a discovery deadline, which the Court, you know, had every right to do. We -- the only issues that we -- the only discovery that we're attempting to conduct at this point is discovery we have been trying to conduct since before the Court -- before the end of discovery. And the City has -- you know, and I said this in my letter, that unless someone has been served before the end of discovery, our position is that -- and let's -- they didn't move to extend discovery. So let me be clear about

that. So they don't have a witness served. And they want to serve a witness. I don't have any better addresses than what Mr. Lipshutz has for Mr. Hampton, I don't know why after years and years of discovery, Philander Hampton, who has been known about since literally day one, he was the prosecution's witness, he was -- attempted to be served two days before fact discovery was supposed to be closed.

But, you know, the City didn't move for discovery. Did not show good cause. You know, I do believe that they should be required to extend discovery, if they're going to start serving people after the close of discovery.

I am not moving to extend discovery. I am just simply trying to get discovery done that we've been trying to get done for a long time. So I just want the record to be clear. Plaintiff is not moving to extend fact discovery.

The defense is. And they want -- and the Court is inclined to grant it, then so be it. But as far as I'm concerned, fact discovery is closed. If it's going to be extended, then, I guess, you know, perhaps we will have other witnesses we may want to depose at some point. But it's not just that the defense can continue to, you know, do discovery, but we -- you know, I guess it just has to be fair for both sides, whatever the situation may be.

THE COURT: Okay.

Mr. Lipshutz, what is your position?

MR. LIPSHUTZ: What's my position? I issued subpoenas that were returnable before the close of discovery. The witness has been evading, according to the process server, and the other witness, that Prosecutor Laurino was tendered to the -- to Mr. Kassis, and they told me that they were checking into it, and that they accepted it on his behalf and that he'll be produced on the 29th of April.

THE COURT: Wait. I'm sorry. Maybe I'm confused.

As to Laurino, I thought at a minimum both sides -- well -- I'm sorry -- that both sides, at a minimum plaintiff wanted to depose Laurino as the acting prosecutor. No?

MR. LIPSHUTZ: No, Judge. I offered that in lieu of deposing Booker. And they said no. And I said, okay, then I will depose Laurino. So that was one of the things that I offered. I said --

THE COURT: Okay.

MR. LIPSHUTZ: -- if you want to -- instead of taking Booker, why don't you do the prosecutor? And Ms. Bonjean said she didn't really -- she wasn't interested. And I said, okay. So I'll subpoena him.

THE COURT: Well, has that position change -- let me ask Ms. Bonjean. Has that changed in light of what we're doing as to Senator Booker?

MS. BONJEAN: No, I mean, if Mr. Lipshutz wants to depose Laurino, that's fine. And I'm okay with it.

And because -- I guess, because -- I do see that as a problem with the discovery deadline, because apparently Mr. Bowens is willing to accept service for Mr. Laurino. For some reason they have some connection -- again, maybe it's the connection with the Essex County Prosecutor's Office. So I deemed that served by virtue of Mr. Bowens indicating that they would work it out. And presumably are going to represent Mr. Laurino or, you know -- I don't know. Again, I'm -- I haven't been provided these details, but this is what I'm sort of reading between the lines.

So I didn't have an objection to Mr. Lipshutz deposing Prosecutor Laurino, if he wants to do that, because Mr. Bowens said he would accept service essentially.

But right now, they don't have service on Philander Hampton. I have no reason to believe he's evading. I don't even think Mr. Lipshutz believes he evading, because he doesn't -- he's not even sure that he has the right address. So I don't think that's a fair representation that he's evading, but maybe -- maybe that there's an affidavit from the process server. I don't know.

But, again, you know, this is -- if they have -- they should move to extend discovery, because they don't have him under -- under subpoena.

THE COURT: Well -- okay. I got the issue. I do find that there's good cause to extend the discovery deadline

as to -- to allow for the deposition of Philander Hampton. The Court is familiar with the underlying allegations, including the prosecution of Mr. Evans, which forms so much of the basis of this lawsuit, as well as the role that Mr. Hampton allegedly played in the charges against him, ultimately -- Mr. Evans ultimately being dismissed.

The Court concludes that Mr. Hampton is a -- not only a relevant witness, but a significantly important witness to adjudicating the current count -- complaint counts that are still viable in this matter. Accordingly, the Court finds -- and the process server, counsel has offered that the process server has attempted to serve Mr. Hampton, but to date has been unsuccessful in attempting to do so. That easily meets the Rule 16 good cause standard for extending discovery, that despite the reasonable efforts of counsel to secure Mr. Hampton's deposition, they've been unable to do so to date. Accordingly, the Court will extend discovery for a reasonable period of time for that purpose.

The Court is going to require the parties, in light of the meet-and-confer with regard to the Rule 30(b)(6) -- it also may be the case, by the time Laurino, McCarthy, and the Rule 30(b)(6) deposition are completed, that Philander Hampton's deposition can be completed as well, not causing any additional time or delay in this case. At this point, we just don't know.

So I'm going to require the parties to meet and confer on a proposed amended scheduling order that will encompass the outstanding depositions -- that would be the Rule 30(b)(6) witness, Laurino, McCarthy, and Philander Hampton. We'll also still have extant the issue of Senator Booker, for which I've already giving a briefing schedule.

I'm going to require the parties by -- I'll give you a little bit of time to try and work out the Rule 30(b)(6) dep, so I'm going to say actually by May 20th to submit a proposed amended scheduling order with deadlines for any remaining fact discovery, specifically these depositions and the production of any of the remaining materials that I ordered today, as well as any expert deadlines.

All right? I have to adjourn. We've been going for an hour -- no.

MR. LIPSHUTZ: Hour 45, Judge.

THE COURT: Yeah, an hour and 45. I have an incoming phone call for another conference I have to deal with, so we're going to adjourn for today.

All right, everybody, but I think we've resolved all of the issues in the parties' letters. And I appreciate everybody's efforts today.

Thank you, Counsel. Have a good afternoon.

(Conclusion of proceedings)

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 65 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

S/ *Sara L. Kern* 25th of May, 2021

Signature of Approved Transcriber Date

Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080