# EXHIBIT A

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/13/14 Page 1 of 40 PageID: 405

Tisha N. Adams, Esq.
Law Offices of Tisha Adams, LLC
17 Academy Street, Suite 608
Newark, NJ 07102
(973) 645- 1145
Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| **LEE EVANS,** | Hon. Kevin McNulty, U.S.D.J. |
| **Plaintiff,** | Civil Action No. 14-120 (KM-MAH) |
| v. | AMENDED COMPLAINT |
| **NEWARK CITY, former MAYOR CORY A. BOOKER, in his official and Individual capacity, former NEWARK POLICE DIRECTOR GARRY McCARTHY, in his official and individual capacity, DETECTIVE RASHID SABUR, in his official and individual capacity, DETECTIVE KEITH SHEPPARD, in his official and individual capacity, SERGEANT DETECTIVE DARNEL HENRY, in his official and individual capacity, DETECTIVE JOSEPH HADLEY, in his official and individual capacity, OFFICER ANGEL RAMOS, in his official and individual capacity, NEWARK POLICE OFFICER JOHN DOE (1-10), in their official and Individual capacities, ESSEX COUNTY PROSECUTOR'S OFFICE, former acting ESSEX COUNTY PROSECUTOR:** | |

**ROBERT D. LAURINO, in his official and individual capacity, ASSISTANT PROSECUTOR PETER GUARINO, in his official and individual capacity, ASSISTANT PROSECUTOR CHERYL CUCINELLO, in her official and Individual capacity, DETECTIVE LIEUTENANT LOUIS CARREGA, in his official and individual capacity, DETECTIVE CHRISTOPHER SMITH, in his official and individual capacity, and AGENT JACK EUTSEY, in his official and individual capacity, DETECTIVE MICHEAL M. RECKTENWALD, in his official and individual capacity, the Estate of INVESTIGATOR EDWARD JONES, INVESTIGATOR PATRICK DEFRANCISCI, in his official and individual capacity, DETECTIVE SERGEANT WILLIAM TIETJEN, in his official and individual capacity, NEW JERSEY STATE TROOPER JOHN DOE (1-10), in their official and individual capacities,**

**Defendants**

Plaintiff Lee Evans, by way of Complaint against defendants, say:

## PARTIES

1. Plaintiff Lee Evans resides in Irvington, New Jersey.

2. Defendant Newark City is a municipality in the State of New Jersey with its main office located at 920 Broad Street, Newark, New Jersey, 07102.

3. Defendant former Mayor Corey Booker was the mayor of Newark

City, a municipality in the State of New Jersey, with its main office located at 920 Broad Street, Newark, New Jersey, 07102.

4. Defendant former Newark Police Director Garry McCarthy was director of the Newark Police Department, a municipal agency in Newark City, located at 31 Green Street, Newark, New Jersey, 07102.

5. Officer Joe Hadley, Detective Rashid Sabur, Detective Keith Sheppard, Sergeant Detective Darnel Henry, Detective Joseph Hadley, and Officer Angel Ramos are or were employees of the Newark Police Department, a municipal agency in Newark City, located at 31 Green Street, Newark, New Jersey, 07102.

6. Defendant Essex County Prosecutor's Office is a government agency located at Veterans Courthouse, 50 West Market Street, Newark, New Jersey, 07102, possessing the powers granted to it by statue.

7. Defendant Robert D. Laurino was the former acting Essex County Prosecutor of the County of Essex, a government entity in the State of New Jersey. The defendant Robert D. Laurino is and or was an employee of the Essex County Prosecutor's Office located at Veterans Courthouse, 50 West Market Street, Newark, New Jersey, 07102.

8. Defendants Assistant Prosecutor Peter Guarino and Cheryl Cucinello,

Detective Christopher Smith, Lieutenant Lou Carrega, Agent Jack Eutsey, Detective Michael M. Recktenwald, Investigator Edward Jones and Investigator Patrick Defrancisci are or were employees of the Defendant Essex County Prosecutor's Office, a government agency located at Veterans Courthouse, 50 West Market Street, Newark, New Jersey, 07102.

9. Detective Sergeant William Tietjen is or was an employee of the New Jersey Department of Law and Public Safety, New Jersey State Police Department which is a state agency located in West Trenton, New Jersey.

10. All defendants named are being sued in their individual and official capacities and were at one time or are presently employees of the municipal and or governmental agencies named in this action.

**<u>BACKGROUND</u>**

11. Newark Police Department began investigating the disappearance of Five individuals who went missing on or about August 20, 1978.

12. Plaintiff Lee Evans voluntarily contacted the Newark Police to provide information which potentially would have assisted the police with their investigation to determine the whereabouts of two of the individuals reported missing on or about August 20, 1978.

13. Instead of acting on the information provided by plaintiff, the Newark

Police questioned plaintiff with regard to any involvement the plaintiff may have had with the disappearance of the five individuals on or about August 20, 1978.

14. Plaintiff was subjected to two polygraph examinations, administered by Newark police.

15. Plaintiff passed both polygraph tests.

16. The investigation of the disappearance of the five individuals continued from 1978 to 2010 and involved numerous agents from the City of Newark, and other government agencies such as the County of Essex, Essex County Prosecutor's Office, Essex County Sheriff's Department, the State of New Jersey, and the New Jersey State Police.

17. On March 22, 2010, defendant Detective Louis Carrega (hereinafter Referred to as "defendant Carrega") submitted an affidavit in support of an application for an arrest warrant for the plaintiff.

