UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

LEE EVANS,

          Plaintiff,

       v.

CITY OF NEWARK, et al.,

         Defendants.

HON. KEVIN MCNULTY, U.S.D.J.
HON. MICHAEL A. HAMMER, U.S.M.J.

Civil Action No. 2:14-cv-00120

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

MATTHEW PLATKIN
ACTING ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
(609) 376-2964
*Attorney for Defendant William Tietjen*

MICHAEL VOMACKA
Deputy Attorney General
  On the Brief

VICTOR DIFRANCESCO, JR.
Deputy Attorney General
  On the Brief

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT..............................................1

PROCEDURAL HISTORY.................................................4

STATEMENT OF UNDISPUTED FACTS......................................5

STANDARD OF REVIEW................................................5

ARGUMENT

    POINT I

        DEFENDANT TIETJEN IS ENTITLED TO SUMMARY
        JUDGMENT ON PLAINTIFF'S CLAIMS BECAUSE EVANS'
        ARREST WAS SUPPORTED BY PROBABLE CAUSE...............6

        A.    The Court should find that probable cause
              existed for Plaintiff's arrest and
              prosecution....................................7

        B.    The Court should also grant summary
              judgment to Defendant Tietjen because an
              affirmative finding of probable cause was
              made by a Superior Court Judge.................11

        C.    Plaintiff has not adduced evidence
              showing Tietjen knowingly or
              deliberately made false statements, or
              that Hampton's confession was
              involuntary....................................13

    POINT II

        DEFENDANT TIETJEN IS ENTITLED TO SUMMARY
        JUDGMENT BECAUSE PLAINTIFF HAS NOT ADDUCED
        EVIDENCE THAT TIETJEN WAS PERSONALLY INVOLVED
        IN COERCING A CONFESSION FROM HAMPTON................18

i

POINT III

    DEFENDANT TIETJEN IS ENTITLED TO QUALIFIED
IMMUNITY BECAUSE NO LAW CLEARLY ESTABLISHES
THAT HIS CONDUCT VIOLATED ANY OF PLAINTIFF'S
CONSTITUTIONAL RIGHTS................................19

POINT IV

    DEFENDANT TIETJEN IS ENTITLED TO SUMMARY
JUDGMENT ON PLAINTIFF'S COMMON LAW MALICIOUS
PROSECUTION CLAIM BECAUSE HE IS IMMUNE..............26

    A.   Defendant Tietjen is immune to common law
        tort claims because he acted in objective
        good faith.....................................26

    B.   Tietjen is immune to common law tort
        claims because he acted in subjective
        good faith.....................................28

POINT V

    PLAINTIFF HAS ALSO FAILED TO ESTABLISH A PRIMA
FACIE CASE OF MALICIOUS PROSECUTION.................29

    A.   Plaintiff's malicious prosecution claim
        fails because he has failed to establish
        prima facie evidence that Tietjen acted
        maliciously....................................29

    B.   Plaintiff's malicious prosecution claim
        under the NJCRA also fails as a matter of
        law............................................30

POINT VI

    EVANS' MALICIOUS PROSECUTION CLAIMS ARE BARRED
BY HECK V. HUMPHREY BECAUSE IT WOULD
NECESSARILY IMPUGN HAMPTON'S CONVICTION.............32

POINT VII

    DEFENDANT TIETJEN IS ENTITLED TO SUMMARY
JUDGMENT ON PLAINTIFF'S CLAIMS FOR A
CONSPIRACY UNDER 42 U.S.C. § 1983 ..................35

CONCLUSION....................................................37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Anderson v. Creighton</u>,
   483 U.S. 635 (1987) .........................................21

<u>Anderson v. Liberty Lobby, Inc.</u>,
   477 U.S. 242 (1986) .......................................5, 6

<u>Ashcroft v. al-Kidd</u>,
   563 U.S. 731 (2011) ......................................20, 23

<u>Baker v. Wittevrongel</u>,
   363 F. App'x 146 (3d Cir. 2010) ............................7

<u>Baraka v. McGreevey</u>,
   481 F.3d 187 (3d Cir. 2007) ...............................18

<u>Batiz v. Brown</u>,
   676 F. App'x 138 (3d Cir. 2017) ............................7

<u>Beets v. Cnty. of Los Angeles</u>,
   669 F.3d 1038 (9th Cir. 2012) .....................32, 33, 34

<u>Bland v. City of Newark</u>,
   900 F.3d 77 (3d Cir. 2018) ................................24

<u>Bletz v. Corrie</u>,
   974 F.3d 306 (3d Cir. 2020) ................................6

<u>Brosseau v. Haugen</u>,
   543 U.S. 194 (2004) .......................................22

<u>Brown v. State</u>,
   230 N.J. 84 (N.J. 2017) ...................................20

<u>Capogrosso v. Supreme Court of N.J.</u>,
   588 F.3d 180, 184-85 (3d Cir. 2009) .......................36

<u>Canico v. Hurtado</u>,
   144 N.J. 361 (N.J. 1996) ................................26, 27

<u>Coles v. Carlini</u>,
   162 F. Supp. 3d 380 (D.N.J. 2015) .........................31

Covington v. Twp. of Hillside,
    No. 2:20-CV-07461, 2021 WL 4272880 (D.N.J. Sept. 20,
    2021) ....................................................18

Craig v. Singletary,
    127 F.3d 1030 (11th Cir. 1997) .........................10

Curley v. Klem,
    499 F.3d 199 (3d Cir. 2007) ...........................21

Didiano v. Balicki,
    No. 10-4483, 2011 U.S. Dist. LEXIS 41785, 2011 WL
    1466131 (D.N.J. Apr. 18, 2011) .......................18

DiStefano v. Macy's Retails Holding, Inc.,
    616 F. App'x 478 (3d. Cir. 2015) .....................10

District Court of Columbia v. Wesby,
    138 S. Ct. 577 (2018) .................................8, 22

Dunlea v. Twp. of Belleville,
    349 N.J. Super. 506 (N.J. App. Div. 2002) ...........28, 29

Eberhardinger v. City of York,
    782 F. App'x 180 (3d Cir. 2019) ......................34

Falat v. Cty. of Hunterdon,
    2018 WL 3554139 (App. Div. July 25, 2018) ...........30

Fielder v. Stonack,
    141 N.J. 101 (1995) ..................................27, 28

Frazier v. Cupp,
    394 U.S. 731 (1969) ..................................14

Goodwin v. Conway,
    836 F.3d 321 (3d Cir. 2016) ..........................7, 12, 13

Gormley v. Wood-El,
    218 N.J. 72 (2014) ...................................27

Halsey v. Pfeiffer,
    750 F.3d 273 (3d Cir. 2014) ..........................14, 25

Hampton v. Hanrahan,
    600 F.2d 600, 627-28 (7th Cir. 1979) ................36

Hanrahan v. Hampton,
  446 U.S. 754 (1980) ........................................36