18. Carrega's affidavit was devoid of physical evidence that would prove that plaintiff murdered five individuals by setting them on fire or by any other means.

19. Carrega's affidavit was devoid of any physical evidence proving that plaintiff was at the location where the five individuals were allegedly set afire.

20. Carrega's affidavit was devoid of any physical or forensic evidence

proving that the five individuals were present at the location allegedly set afire by plaintiff or that the five individuals actually perished in a fire.

21. Plaintiff, a productive member of society, and a lifelong resident of Essex County, New Jersey, was arrested on March 22, 2010, for five counts of first degree arson and five counts of first degree murder, pursuant to N.J.S. 2A:113-1 and 2A:113-2, whereby plaintiff was alleged to have killed or caused the death of five young men. Plaintiff was transported to and incarcerated in the Hudson County Correctional Center upon his arrest.

22. Prior to March 22, 2010, plaintiff had **never** been arrested.

23. Plaintiff was purposely, wrongfully, and maliciously targeted, arrested, and prosecuted by the State of New Jersey.

24. Plaintiff was wrongfully imprisoned for five months at the Hudson County Department of Corrections until approximately August 20, 2010.

25. On November 23, 2011, plaintiff was acquitted of murder in the suspected deaths of the five individuals who went missing on August, 20, 1978, before a criminal jury in Newark City, Essex County, New Jersey.

## FIRST COUNT
## (Abuse of Process)

26. Plaintiff repeats the allegations of the preceding paragraphs as if set forth at length herein.

27. Defendants Tietjen, Henry, and Hadley's arrest and detention of

plaintiff was neither warranted nor authorized by law.

28. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, and Laurino engaged in corruption by fabricating evidence and engaged in a conspiracy to convict plaintiff.

29. Defendants Tietjen, Henry, Hadley, Carrega, Laurino had an ulterior motive in initiating the legal process.

30. Defendants Booker, McCarthy, Henry, Hadley, Sabur, Sheppard, Carrega, and Laurino sought to obtain career advancement by means of political notoriety brought to Booker's Mayoral Campaign by arresting plaintiff three weeks before the mayoral election.

31. Defendants Tietjen, Henry, Hadley, Carrega, Laurino, Guarino, and Cucinello misused the legal procedure in a manner not contemplated by law and invoked the legal process to obtain career advancement by means of public notoriety.

32. Defendants Tietjen, Henry, Hadley, Carrega, Laurino, Guarino, and Cucinello made an improper, illegal, and perverted use of the legal process to obtain a political advantage for the Cory Booker administration and for their own purpose of career advancement in the Booker administration.

33. Defendants Tietjen, Laurino, Carrega, Henry and Hadley met on March 22, 2010 to discuss the investigation and arrest warrant for plaintiff.

34. Defendants Tietjen and Carrega interrogated the plaintiff in an attempt to coerce plaintiff to confess to the murders after the unlawful, perverted and illegal issuance of the arrest warrant.

35. Plaintiff was submitted to the grand jury on May 13, 2010, by means Assistant Essex County Prosecutor Peter Guarino. On this occasion, the grand jury returned without an indictment and the plaintiff was not released.

36. On June 11, 2010, the defendant State of New Jersey's case against plaintiff was submitted to the grand jury a second time by means of the defendant Assistant Essex County Prosecutor Peter Guarino, and Assistant Prosecutor Cheryl Cucinello had Essex County investigator read prior grand jury witness testimony to the present grand jury. A second time, the grand jury returned without an indictment and the plaintiff was neither released nor admitted to bail.

37. The defendant State of New Jersey's case against the plaintiff was submitted to the grand jury a third time, by means of the defendant Essex County Prosecutor's Office and Assistant Essex County Prosecutor Cheryl Cucinello, on July 9, 2010.

38. During a desparate attempt to indict the plaintiff for a third time, the defendants Assistant Prosecutor Peter Guarino and Assistant Prosecutor Cheryl Cucinello had defendant Newark Police Department Detective Rashid Sabur testify before the grand jury.

39. Defendant Newark Police Detective Sabur testified that he had reviewed the reports of other detectives that preceded him in the investigation and that plaintiff told police that he had dropped the individuals off at 11:00 at the corner of Clinton and Fabyan.

40. Defendant Sabur also testified that another witness saw the alleged missing individuals at 11:00 p.m. on the back of plaintiff's truck on the corner of Clinton and Fabyan.

41. Defendant Sabur then told the grand jury that the police had established the fact that the five individuals were with plaintiff "during their last time on this earth" and that plaintiff and the convicted felon were the last two individuals seen with the five people who were subsequently reported missing.

42. The defendant Assistant Prosecutor Cheryl Cucinello manipulated the system by having defendant Lieutenant Louis Carrega read "contradicting" portions of a transcript of the 2008 uncorroborated statements of a convicted felon to the grand jury after Newark Police Detective Rashid Sabur gave live witness testimony.

43. Defendant Lieutenant Louis Carrega read portions of the transcribed statement whereby the convicted felon stated that between 8:30 and 9:00 p.m. he and plaintiff took the five individuals to the third floor of a vacant house on Camden Street and plaintiff put the five individuals in a closet and nails the closet

shut with one nail, pours gasoline around the door of the closet and into the kitchen.