Hayward v. Cleveland Clinic Found.,
  759 F.3d 601 (6th Cir. 2014) ..............................34

Heck v. Humphrey,
  512 U.S. 477 (1994) .......................3, 32, 33, 34, 35

Hunter v. Bryant,
  502 U.S. 224 (1991) .........................................8

Illinois v. Gates,
  462 U.S. 213 (1983) .........................................8

Jennings v. Shuman,
  567 F.2d 1213 (3d Cir. 1977) ...............................31

Johnson v. Knorr,
  477 F.3d 75 (3d Cir. 2007) .................................29

Jutrowski v. Twp. of Riverdale,
  904 F.3d 280 (3d Cir. 2018) ............................18, 36

Leang v. Jersey City Bd. of Educ.,
  198 N.J. 557 (N.J. 2009) ...................................26

LoBiondo v. Schwartz,
  199 N.J. 62 (2009) .........................................30

Malley v. Briggs,
  475 U.S. 335 (1986) ........................................12

Mammaro v. N.J. Div. of Child Protection & Permanency,
  814 F.3d 164 (3d Cir. 2016) ................................23

Marino v. Industrial Crating Co.,
  358 F.3d 241 (3d Cir. 2004) .................................6

McDonough v. Smith,
  139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019) ..................33

McKinnon v. Patterson,
  568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S.
  1087 (1978) ............................................18, 19

Merkle v. Upper Dublin Sch. Dist.,
  211 F.3d 782 (3d Cir. 2000) .................................8

Messerschmidt v. Millender,
    565 U.S. 535, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) .........12

Miller v. Fenton,
    796 F.2d 598 (3d Cir. 1986) ................................14

Mitchell v. Forsyth,
    472 U.S. 511 (1985) ........................................20

Morillo v. Torres,
    117 A.3d 1206, 222 N.J. 104 (N.J. 2015) ................20, 21

Mullenix v. Luna,
    577 U.S. 7 (2015) ......................................19, 23

N.E. for J.V. v. State Dep't of Child. & Fams., Div.
    of Youth & Fam. Servs.,
    449 N.J. Super. 379 (App. Div. 2017) ..................27, 28

Nicini v. Morra,
    212 F.3d 798 (3d Cir. 2000) ...............................27

Nieves v. Bartlett,
    139 S. Ct. 1715 (2019) .....................................7

Orsatti v. New Jersey State Police,
    71 F.3d 480 (3d Cir. 1995) ..............................8, 21

Pearson v. Callahan,
    555 U.S. 223 (2009) ....................................21, 22

Plumhoff v. Rickard,
    572 U.S. 765 (2014) .......................................23

Radiation Data, Inc. v. N.J. Dep't. of Envtl. Prot.,
    607 A.2d 988, 456 N.J. Super. 550 (N.J. App. Div.
    2018) .....................................................20

Ramos v. Flowers,
    56 A.3d 869, 429 N.J. Super. 13 (App. Div. 2012) ...........19

Roberson v. Borough of Glassboro,
    570 F. Supp. 3d 221 (D.N.J. 2021) ..........................6

Santini v. Fuentes,
    795 F.3d 410 (3d Cir. 2015) ................................5

Saucier v. Katz,
    533 U.S. 194 (2001) ....................................20, 22

Shaffer v. City of Pittsburgh,
  650 F. App'x 111 (3d Cir. 2016) ..............................7

States v. Patterson,
  150 F.3d 382 (4th. Cir. 1998) ...............................10

Stoddard-Nunez v. City of Hayward,
  No. 3:13-CV-4490 KAW, 2013 WL 6776189 (N.D. Cal.
  Dec. 23, 2013) ..............................................33

Thompson v. Clark,
  142 S. Ct. 1332 (2022) ......................................32

Trafton v. City of Woodbury,
  799 F. Supp. 2d 417 (D.N.J. 2011) ...........................20

Tumpson v. Farina,
  218 N.J. 450 (2014) .........................................31

United States v. Caesar,
  2 F.4th 160 (3d Cir. 2021) ..................................12

United States v. Conley,
  4 F.3d 1200 (3d Cir. 1993) ..................................11

United States v. Darland,
  626 F.2d 1235 (5th Cir. 1980) ...............................10

United States v. Jacobs,
  431 F.3d 99 (3d Cir. 2005) ..................................14

United States v. Leon,
  468 U.S. 897 (1984) .....................................11, 13

United States v. Ludwikowski,
  944 F.3d 123 (3d Cir. 2019) .................................14

United States v. Miller,
  No. 07-663, 2009 U.S. Dist. LEXIS 15092 (E.D. Pa.
  2009) .......................................................10

United States v. Nesbitt,
  57 F. App'x 40 (3d Cir. 2002) ...............................10

United States v. Rutledge,
  900 F.2d 1127 (7th Cir.1990) ................................14

Vega v. Tekoh,
  142 S. Ct. 2095 (2022) ......................................32

White v. Pauley,
   137 S.Ct. 548 (2017) ....................................19, 23

Williams v. City of York, Pennsylvania,
   967 F.3d 252 (3d Cir. 2020) ...............................18

Wilson v. Layne,
   526 U.S. 603 (1999) ......................................24

Wilson v. Russo,
   212 F.3d 781 (3d Cir. 2000) ...............................12

Young v. United Parcel Serv., Inc.,
   575 U.S. 206 (2015) .......................................5

Zaloga v. Borough of Moosic,
   841 F.3d 170 (3d Cir. 2016) ...............................20

**Statutes**

42 U.S.C. § 1983.........................2, 3, 7, 19, 29, 31, 35

N.J.S.A. 59:3-14...........................................28

N.J.S.A. 59:3-3....................................26, 27, 28

**Other Authorities**

Civ. R. 56.1...............................................5

Fed. R. Civ. P. 56(a)......................................5

## PRELIMINARY STATEMENT

On August 20, 1978, five teenage boys went missing in Newark. Newark police identified two potential suspects, Philander Hampton and Plaintiff Lee Evans, but no charges were brought at that time.

As years passed, the Newark Police cold case unit took steps to review the file and re-investigate old leads.  In May 2008, Lt. Carrega of the Essex County Prosecutor's Office (ECPO) contacted the New Jersey State Police's (NJSP) Missing Persons Unit for assistance in re-investigating the case.  NJSP assigned Detective William Tietjen.  Tietjen assisted the Newark police and Essex County Prosecutor's office in several ways.  He checked whether the boys' personal information was in use, offered to assist with interviews, and contacted surviving family members to collect DNA.

In November 2008, there was a breakthrough in the investigation.  Philander Hampton had been arrested on a traffic warrant, and with that, Carrega arranged for Hampton to be interviewed.  Police records indicate the video equipment was not working at the Essex County Prosecutor's Office, and so arrangements were made to conduct the interview at NJSP's Newark Station.  At the station, Hampton provided a grisly statement that he had assisted Evans with picking up and killing the boys and explained how Evans had put the boys into a building and burned it down.  Tietjen asked a NJSP detective to search microfilm databases, and they located articles from the Star Ledger

discussing a fire in Newark, on the street Hampton identified, that occurred at 12:54am on August 21, 1978, aligning with the boys' disappearance on August 20.