44. Although Defendant Detective Rashid Sabur testified earlier that it was reported that plaintiff was seen with the missing individuals at 11:00 p.m. on Clinton and Fabyan Streets, the last thing the grand jury heard was that plaintiff allegedly burned the five individuals in a fire on Camden Street between 8:30 and 9:00 p.m. The grand jury returned an indictment for the plaintiff on July 9, 2010.

45. Defendants Guarino and Cucinello failed to present to the grand jury information from a Newark Fire Department report, dated August 21, 1978, that demonstrated that 256 Camden Street was not a vacant building.

46. Defendants Guarino and Cucinello also failed to present to the grand jury the three witnesses and or the statements of the three individuals that participated in the rescue of three small children and one adult from a fire that occurred at 256 Camden Street on August 21, 1978 at approximately midnight whereby these individuals stated that no other individuals were in the building after the rescue.

47. The Newark Fire report verifying that 256 Camden Street was not a vacant building, the witness statements that no other individuals were in the building after the rescue, and the fact that there was no proven motive why plaintiff would murder these five individuals, no bodies recovered, no weapon found, no

blood, no DNA evidence or other forensic evidence, and no fingerprints of the plaintiff recovered at the alleged scene of the murder negates plaintiff's guilt. Thus, defendants Guarino and Cucinello abused the legal process and failed to present to the grand jury evidence in their possession that clearly negated plaintiff's guilt in violation of plaintiff's constitutional rights. This failure caused plaintiff harm with regard to his life and liberty. Plaintiff was detained for five months, his name was vilified in the community and his business was disrupted.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**SECOND COUNT**
**(Intentional Infliction of Emotional Distress/**
**42 U.S.C. §1983 Emotional Distress)**

48. Plaintiff repeats the allegations of the preceding paragraphs and the First Count in its entirety, as if set forth at length herein.

49. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, and Carrega engaged in corruption by fabricating evidence and engaged in a conspiracy to convict plaintiff.

50. On March 24, 2010 plaintiff was arrested for five counts of first

degree arson and five counts of first degree murder, pursuant to N.J.S. 2A:113-1 and 2A:113-2, whereby plaintiff was alleged to have killed or caused the death of five young men and incarcerated at Hudson County Correctional Center.

51. Plaintiff had **no** prior record.

52. Evidence was presented before a grand jury on May 13, 2010, and June 11, 2010, respectively and no indictment was returned.

53. Following the first two failed attempts to indict plaintiff on June 29, 2010, plaintiff's appointed counsel, submitted a Motion to Dismiss for failure to indict.

54. The criminal court did not dismiss the criminal matter against plaintiff.

55. Neither the court, nor defendants gave plaintiff an opportunity to have a bail hearing and or to be released on his own recognizance, considering plaintiff's ties to the community. Plaintiff was married, had his own business and owned his own home. Plaintiff had a good reputation and had been a resident of Essex County for many years. These were all factors which should have been considered in setting plaintiff's bail.

56. On July 9, 2010, an indictment was returned, following the prosecutor's manipulation of the system.

57. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega,

Laurino, Cucinello, Booker and McCarthy acted intentionally and recklessly in a deliberate disregard of a high degree of probability that emotional distress would follow their actions and cause plaintiff severe emotional distress.

58. Defendants former Mayor Cory A. Booker and former Newark Police Director Garry McCarthy held press conferences and appeared on local radio stations in the tri-state area and announced that the case was solved and the plaintiff had yet to be brought to trial or convicted.

59. Plaintiff was vilified by the defendants Booker, McCarthy, Eutsey, and Henry in the local newspaper, The Newark Star Ledger, and the world renowned, The New York Times.

60. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Cucinello, Booker and McCarthy's conduct was extreme and outrageous and has gone beyond all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

61. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Cucinello, Booker and McCarthy's actions are the proximate cause of plaintiff's severe emotional distress.

62. The emotional distress suffered by the plaintiff is so severe that no reasonable person could be expected to endure such distress.

63. The unlawful imprisonment and the vilification of the plaintiff in the

national media by the defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Cucinello, Booker and McCarthy was a proximate cause of the mental anguish and mental and emotional distress sustained by plaintiff as a result of the indignity to which plaintiff was subjected.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, costs of suit, and such other relief as the Court deems equitable and just.

## THIRD COUNT
## Violation of 4th Amendment
## (Malicious Prosecution Based Upon Prior Criminal Proceedings)

64. Plaintiff repeats the allegations of the preceding paragraphs and the First through Second Counts in their entirety, as if set forth at length herein.

65. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Cucinello, Booker and McCarthy engaged in corruption by fabricating evidence and engaged in a conspiracy to convict plaintiff.

66. Defendants Tietjen, Henry, Hadley, Carrega, and Laurino initiated the criminal action maliciously and in a willful and wanton disregard of plaintiff’s rights.

67. Defendants Tietjen, Henry, Hadly, Carrega, and Laurino met with

Gregory DeMattia, Anthony Ambrose and Murad Muhammed to discuss the investigation and the authorization of arrest warrant for plaintiff. After the meeting, Judge Vazquez issued a warrant for the arrest of plaintiff.

68. There was no probable cause for the arrest. Defendants Tietjen, Henry, Hadley, Carrega and Laurino had no reasonable basis to believe five individuals were murdered by plaintiff. There was no proven motive. There was no physical evidence proving plaintiff was at the location were the young men were allegedly set on fire. There were no fingerprints, blood, or forensic evidence found. There was no weapon found. Circumstances did not warrant an ordinary prudent person believing that plaintiff forced five young men in a closet, nailed it shut with one nail, and set the premises on fire. There was no physical evidence proving plaintiff murdered the five individuals. There were no bodies found. There was no evidence to demonstrate that plaintiff committed the suspected murders of the alleged victims or that a murder of five individuals had even occurred. The individuals had been described as "missing" by the Newark Police and the New Jersey State Police since their disappearance in 1978.