On March 22, 2010, arrest warrants were obtained for Lee Evans and Philander Hampton.  Philander Hampton pled guilty to the murders in August 2011, and was sentenced to ten years in prison. Plaintiff Evans went to trial and, on November 23, 2011, was acquitted.

Following Hampton's release from jail, Hampton made several statements which he later stated were lies.  Hampton now says his confession to detectives implicating Evans was a lie.  He says he lied at his plea hearing, too, when he provided sworn testimony that implicated Evans.  And, Hampton says he lied when he testified under oath against Evans at Evans' trial.  Hampton attributes these lies to the influence of officers involved in the investigation.

Now, Evans has sued based on Hampton's alleged lies.  Evans seeks to hold the defendants, including Tietjen, liable based on Hampton's statements under three theories: (1) malicious prosecution under New Jersey common law; (2) malicious prosecution under the New Jersey Civil Right Act; and (3) conspiracy under 42 U.S.C. § 1983.  Each of these claims fails as a matter of law.

First, Plaintiff's malicious prosecution claims fail because Evans's arrest was supported by probable cause.  All the information developed throughout the investigation led a court to

find probable cause and issue an arrest warrant for Evans.  This court should reach the same conclusion based on the record and find that probable cause bars Plaintiff's claims.

Second, Plaintiff has not produced any evidence that Defendant Tietjen was personally involved in the alleged effort to coerce a statement from Hampton. Therefore, on this additional ground, Tietjen is entitled to summary judgment.

Third, Defendant Tietjen is entitled to qualified immunity. No law exists that clearly establishes that the evidence did not create probable cause.  Accordingly, Tietjen is entitled to qualified immunity because it was not clearly established that his conduct violated any of Plaintiff's constitutional rights.

Fourth, Defendant Tietjen is also entitled to summary judgment as to all of Plaintiff's state common law claims. Tietjen is immune because he acted in good faith, and Plaintiff has failed to make a prima facie showing sufficient to support his claims.

Fifth, Plaintiff's malicious prosecution and conspiracy claims fail because other elements on the merits.  Plaintiff has not adduced evidence sufficient to support these claims because Hampton provided only vague allegations pertaining to the Defendants' conduct, and none of them rise to the level of a conspiracy under 42 U.S.C. § 1983.

Finally, the *Heck* doctrine bars Evans' claims because his theory of the case would directly undermine Hampton's conviction.

For these reasons, the Court should grant summary judgment to Defendant Tietjen and dismiss all claims against him with prejudice.

### PROCEDURAL HISTORY

Plaintiff filed an initial complaint dated November 21, 2013 in the Superior Court of New Jersey, Essex County. See Complaint, ECF No. 1-1. On January 9, 2014, the matter was removed by Newark Co-Defendants to the New Jersey District Court, Newark Vicinage. Notice of Removal, ECF No. 1.

On November 15, 2015, Plaintiff submitted an Amended Complaint. Amended Complaint, ECF No. 33. Following opposition to Plaintiff's request to file the Amended Complaint, the court permitted portions of the complaint to be filed on May 10, 2016. Order, ECF No. 72. In its order, the court dismissed several of Plaintiff's claims, permitting only five counts to proceed based on theories of malicious prosecution. See Opinion, ECF No. 71, at p. 34. As to Defendant Tietjen, only three counts remained:

> For ease of reference, **the claims that remain, solely to the extent they state theories of malicious prosecution**, are:
>
> • **Counts 3, 4, and 5 (common law, NJCRA, and § 1983 malicious prosecution), and Count 8 (1983 conspiracy) against Defendants Henry, Hadley, Carrega, and Tietjen;**
>
> • Count 6 (supervisory liability under § 1983), against Defendants Booker and McCarthy;

4

        • Count 7 (*Monell* liability under § 1983),
        against the City of Newark.

Order, ECF No. 72, at 2 (emphasis added).

      Following an extended discovery period and changes in counsel, the parties concluded fact discovery and dispositive motions were permitted. Now, Defendant Tietjen respectfully asks this Court to grant him summary judgment in his favor on all of Plaintiff's remaining claims.

## STATEMENT OF UNDISPUTED FACTS

      Pursuant to L. Civ. R. 56.1, Defendants have filed a separate Statement of Material Facts not in dispute ("SOMF") which will be referenced herein.

## STANDARD OF REVIEW

      Summary judgment is appropriate where the Court is satisfied that the materials in the record shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Young v. United Parcel Serv., Inc., 575 U.S. 206, 231 (2015). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. See Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Ibid.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  See Bletz v. Corrie, 974 F.3d 306, 308 (3d Cir. 2020).  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Ibid.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57; Roberson v. Borough of Glassboro, 570 F. Supp. 3d 221, 226 (D.N.J. 2021).

**ARGUMENT**

**POINT I**

**DEFENDANT TIETJEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS BECAUSE EVANS' ARREST WAS SUPPORTED BY PROBABLE CAUSE.**

Defendant Tietjen is entitled to summary judgment on all of Plaintiff's claims because there was probable cause supporting Plaintiff's arrest.

6

A finding of probable cause is a complete defense to claims under the Fourth Amendment, including claims based on malicious prosecution.  See Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016); Nieves v. Bartlett, 139 S. Ct. 1715, 1722-23 (2019). Probable cause will also defeat § 1983 conspiracy claims based upon false arrest or malicious prosecution.  See Batiz v. Brown, 676 F. App'x 138, 139 (3d Cir. 2017) (affirming dismissal of claims including § 1983 conspiracy claim because defendant had probable cause); Shaffer v. City of Pittsburgh, 650 F. App'x 111, 112 (3d Cir. 2016) (dismissing counts including 42 U.S.C. § 1983 conspiracy claim because probable cause did not exist and "probable cause is an element of all six counts"); Baker v. Wittevrongel, 363 F. App'x 146, 150 (3d Cir. 2010) (plaintiff's § 1983 malicious prosecution and conspiracy claims required that he demonstrate criminal proceedings were initiated against him without probable cause).

Thus, probable cause will defeat each remaining claim against Defendant Tietjen, because Count 3, Count 4, and Count 5 are premised on malicious prosecution.  See Order, ECF No. 72, at 2 (permitting plaintiff's claims to proceed "solely to the extent they state theories of malicious prosecution").