69. The malicious prosecution of plaintiff by the Defendants Tietjen, Henry, Hadley, Carrega, and Laurino resulted in injury and loss to the reputation and character of plaintiff.

70. The malicious prosecution of plaintiff by defendants Tietjen, Henry,

Hadley, Carrega, and Laurino resulted in plaintiff being unlawfully detained in the Hudson County Correctional Center from March 22, 2010 to August 20, 2010.

71. Defendants former Mayor Cory A. Booker and former Newark Police Director Garry McCarthy held press conferences and appeared on local radio stations in the tri-state area and announced that the case was solved and the plaintiff had yet to be brought to trial or convicted.

72. Plaintiff was vilified by the defendants Booker, McCarthy, Henry and Laurino in the local newspaper, The Newark Star Ledger.

73. Plaintiff was also vilified by the defendants Booker and McCarthy in the world renowned newspaper, The New York Times.

74. The plaintiff was acquitted of the alleged murders on November 23, 2011.

75. The malicious prosecution of plaintiff by defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, and Cucinello resulted in the plaintiff experiencing humiliation, physical and mental suffering, embarrassment, and nervous shock.

76. The malicious prosecution of plaintiff by defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Cucinello resulted in the plaintiff suffering impairment of his social and business standing and loss of earnings.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**<u>FOURTH COUNT</u>**
**NEW JERSEY CIVIL RIGHTS ACT**
**N.J.S.A. 10:62 et seq.**

77. Plaintiff repeats the allegations of the preceding paragraphs and the First through the Third Counts in their entirety, as if set forth at length herein.

78. The New Jersey Civil Rights Act states:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c).

79. Defendants the the New Jersey State Police, the Essex County Prosecutor's Office, Newark City, and the remaining defendants in their official and individual capacities are liable to plaintiff under N.J.S.A. 10:6-2(c), the New Jersey Civil Rights Act, because they deprived plaintiff of substantive due process, and privileges and immunities secured to him by the Constitution and laws of the State of New Jersey and the Constitution and laws of the United States. Moreover,

defendants interfered with plaintiff's exercise and enjoyment of those substantive rights, privileges and immunities by fabricating evidence, violating plaintiff's constitutional rights, including but not limited to plaintiff's right to due process and unlawfully restraining plaintiff's liberty.

80. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, and Cucinello initiated process against plaintiff and obtained an indictment by means of fraud, perjury and other corrupt means.

81. Defendant Carrega submitted an affidavit in support of an application for the arrest warrant for plaintiff that was void of physical evidence that proved plaintiff murdered the five individuals, void of physical evidence proving plaintiff was at the location where the individuals were allegedly set on fire and void of any physical or forensic evidence proving the individuals were present at the location of the fire, and void of any evidence that the individuals perished in a fire.

82. Defendant Sabur committed perjury when he testified to the grand jury that plaintiff told police that plaintiff had dropped the five individuals off at 11:00 at the corner of Clinton and Fabyan.

83. Defendant Sabur also committed perjury when he testified before the grand jury and stated that police had established the fact that the five individuals were with the plaintiff and the co-defendant "during their last time on this earth" and that plaintiff and the co-defendant were the last two individuals seen with the

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/13/14 Page 19 of 49 PageID: 421

five individuals who were reported missing. The police had no physical evidence or DNA evidence to prove that the individuals were with plaintiff during their last time on this earth. The police had no evidence that the individuals were deceased.

84. Assistant Prosecutor Cucinello manipulated the jury by having defendant Carrega read contradicting portions of a statement procured from the co-defendant, a convicted felon, whereby the convicted felon stated that between 8:30 and 9:00 p.m. he and the plaintiff took the five individuals to the third floor of a vacant house on Camden Street and plaintiff puts the five individuals in a closet and nailed the closet shut with one nail and poured gasoline around the door of the closet and into the kitchen.

85. Detective Sabur had previously testified before the grand jury that the plaintiff was seen with the missing individuals at 11:00 p.m. on Clinton and Fabyan Streets.

86. Defendant Cucinello failed to present exculpatory evidence negating plaintiff's guilt to the grand jury. There was a Newark Fire Department report and three witnesses, interviewed by Defendant Hadley, that reported that the building, 256 Camden Street, where the bodies of five missing persons were allegedly burned in a fire on August 21, 1978, was not vacant.

87. As a result, plaintiff sustained injuries and damages such as mental

anguish, post-traumatic stress, emotional distress, humiliation, deprivation of liberty, loss of reputation, loss of income, and loss of his good name as a result of being unlawfully incarcerated for five months, defamed and vilified as having murdered five people.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

## FIFTH COUNT

**42 U.S.C. §1983 Violations: Suppression of Material Exculpatory Evidence in Violation of Brady v. Maryland, Fabrication of Inculpatory Evidence, Malicious Prosecution, Deliberate Failure to Investigate Exculpatory Evidence and Witness Coercion**

88. Plaintiff repeats the allegations of the preceding paragraphs and the First through Fourth Counts in their entirety, as if set forth at length herein.