**A.   The Court should find that probable cause existed for Plaintiff's arrest and prosecution.**

Probable cause exists if "'the facts and circumstances within [the defendant's] knowledge and of which [he] had reasonably

trustworthy information were sufficient to warrant a prudent man in believing' that the plaintiff had violated the law." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). "Probable cause to arrest requires more than mere suspicion; however it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." District Court of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (quoting Illinois v. Gates, 462 U.S. 213, 244, n.13 (1983)). The inquiry requires viewing the totality of the circumstances available to arresting officers, rather than viewing each fact in isolation. Wesby, at 588.

Here, the evidence adduced in the criminal investigation supported finding probable cause.

As outlined in Carrega's affidavit in support of the arrest warrants, on or about August 20, 1978 Newark Police were notified by members of the families of Randy Johnson, Michael McDowell, Melvin Pittman, Ernest Taylor and Alvin Turner, that these five boys, all between the ages of 16 and 17 years old, had not returned home and were missing.

The investigation revealed that each of the five boys had last been seen with Lee Evans, a local contractor. When interviewed by police, Evans stated that he commonly picked up the five boys sometimes to help him with construction work. Evans stated to police that on the day they disappeared, he had picked up Melvin Pittman, Michael McDowell and Randy Johnson and later dropped them off along Clinton Avenue at approximately 8:00 PM. He further stated that at approximately 10:30 PM, he picked up Michael McDowell, Alvin Turner and Ernest Taylor to help him move boxes but again dropped them off in the vicinity of Clinton Avenue and Fabyan Place in Newark.

On or about August 21, 1978, the building located at 256 Camden Street in Newark was involved in a large fire. Newark fire investigators reported that it was their opinion that an incendiary was used to start the fire and that two black males had been observed by neighbors to have fled the building immediately before the fire began.

On November 13, 2008, Philander Hampton was interviewed by Carrega, Hadley, and Tietjen. Hampton stated to officers that he resided on the third floor of 256 Camden Street and that he moved out on Saturday, August 19, 1978. He further stated that he participated in the murder of the five missing boys and that he was assisting his cousin Lee Evans, who he claimed broke into his home and stole marijuana from him. Hampton stated that the five

9

boys were then put in a closet, the closet was nailed shut and the room was doused with gasoline. Lee Evans lit the house on fire. Hampton further stated that he and Lee Evans ran out from the back of the house. (SOMF 14)

Even without all this other supporting evidence, Hampton's confession alone provided probable cause to arrest and prosecute Evans because there was corroborating evidence. Several circuits have reasoned that the uncorroborated testimony of a co-conspirator or accomplice is enough to establish guilt beyond a reasonable doubt, and therefore is certainly enough to establish probable cause. See States v. Patterson, 150 F.3d 382 at 385-86 (4th. Cir. 1998); Craig v. Singletary, 127 F.3d 1030, 1044 (11th Cir. 1997); United States v. Darland, 626 F.2d 1235, 1238 (5th Cir. 1980). This rationale is even stronger when a co-conspirator's confession is paired with other corroborating evidence. See United States v. Nesbitt, 57 F. App'x 40, 44-45 (3d Cir. 2002); DiStefano v. Macy's Retails Holding, Inc., 616 F. App'x 478, 482 (3d. Cir. 2015); see also United States v. Miller, No. 07-663, 2009 U.S. Dist. LEXIS 15092 at *6-9 (E.D. Pa. 2009) (co-conspirator's confession corroborating with the victim's statements was sufficient for probable cause).

Here, Hampton's confession implicated Evans, which provided sufficient probable cause to arrest and prosecute Evans. Moreover, Hampton stated that the boys had been placed in a building on Camden

Street in Newark, New Jersey that Evans burned down.  (SOMF 16).
This statement was corroborated by a news article which confirmed a
fire happened in the same area on Camden Street, Newark, NJ on August
21, 1978 – the midnight hours after the boys had gone missing.  (SOMF
16).  Moreover, reports relating to that fire stated that two men
were seen running away from the building at the time.  (SOMF 16).
This corroborating evidence further supports finding that there was
probable cause to arrest and prosecute Evans.

    For the above reasons, the Court should find that there was
probable cause to arrest and prosecute Evans and grant summary
judgment in favor of Tietjen.

**B.   The Court should also grant summary judgment to
       Defendant Tietjen because an affirmative finding of
       probable cause was made by a Superior Court Judge.**

    The Court should also grant summary judgment to Tietjen based
on the New Jersey State Court determination that probable cause
existed to arrest and prosecute Plaintiff.

    "A magistrate's 'determination of probable cause should be
paid great deference by reviewing courts.'" United States v.
Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).  Officers cannot
ordinarily be expected to question a magistrate's probable cause
determination because "[i]t is the magistrate's responsibility to
determine whether the officer's allegations establish probable
cause and, if so, to issue a warrant comporting in form with the
requirements of the Fourth Amendment." United States v. Leon, 468

U.S. 897, 921 (1984).  This is because "police officers are not trained attorneys and generally cannot be expected to second-guess a magistrate's probable cause determination." United States v. Caesar, 2 F.4th 160, 170 (3d Cir. 2021) (citing Messerschmidt v. Millender, 565 U.S. 535, 547, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012)).  "It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable." Malley v. Briggs, 475 U.S. 335, 346 (1986) (internal quotation marks and citation omitted)).  When considering whether an arrest warrant shields an officer from liability for a false arrest, a plaintiff must show, by a preponderance of the evidence:

> (1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for the warrant; and
>
> (2) that such statements or omissions are material, or necessary, to the finding of probable cause.

Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016) (quoting Wilson v. Russo, 212 F.3d 781, 784 (3d Cir. 2000)) (internal quotations omitted).  Omissions and misrepresentations are "material" if a reconstructed warrant application containing the alleged omissions

and excising the alleged inaccuracies would no longer establish probable cause.  Ibid.

Here, co-Defendant Carrega presented an affidavit to a neutral Superior Court Judge, who in turn determined that probable cause existed to arrest Plaintiff.  (SOMF 14).  As a result, the court should conclude there was a presumption of probable cause. See Leon, 468 U.S. at 921.

### C. Plaintiff has not adduced evidence showing Tietjen knowingly or deliberately made false statements, or that Hampton's confession was involuntary.

Plaintiff has not adduced evidence that would rebut the presumption of probable cause.  First, Plaintiff has not adduced evidence showing that Tietjen made a false statement or omission. No evidence suggests that Tietjen was involved in creating or reviewing the affidavit supporting probable cause.  The affidavit itself was prepared by Carrega on March 22, 2010, over 1 year after Hampton's statement of November 2008, (SOMF 14).  No evidence suggests that Tietjen drafted the affidavit, or had any involvement determining what information would be included or omitted.  (SOMF 14).  Thus, there is no reason to conclude that Tietjen knowingly or deliberately made any false statements, or otherwise contributed to a false arrest warrant.