89. Title 42, Section 1983 of the United States Code, provides in pertinent part:

> Every person who, under color of any statue, ordinance, regulation, custom, or usage, of any State …subjects, or causes to be subjected, any citizen of the United States …to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 .S.C. §1983

90. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega,

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/15/14 Page 21 of 49 PageID: 423

Laurino, Guarino, and Cucinello violated plaintiff's right to obtain exculpatory evidence in a criminal proceeding as required by Brady v. Maryland, 373 U.S. 83 (1983).

91. Defendants Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, and Cucinello, in their official and individual capacities, violated plaintiff's right to due process as guaranteed by both the New Jersey Constitution and the United States Constitution.

92. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, and Cucinello, in their official and individual capacities, violated plaintiff's right to be free from false arrest as guaranteed by both the New Jersey Constitution and the United States Constitution.

93. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, and Cucinello, in their official and individual capacities violated plaintiff's right to be free from malicious prosecution as guaranteed by both the New Jersey Constitution and the United States Constitution.

94. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, and Cucinello, in their official and individual capacities, violated plaintiff's right to be free from the use of false or perjured testimony.

95. On November 12, 2008, defendants Officer Joe Hadley, Lieutenant

Lou Carrega and Detective Sergeant William Tietjen interviewed a convicted felon at the State Police Barracks in Newark, New Jersey.

96. The convicted felon told defendants Officer Joe Hadley, Lieutenant Lou Carrega and Detective Sergeant William Tietjen that he and the plaintiff took five individuals to the third floor of an vacant house on Camden Street between 8:00 p.m. – 9:00 p.m., plaintiff put the five individuals in a closet, nailed the closet shut with "**one big nail**" and poured gas all around the door and kitchen, struck a match, and set fire to house.

97. Defendants Officer Joe Hadley and Detective Sergeant William Tietjen knew of a Newark Fire Department report, dated August 21, 1978, which stated that 256 Camden was not vacant.

98. Defendant Officer Joe Hadley and Defendant Detective Michael Recktenwald interviewed witnesses and received testimonial evidence on December 5, 2008 that the building, 256 Camden Street, where the bodies of five missing persons were allegedly burned in a fire on August 21, 1978, was not vacant, as set forth in the uncorroborated statement of the 2008 convicted felon.

99. Both Defendants Officer Joe Hadley and Detective Sergeant William Tietjen knew that three individuals participated in the rescue of three small children and one adult from the three alarm fire that occurred at 256 Camden Street on August 21, 1978 at approximately midnight.

100. Defendants Officer Joe Hadley and Detective Sergeant William Tietjen knew a fire at 256 Camden Street at 8 p.m. would not be allowed to continue to burn until midnight.

101. Defendants Detective Michael M. Rectenwald, Officer Joe Hadley and Detective Sergeant William Tietjen were present at 256 Camden Street on March 20, 2009 and a search for human remains were conducted using a ground penetrating radar. No human remains were found.

102. Throughout the duration of this alleged murder investigation there are numerous reports of witnesses who state that they observed the missing individuals in various locations after the individuals were allegedly burned in a fire set by plaintiff between the hours of 8 p.m. and 9 p.m.

103. On November 22, 1988, defendants Essex County Investigators Edward Jones and Investigator Patrick DeFrancisci reported that on August 25, 1978, plaintiff allegedly told police that he picked up three of the individuals early in the day and then dropped them off at 9 p.m. Plaintiff then picked up one of the three individuals a second time at 11:30 p.m., drove the individual home to East Orange and then returned with this same individual to Newark and picked up two of the other missing individuals. Plaintiff then decided it was too late in the evening for the individuals to help him move boxes to

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/13/14 Page 24 of 49 PageID: 426

Irvington and plaintiff then dropped the three individuals off at Clinton Avenue and Fabyan Place.

104. Investigators Jones and DeFrancisci further report that on October 31, 1978, a thirteen year old witness stated that on August 20, 1978, the thirteen year old was with one of the missing individuals at 9:30 p.m. on Fabyan Place near Beverly Street when plaintiff passed by with one of the other missing individuals. Plaintiff then gave the thirteen year old a dollar to buy a milkshake for the plaintiff. The thirteen year old went to buy the milkshake and the alleged missing individual that was initially with him told the plaintiff he had to go home. The thirteen year old returned with the milkshake and the plaintiff had gone. The thirteen year old spoke with plaintiff's cousin and then went home to place the milkshake in the freezer. At 10:15 p.m. plaintiff's cousin went to the thirteen year old's home and told the thirteen year old that the plaintiff wanted his milkshake. The thirteen year old then took the milkshake to the plaintiff and plaintiff's cousin's garage.

105. Defendants Lieutenant Louis Carrega, Officer Joe Hadley, Detective Sergeant William Tietjen, and Agent Jack Eutsey interviewed a witness at Rahway State Prison on June 19, 2008. The witness stated that on August 20, 1978, he went to Atlantic City, on a bus ride, with his grandmother's church during the day and returned to Newark at about nine or ten in the evening and saw all the missing

individuals on Beverly Street. The witness then states that he hung out with them for a little while and then had to go catch the last bus at 12 a.m. – 12:30 a.m.