Similarly, the evidence does not show that the officers had reason to believe Hampton's confession was false.  A "confession is not rendered involuntary simply because the police procured it

13

by using psychological tactics." Halsey v. Pfeiffer, 750 F.3d 273, 304 (3d Cir. 2014) (citing Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986)). Courts acknowledge that the use of deception or misrepresentation to procure a confession may not result in its exclusion from admission into evidence. Ibid. (citing Frazier v. Cupp, 394 U.S. 731, 739 (1969) ("The fact that the police misrepresented the [co-defendant's] statements ... is, while relevant, insufficient in our view to make this otherwise voluntary confession inadmissible."); United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir.1990) ("[T]he law permits the police to pressure and cajole, conceal material facts, and actively mislead— all up to limits....")). In determining whether a jury could find a confession was coerced, courts recognize "there can be no involuntary confession absent 'coercive police activity.'" United States v. Ludwikowski, 944 F.3d 123, 135 (3d Cir. 2019) (quoting United States v. Jacobs, 431 F.3d 99, 108 (3d Cir. 2005)).

In his deposition, Hampton did not testify to facts that would support a conclusion that his confession was coerced. While Hampton made conclusory statements that his statement was coerced, he did not identify specific acts that support the conclusion, much less any involvement by Tietjen. Specifically, Hampton did testify that he signed a document stating that he was fed false statements by Carrega, Hadley, and Tietjen. Id., at 197:7-15. But, Hampton clarified that he has no personal knowledge or

recollection of any actions Tietjen took.  Hampton testified that

he did not remember Tietjen asking him any questions that day

before or after his recorded confession:

> Q.  So my next question relates to the
> conversations you had on that date,
> specifically, November 11th, 2008.  So do you
> remember who was the primary person asking
> questions on that day?
>
> A.   No.
>
> Q.   Okay.  Do you remember any questions that
> day that Defendant Tietjen asked?
>
> A.   Okay.  No.
>
> Q.   I'm sorry, sometimes it must be the
> remote [connection].  Did you say no?
>
> A.   Yeah, I said no.

Id., at 227:2-13.  Hampton also denied any personal knowledge or

recollection of any promises made by Tietjen:

> Q.   Okay.   Thank you.   Do you remember
> anything that defendant Tietjen promised you
> on that day?
>
> A.   No.
>
> Q.   Okay. Do you remember any – if he gave
> you any documents to sign on that day?
>
> A.   Oh, come on, man.
>
> Q.   You can just – sorry, go ahead.
>
> A.   No.

Id., at 227:14-22.  Hampton also denied any knowledge that Tietjen

was involved in any promises from the prosecution:

> Q.   .   .   .   [In your written statement,
> paragraph] 21 you say, "The prosecution later
> worked out a deal with me that if I testified
> against Lee consistent with my video
> statement, I would only get ten years and be
> eligible for parole in two years. . . So my
> question to you is, do you remember if
> Defendant Tietjen was involved with that, that
> promise from the prosecution?
>
> A.  I don't know.  I don't know.  No, I don't
> know.
>
> Q.   You don't remember what he said?
>
> A.   No.

Id., at 228:3-17.  As to the purportedly false confession, Hampton

also denied remembering Tietjen feeding him any false statements

or taking any acts to coerce his testimony:

> Q.   .   .   .   about false statements that were
> given to you.  Do you remember if any of those
> false statements were specifically from
> Defendant Tietjen?
>
> A.   I don't know.
>
> Q.  Okay.   Do you remember any actions
> specifically that Defendant Tietjen took to
> coerce you when you were giving this
> statement?  I'm sorry, I should clarify.  When
> I say "this statement," I mean the statement
> to detectives, not the written statement.  So
> do you remember anything like that?
>
> A.   No.

Id., at 228:18-229:5.  In short, Hampton's conclusory statement

that his testimony was coerced goes nowhere as he could not

identify any coercive action by Tietjen, or that Tietjen had reason

to believe his confession was false.  Because there is no evidence

that Tietjen believed Hampton's confession to be false, there is no evidence that he knowingly or deliberately caused any false statement to be included in the arrest warrant.

Moreover, Tietjen had reason to believe that Hampton's confession was true based on other evidence.  In Hampton's November 12, 2008 statement, Hampton stated that the boys had been placed in a building on Camden Street in Newark, New Jersey that Evans burned down.  (SOMF 16).  Subsequently, through continuing investigation, Tiejten was able to confirm from an August 22, 1978 Star-Ledger article, that there was a large fire that occurred on August 21, 1978 at the Camden Street location that Hampton described.  This date also coincided with the same night the five boys went missing. (SOMF 13).

These facts corroborated the confession, and accordingly no reasonable jury could find that Tietjen had reason to believe Hampton's confession was false.  Therefore, the Court should find that the state magistrate's finding of probable cause bars Plaintiff's claims for malicious prosecution and grant summary judgment to Tietjen.

<u>**POINT II**</u>

**DEFENDANT TIETJEN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ADDUCED EVIDENCE THAT TIETJEN WAS PERSONALLY INVOLVED IN COERCING A CONFESSION FROM HAMPTON.**

Defendant Tietjen is also entitled to summary judgment because there is no evidence demonstrating that he coerced a confession from Hampton.

A defendant's liability in a § 1983 or New Jersey Civil Rights Act claim must be predicated on his direct and personal involvement in the alleged violation. <u>Williams v. City of York, Pennsylvania</u>, 967 F.3d 252, 261 (3d Cir. 2020) (quoting <u>Jutrowski v. Twp. of Riverdale</u>, 904 F.3d 280, 289 (3d Cir. 2018)); <u>Covington v. Twp. of Hillside</u>, No. 2:20-CV-07461, 2021 WL 4272880, at *5 (D.N.J. Sept. 20, 2021); <u>Didiano v. Balicki</u>, No. 10-4483, 2011 U.S. Dist. LEXIS 41785, *31–32, 2011 WL 1466131 (D.N.J. Apr. 18, 2011).  To prevail against a specific defendant, a plaintiff must establish personal involvement by that defendant in the alleged constitutional deprivation to be entitled to damages. <u>See</u> <u>id.</u>; <u>Baraka v. McGreevey</u>, 481 F.3d 187, 210 (3d Cir. 2007); <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 1087 (1978).

As discussed above, Plaintiff has not adduced evidence that Tietjen took steps to coerce a confession from Hampton. <u>See</u> <u>supra</u>, Point I-C.  Hampton could not recall any questions that Tietjen

18

asked or promises that Tietjen made.  See id.  Hampton could not testify to any false statements that Tietjen made.  See id.  And, Hampton could not identify any specific acts Tietjen took to coerce Hampton to provide a statement to police.  See id.  In short, Evans has not adduced evidence that Tietjen was personally involved in obtaining a false confession from Hampton, or that Tietjen himself believed the information Hampton provided was false.  Because Evans has not established personal involvement by Tietjen in his alleged constitutional deprivations, the court should grant summary judgment in favor of Tietjen.