106. On February 16, 1999, defendant Detective Rashid Sabur and defendant Detective Keith Sheppard took the statement of a witness who is the brother of one of the individuals who disappeared. The witness stated that he, his brother and all the missing individuals played football at Irvington Park at 2 p.m. in the afternoon. Several other individuals were at the football game (including the individual who gave a witness statement while in the custody of Rahway State Prison on June 19, 2008). At 6 or 6:30 p.m. everyone left the park together. At 11 or 11:30 p.m., the witness left home to take his brother's girlfriend home. While the witness was backing the car out of the driveway, he saw another young man (the witness who gave a statement while in the custody of Rahway State Prison) standing on his porch talking to his sister. The witness then states that he saw the plaintiff standing in front of the parking lot of a bank that was on the corner of Leslie and Clinton Ave. Plaintiff's truck was parked in front of the bank's parking lot too and there were some boys on the back of the truck.

107. Every witness interviewed has had a different set of facts with regard to plaintiff's involvement with the alleged murder of the five missing individuals.

108. Numerous witnesses state that they saw plaintiff at different places

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/15/14 Page 26 of 49 PageID: 428

and during times that do not coincide with the alleged burning of the bodies of the individuals in a vacant home on Camden Street from 8:00 p.m. to 9:00 p.m. for the fire at 256 that was documented to have taken place at midnight where three children and one adult was rescued.

109. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci, McCarthy and Booker, in their official and individual capacities engaged in corruption by fabricating evidence and engaged in a conspiracy to convict the plaintiff.

110. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci, McCarthy and Booker, in their official and individual capacities, were State actors and their acts and omissions were done under color of law.

111. Defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci, McCarthy and Booker, in their official and individual capacities, acted willfully, deliberately, and intentionally with reckless and callous indifference to plaintiff's federally protected rights.

112. As a result, plaintiff sustained injuries and damages.

WHEREFORE, plaintiff demands judgment against the defendants for

nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**SIXTH COUNT**
**42 U.S.C. §1983 Supervisory Liability**

113. Plaintiff repeats the allegations of the preceding paragraphs and the First through Fifth Counts in their entirety, as if set forth at length herein.

114. Defendants the Essex County Prosecutor's Office, Newark City, former Mayor Cory A. Booker former Newark Police Director Garry McCarthy, in his official and individual capacity, Newark Police Officer John Doe 1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, were supervisory personnel, and or had the responsibility to oversee the screening, hiring, training, instruction, supervising, and disciplining legal and investigative personnel within the New Jersey State Police Department, Essex County Prosecutor's Office, and Newark Police Department, all of whom deprived plaintiff of his constitutional rights.

115. Defendants the Essex County Prosecutor's Office, Newark City, former Mayor Cory A. Booker, and former Newark Police Director Garry McCarthy, in his official and individual capacity, Newark Police Officer John Doe

1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, knew or should have known of their subordinates' Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci's misconduct, including but not limited to abuse of process, fabrication of evidence, false arrest, defamatory statements about plaintiff, malicious prosecution, and violation of plaintiff's constitutional rights in contravention of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and in violation of Title 42, Section 1983 of the United States Code.

116. Defendants the Essex County Prosecutor's Office, Newark City, Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci, McCarthy and Booker in their official and individual capacities engaged in corruption by fabricating evidence and engaged in a conspiracy to convict plaintiff.

117. Defendants the Essex County Prosecutor's Office, Newark City, former Mayor Cory A. Booker, former Newark Police Director Garry McCarthy, in his official and individual capacity, Newark Police Officer John Doe 1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/13/14 Page 29 of 40 PageID: 431

County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, acted willfully, deliberately, intentionally, recklessly, with gross negligence by failing to investigate such misconduct and or take preventative, remedial or corrective remedies to rectify the misconduct of said subordinates.

118. Defendant Essex County Prosecutor Robert D. Laurino failed to supervise defendant Assistant Prosecutors Peter Guarino and Cheryl Cucinello, Detective Louis Correga, Detective Christopher Smith, Agent Jack Eutsey, Detective Michael Recktenwald, Investigator Edward Jones, and Investigator Patrick DeFrancisci.

119. Defendant Laurino was aware of the investigation being conducted by defendants Correga, Smith, Eutsey, Recktenwald, Jones and DeFrancisci and that the defendants lacked probable cause to charge and arrest plaintiff for the murders of the five individuals.

120. Defendant Laurino knew of and acquiesced in the constitutional violation of plaintiff's constitutional rights by turning a blind eye and allowing Correga to obtain a warrant for plaintiff's arrest without establishing probable cause. The failure of Laurino to supervise defendant Correga amounts to deliberate indifference and recklessness.

121. Defendant Laurino knew of and acquiesced in the constitutional violation of plaintiff’s constitutional rights by turning a blind eye and allowing Guarino and Cucinello to maliciously prosecute the plaintiff when there was no probable to arrest plaintiff. The failure of Laurino to supervise defendants Guarino and Cucinello amounts to deliberate indifference and recklessness.

122. Laurino knew of and acquiesced in the constitutional violation of plaintiff’s constitutional rights by turning a blind eye when the trial judge admonished defendant Laurino during plaintiff’s trial and expressed her concerns about Laurino’s ability to be professional, ability to follow the court’s instructions and the rules of evidence and ordered to Laurino to advise his superiors of her concerns particularly if Laurino was going to perform the summation during plaintiff’s trial. The failure of Laurino to supervise defendant Laurino amounts to deliberate indifference and recklessness.