## POINT III

**DEFENDANT TIETJEN IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE NO LAW CLEARLY ESTABLISHES THAT HIS CONDUCT VIOLATED ANY OF PLAINTIFF'S CONSTITUTIONAL RIGHTS.**

In the alternative, Defendant Tietjen is entitled to summary judgment for each claim advanced under the United States and New Jersey Constitution because he is entitled to qualified immunity.

Qualified immunity is a defense under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act.  See Ramos v. Flowers, 56 A.3d 869, 429 N.J. Super. 13, 24 (App. Div. 2012).  "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  White v. Pauley, 137 S.Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11, (2015)).

"[F]or the right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. Id. at 12. (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). The standard for qualified immunity is tilted in favor of shielding government actors and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Zaloga v. Borough of Moosic, 841 F.3d 170 (3d Cir. 2016). In Saucier v. Katz, the Supreme Court divided the analysis of qualified immunity into two parts: first, the court considering qualified immunity must ask whether the alleged facts, taken in the light most favorable to the injured party, show that the government official's conduct violated a constitutional right; second, the court must ask whether the right was clearly established in light of the specific context of the case and not as a broad general proposition. 533 U.S. 194 (2001).

The qualified immunity doctrine is analyzed the same under both state and federal law. Morillo v. Torres, 117 A.3d 1206, 222 N.J. 104, 116 (N.J. 2015); Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443-444 (D.N.J. 2011). Qualified immunity is an "immunity from suit rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526-27 (1985); see also Radiation Data, Inc. v. N.J. Dep't. of Envtl. Prot., 607 A.2d 988, 456 N.J. Super. 550, 560 (N.J. App. Div. 2018) (quoting Brown v.

State, 230 N.J. 84, 98 (N.J. 2017).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "[Q]ualified immunity is an objective question to be decided by the court as a matter of law." Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007).

In applying qualified immunity to arrests, "the Supreme Court has recognized that it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present" and "has made clear that in such cases those officers, like other officials who act in ways they reasonably believe to be lawful, will not be held personally liable." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  This is necessary because "law enforcement officials should not have to fear facing a ruinous civil lawsuit and substantial financial loss when acting reasonably in difficult circumstances and on uncertain legal terrain." Morillo v. Torres, 117 A.3d 1206, 222 N.J. 104, 125 (2015). See also Pearson, 555 U.S. at 231 (qualified immunity advances a policy of "shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably").

21

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231. Two questions must be answered in the affirmative before this protection is pierced: 1) is the officer alleged to have violated a constitutional right; and 2) was the right alleged to have been violated so clearly established that it would have been clear to a reasonable officer that his actions violated the law. Id., 232. These questions may be analyzed in either order. Id., 242.

Here, Plaintiff cannot fulfill the second prong of this inquiry by showing that Defendant Tietjen's limited actions during the investigation of this case which ultimately led to Evans arrest, indictment and prosecution, violated clearly established law. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that wat he is doing is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018). When analyzing whether the government official's conduct violated a "clearly established right," the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001)).

The Supreme Court has repeatedly reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality,'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Al-Kidd, 563 U.S. at 742), "since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 572 U.S. 765, 773 (2014). "The general proposition, for example, that [an unreasonable seizure] violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Al-Kidd, 563 U.S. at 742. Instead, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." Mammaro v. N.J. Div. of Child Protection & Permanency, 814 F.3d 164, 169 (3d Cir. 2016); see also Mullenix, 577 U.S. 7, 18 (2015) (rejecting reliance on cases "too factually distinct to speak clearly to the specific circumstances" confronting official). Courts are to examine the legal precedent as it existed at the time the conduct allegedly occurred, and determine whether it would place every reasonable official on notice that his specific conduct violated the law. See Al-Kidd, 563 U.S. at 741.

"[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust

consensus of cases of persuasive authority in the Courts of Appeals.'" Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted). If there are no cases of controlling authority in the jurisdiction in question, and if other appellate federal courts have split on the question of whether an asserted right exists, the right cannot be clearly established for qualified immunity purposes. Wilson v. Layne, 526 U.S. 603, 618 (1999).

For the reasons discussed throughout this brief, the Court should find that Defendant Tietjen's conduct did not violate any of the Plaintiffs' constitutional rights. Thus, the first part of the qualified immunity analysis precludes any award of damages against the Defendants. But, even if the Court found that the Defendant Tietjen's conduct was a constitutional violation, the Court should find that qualified immunity applies because it was not clearly established that his conduct violated any constitutional right.

Qualified immunity applies to Plaintiff's claims advanced under the New Jersey and United States Constitutions - Counts 4, 5 and 8. For each of these claims, Plaintiff cannot identify any case law that clearly establishes Tietjen violated his constitutional rights.

Here, Plaintiff cannot point to any evidence that there was no probable cause to arrest Evans. In addition, plaintiff cannot point to any evidence as to Tiejten's direct involvement with any of the decisions made to arrest, charge or prosecute Evans. This was not Tietjen's investigation. His involvement in this investigation was

limited to the assistance he provided to the ECPO at their request. As the evidence has shown, Hampton, in his November 2008 statement, confessed to his and Evans involvement in the murder of the five boys. (SOMF 16). This statement directly implicated Evans and the confession was corroborated by additional evidence. Specifically, Hampton identified the location of a fire years earlier which he corroborated. (SOMF 16). Moreover, reports relating to that fire stated that two men were seen running away from the building at the time. (SOMF 14). Finally, Evans was already a suspect in the case. It had been established that he had a motive, related to some missing marijuana, which he believed involved the 5 boys. (SOMF 18). He was also the last person seen with the boys. (SOMF 18). For these reasons, the Court should find that no law clearly establishes a lack of probable cause and therefore qualified immunity should be granted to defendant Tietjen.

Defendant acknowledges that it is well-established that "by fabricating evidence for use in a criminal prosecution, a state actor would violate a defendant's constitutional rights." Halsey v. Pfeiffer, 750 F.3d 273, 296 (3d Cir. 2014). However, no case establishes that the kind of alleged conduct by Tietjen in this case constitutes fabricating evidence or otherwise violating Evans' constitutional rights. As discussed above, Hampton's testimony does not establish that Tietjen was involved in fabricating evidence against Evans. See supra. And, no case law suggests that Tietjen

should have known Hampton's confession was fabricated.  This is particularly so because Tietjen acquired evidence after the confession corroborating that a fire occurred in the area Hampton described, on the date Hampton described, and that two men were seen fleeing the building as Hampton had described.  <u>See</u> <u>supra.</u> Therefore, the Court should find that no law clearly establishes that Tietjen's conduct violated Evans' constitutional rights, and therefore grant summary judgment to Tietjen.

### POINT IV

**DEFENDANT TIETJEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S COMMON LAW MALICIOUS PROSECUTION CLAIM BECAUSE HE IS IMMUNE.**

Tietjen is also entitled to summary judgment on Plaintiff's common law malicious prosecution claim because he is immune.