123. Defendant former Mayor Cory A. Booker, Defendant former Newark Police Director Garry McCarthy, and Newark police officer John Doe 1 aka Deputy Chief Kevin Schneider failed to supervise defendant Detective Joseph Hadley, defendant Detective Rashid Sabur, defendant Detective Keith Sheppard, defendant Sergeant Detective Darnel Henry and defendant Officer Angel Ramos. Defendant Booker, McCarthy, and Schneider’s failure to supervise resulted in the violation of plaintiff’s constitutional rights. Booker, McCarthy and Schneider

knew of and acquiesced in the constitutional violation of plaintiff's constitutional rights when they knew the subordinate defendants Hadley, Sabur, and Henry had obtained exculpatory evidence regarding the plaintiff on December 5, 2008 when the witnesses advised the officers that the building on Camden Street was not vacant and there were no one left in the building after they rescued the children and one adult. The failure of Booker, McCarthy and Schneider to supervise amounts to deliberate indifference and recklessness.

124. Defendant former Mayor Cory A. Booker, Defendant former Newark Police Director Garry McCarthy, and Newark police officer John Doe 1 aka Deputy Chief Kevin Schneider failed to supervise defendant Detective Joseph Hadley, defendant Detective Rashid Sabur, defendant Detective Keith Sheppard, defendant Sergeant Detective Darnel Henry and defendant Officer Angel Ramos. Defendant Booker, McCarthy, and Schneider's failure to supervise resulted in the violation of plaintiff's constitutional rights. Booker, McCarthy and Schneider knew of and acquiesced in the constitutional violation of plaintiff's constitutional rights when they knew the subordinate defendants Hadley, Sabur, and Henry lacked probable cause to charge and arrest the plaintiff for the murder of the five individuals. The failure of Booker, McCarthy and Schneider to supervise the subordinate defendants amount to deliberate indifference and recklessness.

125. State Trooper John Doe 1 aka DSFC Jones failed to supervise defendant Tietjen. DSFC Jones was aware of the investigation being conducted by defendant Tietjen lacked probable cause to charge and arrest plaintiff for the murders of the five individuals.

126. DSFC Jones knew of and acquiesced in the constitutional violation of plaintiff's constitutional rights by turning a blind eye and allowing Tietjen to obtain a warrant for plaintiff's arrest and personally arrest plaintiff without establishing probable cause. The failure of DSFC Jones to supervise defendant Tietjen amounts to deliberate indifference and recklessness.

127. DSFC Jones knew of and acquiesced in the constitutional violation of plaintiff's constitutional rights by turning a blind eye and allowing defendant Tietjen to maliciously prosecute the plaintiff when there was no probable to arrest plaintiff. The failure of DSFC Jones to supervise defendant Tietjen amounts to deliberate indifference and recklessness.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**<u>SEVENTH COUNT</u>**
**42 U.S.C. §1983 Monell Claim**
**Unconstitutional Official Policy, Practice and Failure to Supervise and Train**

128. Plaintiff repeats the allegations of the preceding paragraphs and the First through Sixth Counts in their entirety, as if set forth at length herein.

129. Defendants Newark City, former Mayor Cory A. Booker, former Newark Police Director Garry McCarthy, Newark Police Officer John Doe 1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, were supervisory personnel, and or had the responsibility to oversee the screening, hiring, training, instruction, supervising, and disciplining legal and investigative personnel within the New Jersey State Police Department, Essex County Prosecutor's Office, and Newark Police Department, all of whom deprived plaintiff of his constitutional rights.

130. Defendants Newark City, former Mayor Cory A. Booker, former Newark Police Director Garry McCarthy, Newark Police Officer John Doe 1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, knew or should have known of their subordinates' Tietjen,

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/13/14 Page 34 of 40 PageID: 436

Henry, Hadley, Sabur, Sheppard, Carrega, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci's misconduct, including but not limited to abuse of process, fabrication of evidence, false arrest, defamatory statements about plaintiff, malicious prosecution, and violation of plaintiff's constitutional rights in contravention of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and in violation of Title 42, Section 1983 of the United States Code.

131. Defendants Newark City, former Mayor Cory A. Booker, former Newark Police Director Garry McCarthy, Newark Police Officer John Doe 1 aka Deputy Chief Kevin Schneider, in his official and individual capacity, Essex County Prosecutor Robert D. Laurino, in his official and individual capacity, and New Jersey State Trooper John Doe 1 aka DSFC Jones, in his official and individual capacity, violated plaintiff's constitutional rights as evidenced by their policies, customs and prevalent practices, and their willful failure to properly train, supervise and discipline prosecuting attorneys and investigating personal at the Essex County Prosecutor's Office and officers at the New Jersey State Police Department and the Newark Police Department with respect to their constitutional duties and responsibilities regarding such violations.

132. On April 28, 2009, defendant Detective Michael M. Recktenwald

reported that while he, Detective Hadley, and Lieutenant Carrega were searching for Arson Squad files related to the fire on Camden Street, Lieutenant Carrega, contacted defendant Detective Angel Ramos and Detective Ramos stated that "he remembered the fire report and that he may have a copy of it at his residence and he would check and get back to Lt. Carrega."

133. The storage of fire reports from 1978 in the residence of a law enforcement officer is a violation of the policies and customs of any law enforcement agency and is exemplary of the failure to properly train law enforcement officers. The actions of Defendant Ramos demonstrate a willful failure by defendants former Newark Mayor Cory A. Booker, Newark Police Director Garry McCarthy, Newark Police Deputy Chief Kevin Schneider to train, supervise and discipline their agents.