**A. Defendant Tietjen is immune to common law tort claims because he acted in objective good faith.**

Under the NJTCA, an employee is immune from liability if under either an objective or a subjective analysis, the acts were performed in good faith in the execution or enforcement of any law.  N.J.S.A. 59:3-3; <u>e.g.</u>, <u>Leang v. Jersey City Bd. of Educ.</u>, 198 N.J. 557, 582 (N.J. 2009) (citing <u>Canico v. Hurtado</u>, 144 N.J. 361, 365 (N.J. 1996)).

The good faith immunity under N.J.S.A. 59:3-3 has two independent components.  <u>Ibid.</u>  Public employees are entitled to the immunity if they can establish either that their conduct was

26

"objectively reasonable," or that they acted with subjective good faith. Ibid. (citing Fielder v. Stonack, 141 N.J. 101, 131-32 (1995).

The objective component of good faith immunity effectively provides the same standard as qualified immunity with respect to the enforcement of the law. N.E. for J.V. v. State Dep't of Child. & Fams., Div. of Youth & Fam. Servs., 449 N.J. Super. 379, 404 (App. Div. 2017). In determining whether an employee has established good faith immunity under N.J.S.A. 59:3-3, the court applies the same standards of objective reasonableness that are used in federal civil rights cases. Ibid. A public employee acts with objective reasonableness "if the actor's conduct did not violate a clearly established constitutional or statutory right." Id. at 405 (App. Div. 2017) (citing Gormley v. Wood-El, 218 N.J. 72, 113 (2014). "Negligence is insufficient to defeat the immunity provided by [N.J.S.A.] 59:3-3." Nicini v. Morra, 212 F.3d 798, 815 (3d Cir. 2000); Canico v. Hurtado, 144 N.J. 361, 366 (1996).

Here, Defendant Tietjen is entitled to objective good faith immunity because there was no law clearly establishing that his conduct violated Evans' constitutional rights. As with the discussion of qualified immunity, no case clearly establishes that Tietjen's alleged conduct constituted fabricating evidence, or that Tietjen should have known Hampton's confession was fabricated. See

27

supra, Point III.  Therefore, the Court should grant Tietjen immunity from Plaintiff's claims because he acted in objective good faith.

**B.   Tietjen is immune to common law tort claims because he acted in subjective good faith.**

Tietjen is also immune because the record in this case demonstrates he acted with subjective good faith.  As noted a defendant who cannot establish that his or her conduct was objectively reasonable may still invoke qualified immunity if their actions were carried out in good faith.  Fielder v. Stonack, 141 N.J. 101, 132 (N.J. 1995).  This immunity is "judged in relation to whether his act violated N.J.S.A. 59:3-14 in that it involved 'crime, actual fraud, actual malice[,] or willful misconduct.'"  N.E. for J.V. v. State Dep't of Child. & Fams., Div. of Youth & Fam. Servs., 449 N.J. Super. 379, 407 (N.J. App. Div. 2017).  "[M]ere negligence on the part of a public employee is generally not sufficient to defeat the good-faith immunity provided   by N.J.S.A. 59:3-3."   Dunlea v. Twp. of Belleville, 349 N.J. Super. 506, 509 (N.J. App. Div. 2002).

Here, no evidence in the record suggests that Tietjen did not act with subjective good faith.  As discussed above, Hampton's testimony does not demonstrate that Tietjen promised Hampton anything, fed him a false narrative, or otherwise coerced a confession from Hampton.  See supra, Point I.  And nothing indicates that Tietjen took any steps amounting to a crime, actual

fraud, actual malice, or willful misconduct.  See Dunlea, 349 N.J. Super at 509.  Because the evidence does not indicate that Tietjen acted in subjective bad faith, he is immune and the court should grant summary judgment in his favor on Evans' common law claim.

### POINT V

**PLAINTIFF HAS ALSO FAILED TO ESTABLISH A PRIMA FACIE CASE OF MALICIOUS PROSECUTION.**

Defendant Tietjen is also entitled to summary judgment on Plaintiff's malicious prosecution claims under § 1983 and the New Jersey Civil Rights Act.

**A.     Plaintiff's malicious prosecution claim fails because he has failed to establish prima facie evidence that Tietjen acted maliciously.**

To prevail on a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must establish that (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

Here, Plaintiff fails to meet elements three and four for a malicious prosecution claim.  As discussed above, the evidence

demonstrates that there was probable cause to arrest Evans, which negates the third element of a malicious prosecution claim.  See supra.  Additionally, Evans has not adduced evidence that Defendant Tietjen acted maliciously or for a purpose other than bringing the plaintiff to justice, and he therefore has not met the third element of this claim.  Evans also has not adduced evidence that Tietjen had any underlying ill will or hostility in pursuing an investigation against him, and fails on the fourth element of this claim.

Because Plaintiff has failed to establish a prima facie case for malicious prosecution, summary judgment should be granted to Defendant Tietjen for Plaintiff's malicious prosecution claims.

### B.    Plaintiff's malicious prosecution claim under the NJCRA also fails as a matter of law.

Unlike its federal counterpart, New Jersey law considers malicious prosecution a tort claim, and not a constitutional claim. See LoBiondo v. Schwartz, 199 N.J. 62, 89-90 (2009) (malicious prosecution and its civil analog, malicious use of process, are of a "group of closely related torts"); see also Falat v. Cty. of Hunterdon, 2018 WL 3554139, *7 (App. Div. July 25, 2018) (affirming dismissal of the plaintiffs' New Jersey Civil Rights Act malicious prosecution claim because "malicious prosecution under New Jersey law has developed through case law, and is not a constitutional claim as it is under federal law.").  Although the New Jersey Civil Rights

Act and 42 U.S.C. § 1983 are often analogous, cases indicate that their scope differs in the context of malicious prosecution claims. While 42 U.S.C. § 1983 permits claims for both substantive and procedural due process claims, the NJCRA only permits substantive due process claims. See Tumpson v. Farina, 218 N.J. 450, 477 (2014). To the extent malicious prosecution is characterized as a constitutional claim, it falls under procedural due process, and therefore it cannot be asserted under the NJCRA. See Coles v. Carlini, 162 F. Supp. 3d 380, 403 (D.N.J. 2015) (quoting Jennings v. Shuman, 567 F.2d 1213, 1220 (3d Cir. 1977) (malicious abuse of process, which is considered the civil analogue to malicious prosecution, "is by definition a denial of procedural due process").

Based on the foregoing, to the extent Evans asserts any malicious prosecution claim, it cannot be advanced under the New Jersey Civil Rights Act. Therefore, to the extent the claim is advanced at all, the NJCRA claim should be dismissed and the claim should only be permitted as a common law claim. As discussed above, this common law claim fails because Tietjen is immune immunity. See supra.

For the above reasons, the court should grant summary judgment to Defendant Tietjen on Plaintiff's malicious prosecution claims.