134. Police officers are sworn to protect individuals and uphold the law. On July 9, 2010, defendant Detective Rashid Sabur testified before a grand jury that he reviewed the reports of other detectives that preceded him. Despite the plethora of contradicting witness statements and lack of forensic evidence, defendant Detective Sabur willingly and deliberately participated in the arrest, detention and prosecution of plaintiff.

135. Defendant Lieutenant Louis Carrega testified, before a grand jury on

July 9, 2010, that on November 13, 2008, he put a convicted felon who was being held in custody at the Essex County Jail on Doremus Avenue, in the back of his car and started driving to the State Police Barracks located in Newark. While driving, the felon directed defendant Carrega Camden Street to show him where the alleged fire and murders took place.

136. Defendant Lieutenant Louis Carrega, chauffeured a convicted felon, unaccompanied, around Newark. Defendant Carrega went to Camden Street at the felon's direction and when asked, defendant Carrega stopped the car and allegedly discussed the location of felon's house on Camden Street.

137. The actions taken by Defendant Carrega demonstrate a willful failure By defendants, former acting Essex County Prosecutor Robert D. Laurino to train, supervise and discipline their agents.

138. The policy and customs of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police were the moving force behind defendants Tietjen, Henry, Hadley, Sabur, Sheppard, Carrega, Laurino, Guarino, Cucinello, Recktenwald, Jones, and DeFrancisci's deprivation of plaintiff's constitutional rights.

139. The policy and custom of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police during a high profile case that receives media attention is to target a suspect and vilify that suspect in the

media to create the public perception that the political appointees at the head of the aforementioned governmental entities are swift to apprehend and prosecute criminals which result in the dramatic reduction of crime rates, particularly during an election year.

140. The policy and custom of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police during a high profile case that receives media attention is to target a suspect, vilify that suspect in the media, and fabricate and or "build" a case around the targeted suspect to create the public perception that the political appointees at the head of the aforementioned governmental entities are swift to apprehend and prosecute criminals which result in the dramatic reduction of crime rates, particularly during an election year.

141. The policy and custom of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police to not require its officers, prosecutors and investigators to establish probable cause prior to arresting and prosecuting an individual has resulted in a plethora of civil rights violations against the residents of Essex County and triggering investigations by the United States Department of Justice, particularly with regard to the Newark Police Department.

142. The official policies of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police, as demonstrated in plaintiff's criminal case, are so obvious as to rise to the level of deliberate indifference to plaintiff's constitutional rights.

143. The official policies of the Newark Police Department, the Essex County Prosecutor's Office, and the New Jersey State Police caused plaintiff to sustained injuries and damages such as mental anguish, post-traumatic stress, emotional distress, humiliation, deprivation of liberty, loss of reputation, loss of income, and loss of his good name.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**EIGTH COUNT**
**42 U.S.C. §1983 Conspiracy**

144. During the months of May 2008 and June 2008, defendant Carrega met with Defendants Tietjen, Eutsey, Sabur, Hadley, Sheppard , Recktenwald, Henry, Ramos, Jones and DeFrancisci and, the defendants agreed and or, the defendants came to understanding between them that plaintiff was the target suspect and only suspect of the investigation with regard to the youth that went missing in 1978 and the plan was to arrest and convict the plaintiff with the specific goal to deprive plaintiff of his liberty.

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/15/14 Page 39 of 40 PageID: 441

145. From May 2008 through November 23, 2011, defendants Booker, McCarthy, Laurino, Guarino, Cucinello, Carrega, Tietjen, Eutsey, Sabur, Hadley, Sheppard , Recktenwald, Henry, Ramos, Jones and DeFrancisci had a meeting of the minds and reached an understanding that in order to achieve the objective of arresting and convicting the plaintiff for the alleged murders of the five individuals, all alleged prior witnesses must be re-interviewed with regard to plaintiff's alleged involvement with regard to the five individuals disappearance.

146. From May 2008 through November 23, 2011, defendants Booker, McCarthy, Laurino, Guarino, Cucinello, Carrega, Tietjen, Sabur, Hadley and Henry had a meeting of the minds and reached an understanding that that in order to achieve the objective of arresting and convicting the plaintiff for the alleged murders of the five individuals, the defendants had to abuse the process, unlawfully arrest plaintiff without establishing probable cause and maliciously prosecute the plaintiff which would result in worldwide notoriety and professional advancement because the public would believing that defendants were tough on crime. By virtue of defendants actions throughout the investigation and prosecution of plaintiff, defendants conspired to deprive plaintiff of his constitutional rights.

147. On March 22, 2010, defendant Laurino met with defendant Tietjen,

Case 2:14-cv-00120-KM-MAH Document 33-1 Filed 11/15/14 Page 40 of 40 PageID: 442

Gregory DeMattia, Anthony Ambrose, defendant Henry, defendant Hadley, Maurad Muhammad, and defendant Carrega and agreed to initiate process against the plaintiff, participate in the issuance of the arrest warrant and the unlawful arrest and incarceration of plaintiff, thereby deprive plaintiff of his constitutional rights under color of state law.

WHEREFORE, plaintiff demands judgment against the defendants for nominal, compensatory and punitive damages, interest, counsel fees, costs of suit, and such other relief as the Court deems equitable and just.

**LAW OFFICES OF TISHA ADAMS, LLC**
Attorney for Plaintiff

By: **/s/ TISHA N. ADAMS, ESQ.**

Dated: November 14, 2014