31

**POINT VI**

**EVANS' MALICIOUS PROSECUTION CLAIMS ARE BARRED
BY HECK V. HUMPHREY BECAUSE IT WOULD
NECESSARILY IMPUGN HAMPTON'S CONVICTION.**

The Supreme Court has frequently reiterated "the 'strong judicial policy against the creation of two conflicting resolutions' based on the same set of facts." Vega v. Tekoh, 142 S. Ct. 2095, 2107 (2022) (quoting Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  In Heck, the Supreme Court held that federal courts should bar certain cases which would "necessarily imply" or "demonstrate" the invalidity of an earlier conviction.  Heck, 512 U.S. at 487.  Typically, the ruling in Heck bars a plaintiff from bringing a § 1983 claim unless he has obtained a favorable termination of the underlying criminal prosecution.  See Thompson v. Clark, 142 S. Ct. 1332, 1335 (2022).

The Heck limitation "may apply to civil actions brought by individuals other than the convicted criminal if such application does not otherwise violate any constitutional principles." Beets v. Cnty. of Los Angeles, 669 F.3d 1038, 1046 (9th Cir. 2012).  In Beets, plaintiffs sued a deputy who shot and killed their son Glenn.  Id., at 1040-41.  The Ninth Circuit affirmed a district court decision that dismissed plaintiffs' claim on Heck grounds, finding that the conviction of Glenn's companion, Ms. Morales, barred the plaintiffs from showing that the deputy used excessive

force.  Id., at 1040.  The Ninth Circuit reasoned that the
*conviction of a co-defendant* served to bar the plaintiff's claim,
reasoning that this furthered the purposes of Heck:

> Our perspective furthers the purposes cited by
> the Supreme Court when it established the Heck
> bar.  The Court noted both the strong judicial
> policy against the creation of two conflicting
> resolutions arising out of a single
> transaction, and its concerns for finality and
> consistency.  Here, [co-defendant] was
> convicted of aiding and abetting in the
> commission of the very crime that GPR was
> committing—an assault on a police officer—when
> he was shot by the officer.  The criminal jury
> that convicted [co-defendant] determined that
> the officer did not use excessive force in
> shooting GPR.  Allowing plaintiffs' action to
> proceed would allow for conflicting
> resolutions arising out of a single
> transaction and undermine consistency and
> finality.

Id., at 1048 (internal citations omitted); see McDonough v. Smith,
139 S. Ct. 2149, 2151, 204 L. Ed. 2d 506 (2019) (discussing that
Heck applies to malicious prosecution and claims of fabricated
evidence, and noting "pragmatic concerns with avoiding parallel
criminal and civil litigation over the same subject matter and the
related possibility of conflicting civil and criminal judgments,
and ... collateral attacks on criminal judgments through civil
litigation"); see also Stoddard-Nunez v. City of Hayward, No. 3:13-
CV-4490 KAW, 2013 WL 6776189 (N.D. Cal. Dec. 23, 2013) (§ 1983
suit by decedent's family was barred due to potential to undermine
"provocative act" theory of murder in criminal proceedings against

accomplice charged with felony murder for the officer's shooting of decedent).

The Third Circuit has not expressly applied Heck to the claim of a third party, but has noted that the doctrine "has been applied to bar a third party's § 1983 suit only where the convict was the third party's accomplice." Eberhardinger v. City of York, 782 F. App'x 180, 183 n.2 (3d Cir. 2019). To the limited extent, Eberhardinger discussed this issue, it suggests that would apply to the § 1983 claims of an accomplice, but not a third party. See id. (citing Beets, 669 F.3d at 1048 and Hayward v. Cleveland Clinic Found., 759 F.3d 601, 616 (6th Cir. 2014) ("Heck does not apply to third-party § 1983 claims.")).

Here, the Heck doctrine bars Evans' claims because his theory of the case would directly undermine Hampton's conviction. Hampton plead guilty in a statement which implicated Evans, and Hampton's conviction was never overturned. (SOMF 18). If a jury accepted Evans' theory that Hampton's confession was a falsity conjured by officers, it would necessarily undermine Hampton's confession and conviction. In his plea, Hampton stated that on August 20, 1978, in the City of Newark, that in the course of committing or attempting to commit an arson, that he purposely or knowingly murdered the five boys. (SOMF 18). The Court should therefore find that Heck precludes Evans' suit, and grant summary judgment to Tietjen on each of his claims.

34

Although this interpretation of Heck would leave a defendant in Evans' position without a remedy, the Supreme Court contemplated and accepted that litigants may face this result. Heck, 512 U.S. at 490, n.10. Heck specifically noted the importance of "barring collateral attacks — a longstanding and deeply rooted feature of both the common law and our own jurisprudence" and that "[if] the goal of our interpretive enterprise under § 1983 were to provide a remedy for all conceivable invasions of federal rights . . . the entire landscape of our § 1983 jurisprudence would look very different." Id.

For all the above reasons, the court should find that Evans' claim is barred by Heck because plaintiff's claim would necessarily undermine Hampton's conviction, and therefore grant summary judgment to the defendants.

## POINT VII

### DEFENDANT TIETJEN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR A CONSPIRACY UNDER 42 U.S.C. § 1983

Plaintiff's claim under 42 U.S.C. § 1983 (Count Eight) fails because Plaintiff has not provided any evidence to support such a claim.

To survive a motion for summary judgment as to a civil rights conspiracy claim, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement

and concerted action." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (citing Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009)).  In the context of an alleged conspiracy among police officers, it may manifest as "conversations" between officers about the incident, "allegedly distorted" stories that "emerged," an "awareness of conflicting stories" and "irregularities in the series of official investigations" into the incident.  Ibid. (citing Hampton v. Hanrahan, 600 F.2d 600, 627-28 (7th Cir. 1979), rev'd in part on other grounds by Hanrahan v. Hampton, 446 U.S. 754 (1980))

Here, Evans has not adduced evidence supporting a claim of a § 1983 a conspiracy to violate civil rights.  Evans has not adduced evidence of any agreement by Tietjen with an unlawful purpose, or lawful purpose to be achieved by unlawful means.  Evans has not shown evidence of irregularities into investigations of the incident, or materially conflicting stories presented by the troopers to show evidence any conspiracy.  Evans has not adduced any specific conduct by Tietjen that constitutes "concerted action" beyond his presence during an interview.  In short, Evans has not adduced facts supporting his civil rights conspiracy claim, and so summary judgment should be entered for Tietjen.

## **CONCLUSION**

In light of the foregoing, Defendant's Motion for Summary Judgment should be granted, and all claims against Defendant Tietjen should be dismissed with prejudice.


                              MATTHEW PLATKIN
                              ACTING ATTORNEY GENERAL OF NEW JERSEY

                        By:   /s/ Michael Vomacka
                              Michael Vomacka
                              Deputy Attorney General

                        By:   /s/ Victor DiFrancesco, Jr.
                              Victor DiFrancesco, Jr.
                              Deputy Attorney General